## UNITED STATE DISTRICT COURT
## DISTRICT OF NEW JERSEY

SAMUEL L. KAPLAN, on behalf of himself and the Putative Class,

Plaintiffs,

v.

GENERAL ELECTRIC COMPANY d/b/a GE, UNITED TECHNOLOGIES CORP., UTC FIRE & SECURITY AMERICAS CORPORATION, INC. d/b/a INTERLOGIX, and CARRIER GLOBAL CORPORATION,

Defendants.

Case No. 2:22-cv-05296

Hon. Brian R. Martinotti
Magistrate Judge Edward S. Kiel

*Document electronically filed*

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

JUSTIN T. QUINN
**ROBINSON MILLER LLC**
IRONSIDE NEWARK
110 Edison Place, Suite 302
Newark, NJ 07102

K. Winn Allen, P.C. (admitted *pro hac vice*)
Devin Anderson (admitted *pro hac vice*)
Mary Elizabeth Miller (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................1

BACKGROUND ...................................................................................................2

LEGAL STANDARDS ..........................................................................................7

ARGUMENT ........................................................................................................7

I.     Kaplan Has Not Plausibly Alleged Any Fraud, Misrepresentation, Or Breach Of Warranty..........................................................................7

II.    Kaplan Has Not Plausibly Alleged Any Loss. .....................................13

III.   Kaplan's Claims Are Untimely. ..........................................................16

IV.   Kaplan's Tort Claims Are Subsumed By New Jersey's Products Liability Act Or Otherwise Precluded By The Economic Loss Doctrine.............................................................................................19

V.    Kaplan's Fraud Claims Fail Rule 9(b)'s Particularity Requirement.........................................................................................23

VI.   Kaplan's Warranty Claims Fail As A Matter Of Law. ..........................27

VII.  Kaplan's Magnuson-Moss Claim Fails As A Matter Of Law. ...............32

VIII. Kaplan Does Not State A Claim For Unjust Enrichment......................33

       A.    Kaplan Does Not Allege The Required Direct Relationship. .............33

       B.    Kaplan Has Adequate Remedies At Law...........................................35

       C.    Unjust Enrichment Claims Cannot Be Based Solely On Defective Products. ................................................................................37

IX.   Kaplan's New Jersey TCCWNA Claim Fails As A Matter Of Law............................................................................................38

CONCLUSION...................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACH Enters. 1 LLC v. Viking Yacht Co.*,
   817 F. Supp. 2d 465 (D.N.J. 2011)....................................................17

*Adamson v. Ortho-McNeil Pharm., Inc.*,
   463 F. Supp. 2d 496 (D.N.J. 2006)....................................................35

*Argabright v. Rheem Mfg. Co.*,
   201 F. Supp. 3d 578 (D.N.J. 2016).....................................................33

*Arlandson v. Hartz Mountain Corp.*,
   792 F. Supp. 2d 691 (D.N.J. 2011)..........................................14, 27, 34

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................7

*Banco Popular N. Am. v. Gandi*,
   876 A.2d 253 (N.J. 2005) ...............................................................14

*Barrett v. Tri-Coast Pharmacy, Inc.*,
   518 F. Supp. 3d 810 (D.N.J. 2021)....................................................22

*Bd.-Tech Elec. Co. v. Eaton Elec. Holdings LLC*,
   2017 WL 4990659 (S.D.N.Y. Oct. 31, 2017)....................................12

*Blystra v. Fiber Tech Grp., Inc.*,
   407 F. Supp. 2d 636 (D.N.J. 2005)....................................................37

*Bohus v. Restaurant.com, Inc.*,
   784 F.3d 918 (3d Cir. 2015) ...........................................................38

*Bowman v. RAM Med., Inc.*,
   2012 WL 1964452 (D.N.J. May 31, 2012)........................................31

*Brame v. Gen. Motors LLC*,
   535 F. Supp. 3d 832 (E.D. Wisc. 2021)............................................29

*Burt v. Makita USA, Inc.*,
   212 F. Supp. 2d 893 (N.D. Ind. 2002) ..............................................12

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011) ................................................................................7

*Calender v. NVR Inc.*,
548 F. App'x 761 (3d Cir. 2013) .......................................................................21

*Castro v. Sovran Self Storage, Inc.*,
114 F. Supp. 3d 204 (D.N.J. 2015) ...................................................................39

*In re Caterpillar, Inc., C13 &C15 Engine Prods. Liab. Litig.*,
2015 WL 4591236 (D.N.J. July 29, 2015) .......................................................16

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ..........................................................................32

*Cnty. of Essex v. Aetna Inc.*,
2018 WL 6584920 (D.N.J. Dec. 13, 2018)........................................................26

*Colella v. Atkins Nutritionals, Inc.*,
348 F. Supp. 3d 120 (E.D.N.Y. 2018) ...............................................................29

*Columbus LTACH Mgmt., LLC v. Quantum LTACH Holdings, LLC*,
2018 WL 2455922 (D.N.J. May 31, 2018).........................................................14

*Cooper v. Samsung Elecs. Am., Inc.*,
374 F. App'x 250 (3d Cir. 2010) .......................................................................33

*Crete v. Resort Condos. Int'l, LLC*,
2011 WL 666039 (D.N.J. Feb. 14, 2011) ..........................................................24

*Crozier v. Johnson & Johnson Consumer Cos.*,
901 F. Supp. 2d 494 (D.N.J. 2012)....................................................................31

*Duffy v. Charles Schwab & Co.*,
123 F. Supp. 2d 802 (D.N.J. 2000)....................................................................35

*Duncan v. Wells Fargo Bank, N.A.*,
2021 WL 22086 (D.N.J. Jan. 4, 2021)...............................................................24

*Dunham v. Wells Fargo Bank*,
2019 WL 9657790 (D.N.J. Nov. 6, 2019) .........................................................17

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012) .................................................................25

*FDIC v. Bathgate*,
  27 F.3d 850 (3d Cir. 1994) .................................................................................24

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007) .................................................................................7

*Fuqua v. Bristol-Myers Squibb Co.*,
  926 F. Supp. 2d 538 (D.N.J. 2013) .....................................................................19

*Gillette v. Toyota Motor Sales, U.S.A., Inc.*,
  980 F. Supp. 2d 660 (D.N.J. 2013) .....................................................................39

*Gray v. Bayer Corp.*,
  2009 WL 1617930 (D.N.J. June 9, 2009) ......................................................24, 37

*Green v. Green Mountain Coffee Roasters, Inc.*,
  279 F.R.D. 275 (D.N.J. 2011) ........................................................................34, 35

*Hale v. Stryker Orthopaedics*,
  2009 WL 321579 (D.N.J. Feb. 9, 2009) .............................................................27

*Hammer v. Vital Pharms., Inc.*,
  2012 WL 1018842 (D.N.J. Mar. 26, 2012) .....................................................29, 31

*Hernandez v. Montoya*,
  2022 WL 11703651 (D.N.J. Oct. 20, 2022) .........................................................16

*Hoffman v. Nordic Naturals, Inc.*,
  2014 WL 1515602 (D.N.J. Apr. 17, 2014) ......................................................14, 28

*Hoffman v. Nutraceutical Corp.*,
  2013 WL 2650611 (D.N.J. June 10, 2013) ......................................................14, 31

*Hubbard v. Corr. Med. Servs., Inc.*,
  2008 WL 2945988 (D.N.J. July 30, 2008) ...........................................................17

*Hughes v. Panasonic Consumer Elecs. Co.*,
  2011 WL 2976839 (D.N.J. July 21, 2011) ...........................................................34

*JOC, Inc. v. ExxonMobil Oil Corp.*,
   2010 WL 1380750 (D.N.J. Apr. 1, 2010) ...........................................................28

*Johansson v. Cent. Garden & Pet Co.*,
   804 F. Supp. 2d 257 (D.N.J. 2011) .............................................................14, 32

*Justice v. United States*,
   6 F.3d 1474 (11th Cir. 1993) ..............................................................................36

*Kavon v. BMW of N. Am., LLC*,
   2022 WL 1830797 (D.N.J. June 3, 2022) ..........................................................32

*Kendall v. CubeSmart L.P.*,
   2015 WL 7306679 (D.N.J. Nov. 19, 2015) ........................................................17

*Koski v. Carrier Corp.*,
   347 F. Supp. 3d 1185 (S.D. Fla. 2017) ...................................................11, 13, 30

*Kury v. Abbott Laboratories, Inc.*,
   2012 WL 124026 (D.N.J. Jan. 17, 2012) .....................................................28, 29

*In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*,
   172 F. Supp. 3d 724 (D.N.J. 2016) .....................................................................18

*LaSpina v. SEIU Pa. State Council*,
   985 F.3d 278 (3d Cir. 2021) ...............................................................................13

*In re Lead Paint Litig.*,
   924 A.2d 484 (N.J. 2007) .............................................................................19, 21

*Levari Enters., LLC v. Kenworth Truck Co.*,
   2022 WL 248101 (D.N.J. Jan. 27, 2022) ...........................................................22

*Lopez v. Swyer*,
   300 A.2d 563 (N.J. 1973) ...................................................................................17

*Mason v. Coca-Cola Co.*,
   774 F. Supp. 2d 699 (D.N.J. 2011) ....................................................................16

*McGuire v. BMW of North America, LLC*,
   2014 WL 2566132 (D.N.J. June 6, 2014) .....................................................37, 38

*Mendez v. Shah*,
    94 F. Supp. 3d 633 (D.N.J. 2015) ........................................................................30

*Mladenov v. Wegmans Food Mkts., Inc.*,
    124 F. Supp. 3d 360 (D.N.J. 2015) ........................................................14, 38, 39

*Naporano Iron & Metal Co. v. Am. Crane Corp.*,
    79 F. Supp. 2d 494 (D.N.J. 1999) ...................................................................26, 27

*Norcom Rsch., LLC v. Net2Phone Glob. Servs., LLC*,
    2021 WL 1153140 (D.N.J. Mar. 26, 2021) .........................................................36

*Ortiz v. Goya Foods, Inc.*,
    2020 WL 1650577 (D.N.J. Apr. 3, 2020) ...........................................................36

*Poling v. K. Hovnanian Enters.*,
    99 F. Supp. 2d 502 (D.N.J. 2000) .......................................................................26

*Ponzio v. Mercedes-Benz USA, LLC*,
    447 F. Supp. 3d 194 (D.N.J. 2020) ..............................................................14, 16

*Potts v. Johnson & Johnson Consumer Inc.*,
    2021 WL 2177386 (D.N.J. May 28, 2021) ..........................................................34

*Rapid Models & Prototypes, Inc. v. Innovated Sols.*,
    71 F. Supp. 3d 492 (D.N.J. 2014) ................................................................25, 27

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    184 F.3d 280 (3d Cir. 1999) ..................................................................................4

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002) ...................................................................7, 18, 24

*Rosenzweig v. Transworld Sys. Inc.*,
    2017 WL 3025557 (D.N.J. July 14, 2017) .........................................................40

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*,
    181 F.3d 410 (3d Cir. 1999) ...............................................................................17

*Santiago v. Total Life Changes LLC*,
    2021 WL 5083835 (D.N.J. Nov. 2, 2021) ..........................................................29

*Santiago v. Total Life Changes LLC*,
   2022 WL 2619855 (D.N.J. July 7, 2022) ....................................................35, 36

*SAT Agiyar, LLC v. 7-Eleven, Inc.*,
   2020 WL 3546821 (D.N.J. June 30, 2020)........................................................26

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
   2009 WL 2043604 (D.N.J. July 10, 2009) ..................................................15, 24

*Schraeder v. Demilec (USA) LLC*,
   2013 WL 3654093 (D.N.J. July 12, 2013) ........................................................21

*Semeran v. BlackBerry Corp.*,
   2016 WL 406339 (D.N.J. Feb. 2, 2016) ............................................................30

*Shaulis v. Nordstrom, Inc.*,
   865 F.3d 1 (1st Cir. 2017)..................................................................................36

*Simner v. LG Elecs. U.S.A., Inc.*,
   2022 WL 3152707 (D.N.J. Aug. 8, 2022) ........................................................32

*Southward v. Elizabeth Bd. of Educ.*,
   2017 WL 111924 (D.N.J. Jan 11, 2017)............................................................16

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)..........................................................................................13

*Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
   171 F.3d 912 (3d Cir. 1999) ..............................................................................37

*Stone v. Prudential Fin., Inc.*,
   2021 WL 5413989 (D.N.J. Nov. 19, 2021) .......................................................36

*Sun Chem. Corp. v. Fike Corp.*,
   235 A.3d 145 (N.J. 2020) ...........................................................................20, 23

*Sun Chem. Corp. v. Fike Corp.*,
   981 F.3d 231 (3d Cir. 2020) ..............................................................................21

*Suriaga v. Gen. Elec. Co.*,
   2019 WL 6799613 (D.N.J. Dec. 12, 2019)........................................................17

*Travelers Indem. Co. v. Cephalon, Inc.*,
620 F. App'x 82 (3d Cir. 2015) ...........................................................................24

*Trexler v. Dodge City, Inc.*,
2021 WL 754004 (D.N.J. Feb. 26, 2021) ...........................................................39

*Underwriters Laboratories Inc. v. Innovative Indus. of Tampa, Inc.*,
2000 WL 631304 (N.D. Ill. May 16, 2000) ........................................................12

*United States v. 4500 Audek Model No. 5601 AM/FM Clock Radios*,
220 F.3d 539 (7th Cir. 2000) ...............................................................................12

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
2021 WL 364663 (D.N.J. Feb. 3, 2021) .............................................................22

*Van Brunt v. Wells Fargo Bank, N.A.*,
2022 WL 4366414 (D.N.J. Sept. 21, 2022) ........................................................24

*VRG Corp. v. GKN Realty Corp.*,
641 A.2d 519 (N.J. 1994) ....................................................................................34

*Warren Tech., Inc. v. UL LLC*,
2018 WL 10550930 (S.D. Fla. Oct. 31, 2018) ...................................................10

*Warren Tech., Inc. v. UL LLC*,
962 F.3d 1324 (11th Cir. 2020) .........................................................8, 10, 11, 13

**Statutes**

15 U.S.C. § 2310 *et seq.* .....................................................................................*passim*

N.J.S.A. § 2A:14-1 .................................................................................................17

N.J.S.A. § 2A:58C-1 *et seq.* .................................................................................*passim*

N.J.S.A. § 12A:2-607 ............................................................................................28

N.J.S.A. § 12A:2-725 ............................................................................................17

N.J.S.A. § 56:8-2 *et seq.* ......................................................................................*passim*

N.J.S.A. § 56:12-14 *et seq.* ..................................................................................*passim*

**Other Authorities**

29 C.F.R. § 1910.7 ...................................................................................... 3

Fed. R. Civ. P. 8 ............................................................................... 15, 29

Fed. R. Civ. P. 9 ........................................................................... *passim*

Fed. R. Civ. P. 12 ........................................................................... 7

## INTRODUCTION

Plaintiff Samuel Kaplan's claims fail as a matter of law and should be dismissed.  According to Kaplan, every single combination fire and burglar alarm system manufactured for more than two decades by Defendants General Electric Co.; United Technologies Corp.; UTC Fire & Security Americas Corp., Inc.; and Carrier Global Corp. (collectively, "Defendants" or "Interlogix") is inherently unsafe and defective.  Kaplan makes this remarkable claim despite being unable to identify a single alarm system that experienced the failure mode he describes.  He admits that he operated his own alarm system without issue for 20 years.  Kaplan nevertheless contends that Interlogix falsely designated these systems as compliant with the standards set by Underwriters Laboratories Inc. (UL), the nationally recognized testing laboratory that polices alarm safety.  But the material Kaplan attaches to his complaint makes clear that UL itself disagrees with his claims and has informed Kaplan that the alarm design *is* UL compliant.  Kaplan's disagreement with how UL has interpreted its own standards does not give rise to a federal-court class action.

Kaplan's claims all suffer from three fatal flaws.  *First*, Kaplan has not plausibly alleged that any Defendant committed any fraud, made any misrepresentation, or breached any warranty.  *Second*, Kaplan fails to allege that he suffered any loss.  *Third*, all of Kaplan's claims are untimely.  And even beyond those three common flaws, each claim suffers from at least one independent defect

of its own.  Some claims are subsumed by New Jersey statute, others are not pled with the required particularity, and several fail to meet statutory requirements.  The complaint should be dismissed with prejudice.

## BACKGROUND

Kaplan alleges that, over the course of the past two decades, Defendants manufactured and sold "combination listed single data-bus residential burglar and fire alarm system control units" using "the brand names GE Security and Interlogix."[1]  Compl. (ECF No. 1) ¶¶ 6, 12.  The relevant feature common to these alarms and "[a]ll household combination listed burglar and fire alarm system[s]" is that their control units use a single data-bus circuit but combine the functions of "burglar alarm intrusion detection devices, such as audio glass break detectors and motion detectors," with the functions of a fire alarm.  *Id.* ¶¶ 44, 63.[2]

In 2002, Kaplan bought and installed his first combination alarm, a GE Security Version III, in his New Jersey home.  *Id.* ¶¶ 20–21.  In 2006, Kaplan upgraded to an Interlogix Concord IV combination alarm.  *Id.* ¶¶ 22–23.  That

---

[1] Kaplan sues various corporate entities that no longer exist or do not own the Interlogix brand.  Today, Carrier Fire & Security Americas, who Kaplan does not name as a Defendant, owns the Interlogix brand, though it no longer produces Interlogix alarms.

[2] Kaplan's counsel filed a substantively identical complaint in this District against two other manufacturers, Honeywell International Inc. and Resideo Technologies, Inc., alleging that their combination alarms are all similarly defective.  *See* Class Action Compl., *Badalamenti v. Resideo Techs., Inc.*, No. 2:22-CV-05592-CCC (D.N.J. Sept. 16, 2022), ECF No. 1.

alarm's schematic noted it was UL-listed, meaning it complied with UL standards (including two standards specifically applicable to alarm systems), and also met National Fire Protection Association (NFPA) standards. *Id.* ¶¶ 23–25. Although Kaplan does not allege that he ever experienced any issues with either alarm, he contends that he "first learned" that the 2006 alarm "was non-conforming" and "never complied" with UL and NFPA standards in August 2021, "when his alarm system was upgraded." *Id.* ¶¶ 27–28. Kaplan does not explain how he learned that his alarm was "non-conforming" or whether he, in fact, still has the alarm system that he claims is defective.

UL is a safety organization and a "nationally recognized testing laboratory," or NRTL, as defined by 29 C.F.R. § 1910.7(b). *See* Compl. ¶ 10 (describing UL as an NRTL). The Occupational Safety and Health Administration recognizes UL as an independent laboratory that "tests for safety" and lists or labels "equipment or materials" that meet UL's standards. 29 C.F.R. § 1910.7(b). UL also implements NFPA's more general safety requirements, and it is responsible for testing and certifying compliance with NFPA standards. *See* Compl. ¶ 78(d) (describing UL as an NRTL that tests compliance with UL and NFPA standards); Compl. Ex. E at 11 ("the actual implementation and testing of [NFPA] requirements in equipment is

conducted by Nationally Recognized Testing Laboratories").[3]  Collectively, UL's relevant standards provide that combination alarm systems using circuit wiring common to both a fire-alarm system and a non-fire-alarm system (like a burglar-alarm system) should be wired in such a way that certain faults on the non-fire-alarm-system components—such as short and open circuits—do not prevent the fire alarm from transmitting signals in an emergency.  Compl. ¶¶ 56–61.

Kaplan's complaint parrots a theory advanced by Jeffrey Zwirn, a third-party alarm specialist, that "[a]ll household combination listed burglar and fire alarm system control units" are defective and noncompliant with UL and NFPA standards. *Id.* ¶¶ 44, 70.  According to Kaplan and Dr. Zwirn, if a short circuit is introduced on a combination alarm's data-bus circuit, as in the case of a fire burning through the wiring, the fire alarm will not transmit a signal.  *Id.* ¶ 65; *see also id.* ¶ 70.  Kaplan attaches to his complaint a report commissioned by Zwirn, summarizing various testing performed and purportedly showing that Kaplan's theorized defect exists in Honeywell alarm systems.  *Id.* ¶¶ 73–74; Compl. Ex. E.  The authors of that report did not test any Interlogix alarms.  According to Kaplan and Zwirn, UL and NFPA standards require an alarm to continue functioning even with a short condition on the data bus.  *Id.* ¶¶ 53–61.  Although Kaplan does not emphasize it in his complaint,

---

[3] The Court may consider documents "integral to or explicitly relied upon in the complaint."  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).

Zwirn holds a patent on a design that competes with the design allegedly used in the Interlogix and Honeywell models. *See* Compl. Ex. E at 4.

UL rejected Dr. Zwirn's (and Kaplan's) theory. In October 2020, Dr. Zwirn reported the purported defect to UL. *Id.* at 81. UL responded by explaining in detail why combination alarms like Interlogix's complied with UL and NFPA standards, even with the supposed vulnerability that Dr. Zwirn had identified. *Id.* at 81–82. In particular, UL determined that the data-bus does not constitute "non-fire equipment" subject to the standards pointed to by Zwirn. *Id.* UL also pointed out that Dr. Zwirn was a member of the relevant UL Standard Technical Panel responsible for suggesting and developing residential alarm-safety standards, but that he had not recommended any change to the applicable standards. *Id.* at 81. Finally, UL emphasized that it "has not received information of field incidents associated with" any combination alarms. *Id.* at 82.

Zwirn's report makes clear that his (and Kaplan's) theory rests entirely on a disagreement with UL's interpretation of its own standards. *See, e.g.*, Compl. Ex. E at 16 (claiming that UL's interpretation is "inconsistent" with its standards), 17 (claiming that UL is "attempt[ing] to re-interpret the plain language of the standards"), 19 (claiming that "UL is incorrect" and that its interpretation is "an attempt to modify the plain language in the UL standard"), 20 (claiming that UL's suggestion "as to how UL is implementing this listing requirement is inaccurate"),

5

21–22 (claiming that "UL has violated Section 1.4 of UL 985" and "has certainly violated the spirit and intention of these requirements"), 47 ("UL's statements are erroneous"), 48 (claiming one of UL's statements is "false").

Although the materials Kaplan attaches to the complaint show that UL rejected Zwirn's theory, Kaplan filed this putative class-action lawsuit on behalf of all persons who own or have owned "combination listed single data-bus residential burglar and fire alarm system control units that were manufactured or sold by Defendants under the brand names GE Security and Interlogix." Compl. ¶¶ 12, 76–81. Kaplan alleges violations of New Jersey's Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-2 *et seq.* (Count 1); common law fraud (Count 2); negligent misrepresentation (Count 3); breach of express warranty (Count 4); breach of implied warranty (Count 5); breach of written warranty under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.* (Count 6); unjust enrichment (Count 7); and violations of New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. § 56:12-14 *et seq.* (Count 8). *Id.* ¶¶ 82–143. Kaplan contends that Interlogix fraudulently misrepresented that its alarms complied with UL and NFPA standards (Counts 1, 2, 3), breached express and implied warranties of UL-compliance (Counts 4, 5, 6, and 8), and obtained an unfair financial benefit by representing that its alarms were UL-compliant (Count 7). *See id.*

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), only complaints that "contain sufficient factual matter" to "state a claim to relief that is plausible on its face" survive dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To meet that standard, plaintiffs must plead more than a "sheer possibility that a defendant has acted unlawfully." *Id.* Allegations of a "conclusory nature" are "not entitled to assumptions of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011).

For claims sounding in fraud, plaintiffs must also plead the circumstances of their fraud allegations with particularity under Federal Rule of Civil Procedure 9(b). Rule 9(b)'s particularity requirements are "stringent." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). At minimum, a complaint must include "all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002).

## ARGUMENT

## I.   Kaplan Has Not Plausibly Alleged Any Fraud, Misrepresentation, Or Breach Of Warranty.

All of Kaplan's claims rest on the theory that Interlogix represented that its alarms were UL- and NFPA-compliant when they were not, and thus misled

consumers like him into purchasing them.[4]  But the materials that Kaplan attaches to and incorporates into his complaint make clear that UL disagrees with Kaplan's theory.  The design at issue was UL-compliant, a fact that UL recently reaffirmed.  Compl. Ex. E at 81–82.  His claims thus fail for a simple reason:  He cannot state a claim for fraud or breach of warranty where Interlogix accurately stated that UL certified its product as compliant with UL standards.

Whether an alarm satisfies UL standards is up to UL—not Kaplan, and not some outside party like Zwirn.  UL "oversees the process of developing and updating standards" for products like fire and burglar alarms.  *Warren Tech., Inc. v. UL LLC*, 962 F.3d 1324, 1326 (11th Cir. 2020); *see also supra* at 3–4.  In that role, it "tests products and authorizes the manufacturer to use its certification mark to indicate a product complies with the applicable standard."  *Warren*, 962 F.3d at 1326.  Here, there is no dispute that UL tested Interlogix's alarms and certified that they met UL and NFPA standards.  *See* Compl. ¶¶ 13 (alleging that Interlogix represented that its

---

[4] *See, e.g.*, Compl. ¶¶ 85 (asserting a CFA violation because Interlogix alarms "did not have characteristics, uses, benefits, or quantities that were advertised and promoted"), 142 (same as to TCCWNA), 97 (alleging common law fraud because "Defendants made material misrepresentations by advertising that the Alarm Systems met UL and NFPA standards"), 102 (same as to negligent misrepresentation), 108–09 (contending that Interlogix created and breached a warranty by "representing that the Alarm Systems w[ere] UL listed and complied with NFPA 72"), 125 (alleging MMWA violation based on breach of same purported warranty), 115 (asserting breach of implied warranty based on information Interlogix "represented in its 'listing'" of the systems), 132 (asserting unjust enrichment claim based on alleged UL and NFPA non-compliance).

alarms "met the requirements set forth in the applicable sections of both UL and NFPA 72 Standards"), 52 ("Defendants submitted their Combination Control Unit to UL to have it tested for compliance with applicable UL Standard 1023, UL Standard 985 and NFPA 72."). And UL has since reaffirmed that Interlogix's alarms meet UL and NFPA standards, even when presented with the theory of defect Kaplan advances in the complaint. *See* Compl. Ex. E at 81–82.

UL's certification of Interlogix's alarm systems that are at issue should be the beginning and the end of this case. Interlogix represented that its systems were UL Listed, and the complaint acknowledges that UL did, in fact, certify the combination alarm system as compliant with UL standards. *See* Compl. ¶¶ 25, 52. As a matter of law and logic, UL's determination that Interlogix's alarms meet its standards (even with Kaplan's alleged vulnerability) means that Interlogix could not have defrauded Kaplan into purchasing a noncompliant alarm, could not have negligently misrepresented its alarms' compliance with UL standards, and could not have breached any express or implied warranty that the alarm systems were UL-compliant.

Kaplan's complaint also makes clear that his disagreement is with UL's interpretations of its own standards, not with Interlogix's accurate representation that its systems have been certified as compliant by UL. *See, e.g.*, Compl. Ex. E at 16 (asserting that UL's interpretation is "inconsistent" with its standards), 17 (claiming

that UL is "attempt[ing] to re-interpret the plain language of the standards"), 19 (alleging that "UL is incorrect" and that its interpretation is "an attempt to modify the plain language in the UL standard"), 20 (contending that UL's suggestion "as to how UL is implementing this listing requirement is inaccurate"), 21–22 (claiming that "UL has violated Section 1.4 of UL 985" and "has certainly violated the spirit and intention of these requirements"), 47 ("UL's statements are erroneous"), 48 (alleging one of UL's statements is "false").  Kaplan's and Zwirn's disagreement with UL's application of its own standards does not mean that Interlogix committed any fraud or misrepresentation by marketing its alarms as UL-listed.

The Eleventh Circuit's decision in *Warren Technology, Inc. v. UL LLC* is directly on point and confirms the fundamental flaw common to all of Kaplan's claims.  There, Warren Technology—a manufacturer of heaters used in HVAC systems—brought misrepresentation claims against both UL and a competing manufacturer, Tutco.  962 F.3d at 1326.  Warren Technology alleged that "despite UL's having certified Tutco's UE heaters as compliant, Tutco's heaters do not, in fact, comply with the UL 1995 standard."  *Id.*  Warren Technology argued that "UL misapplied the standard, as a result of which the certification [that] UL issued and [that] Tutco claimed is a misrepresentation."  *Id.*  The district court dismissed the suit because Warren Technology failed to identify "convincing authority that it has the right to challenge UL's interpretation of its own standards."  *Warren Tech., Inc.*

10

*v. UL LLC*, 2018 WL 10550930, at \*8 (S.D. Fla. Oct. 31, 2018).  The Eleventh Circuit affirmed, explaining that "[d]etermining the conformance of a product with a UL standard obviously requires UL to interpret the standard," and that "even a misinterpretation" of that standard by UL would not be an actionable "falsity," as opposed to "a matter of opinion."  *Warren Tech.*, 962 F.3d at 1328.

The same is true here.  As in *Warren Technology*, Kaplan (and Zwirn) claim that UL's certification was based on a misinterpretation of its standards, and therefore that Interlogix's inclusion of that certification on its product constitutes a misrepresentation by Interlogix.  *See* 962 F.3d at 1326.  But as in *Warren Technology*, even assuming a misinterpretation by UL, Interlogix's accurate use of the UL certification does not give rise to an actionable "falsity."  *Id.* at 1328.

*Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185 (S.D. Fla. 2017), is likewise instructive.  In that case, the court dismissed a complaint with allegations similar to Kaplan's.  The *Koski* plaintiffs alleged that the defendants' HVAC heaters were required by UL standards "to have manually resettable thermal cutoffs," and that UL had certified the heaters "even though they do not have manually resettable thermal cutoffs."  *Id.* at 1189–90.  The court agreed with the defendants that the relevant UL standards did not require all HVAC heaters to have manually resettable thermal cutoffs, and it thus dismissed the complaint, including claims based on breaches of warranty, unjust enrichment, and fraudulent concealment.  *Id.* at 1194, 1199.  The

same principle controls here:  UL has determined that the applicable standards do not require what Kaplan claims they do.

Other courts have repeatedly recognized that UL is responsible for interpreting its standards and determining whether products meet those standards. *See, e.g.*, *United States v. 4500 Audek Model No. 5601 AM/FM Clock Radios*, 220 F.3d 539, 540–41 (7th Cir. 2000) ("Manufacturers submit samples of their products to UL for examination and testing so that UL may independently determine if the products meet specific standards and requirements for fire, electrical, and casualty hazards."); *Burt v. Makita USA, Inc.*, 212 F. Supp. 2d 893, 902 (N.D. Ind. 2002) ("UL makes the decision as to whether a product meets its standards so as to warrant the UL label."); *Bd.-Tech Elec. Co. v. Eaton Elec. Holdings LLC*, 2017 WL 4990659, at *6 (S.D.N.Y. Oct. 31, 2017) ("UL itself was the sole arbiter of whether the product in question was compliant."); *Underwriters Laboratories Inc. v. Innovative Indus. of Tampa, Inc.*, 2000 WL 631304, at *1 (N.D. Ill. May 16, 2000) (similar).  Consistent with that authority, this Court should reject Kaplan's theory of liability here.

Kaplan has not stated any claim against Interlogix because he has not alleged any misrepresentation or breach of warranty attributable to Interlogix.  To the contrary, the complaint and attached materials confirm that Interlogix accurately represented its products as having been tested and approved by UL.  And with no

misrepresentation, Kaplan has no case.  Moreover, as *Warren Technology* made clear, even if Kaplan were correct that *UL* misinterpreted its standards, it still does not follow that *Interlogix* made any actionable misrepresentation or breached any warranty.  *See* 962 F.3d at 1328 (explaining that it "does not follow, however, that even a misinterpretation of UL 1995 is a falsity . . . rather than a matter of opinion"); *see also Koski*, 347 F. Supp. 3d at 1195 (explaining that because "the Complaint alleges that the Certification Defendants have in fact certified, albeit improperly, that the heaters and HVAC equipment comply with the safety standards," it was unclear "whether there are any misrepresentations on the certification labels that can be attributed to the HVAC and Heater Manufacturer Defendants").  Kaplan accordingly cannot assert causes of action for fraud, misrepresentation, or breach of warranty.[5]

## II.    Kaplan Has Not Plausibly Alleged Any Loss.

Kaplan's claims are also subject to dismissal because he has not plausibly alleged that he suffered any loss as a result of Interlogix's conduct.  Each claim requires Kaplan to plausibly plead that he suffered at least some loss, and his CFA

---

[5] For the same reasons, and even assuming that Kaplan has alleged a "concrete and particularized" injury, *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), Kaplan's claims are not "fairly traceable" to Defendants' alleged conduct, but rather to UL's continued certification of Defendants' alarms, *see LaSpina v. SEIU Pa. State Council*, 985 F.3d 278, 284–85, 287 (3d Cir. 2021).

claim in particular requires a heightened showing of "ascertainable," or "quantifiable," damages.[6]

Kaplan has not pleaded sufficient facts to show that he suffered any loss at all. He does not allege that the purported defect in Interlogix's alarms ever manifested in the 20 years he used two different alarms; he does not allege that the purported defect ever caused an alarm to fail during an emergency; and he does not allege that he was ever even aware of, let alone affected by, a purportedly defective alarm during a 20-year period.  The most he can muster is that he discovered his 2006 alarm was "non-conforming" when he was already in the process of upgrading it for other reasons in 2021.  Compl. ¶ 28.  With respect to his 2002 alarm, he does not allege when, if ever, he discovered an issue.  Kaplan has not alleged that Interlogix caused him any harm, let alone any "ascertainable" harm.

---

[6] *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 242, 244 (D.N.J. 2020) (explaining that a CFA claim requires "ascertainable loss," meaning "either an out-of-pocket loss or a demonstration of loss in value that is quantifiable or measurable"); *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005) (requiring loss for common-law fraud); *Columbus LTACH Mgmt., LLC v. Quantum LTACH Holdings, LLC*, 2018 WL 2455922, at \*5 (D.N.J. May 31, 2018) (same for negligent misrepresentation); *Hoffman v. Nutraceutical Corp.*, 2013 WL 2650611, at \*4 (D.N.J. June 10, 2013) (same for express warranty); *Hoffman v. Nordic Naturals, Inc.*, 2014 WL 1515602, at \*7 (D.N.J. Apr. 17, 2014) (same for implied warranty); *Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 265 (D.N.J. 2011) (explaining that the MMWA "relies on the underlying state law," such that the claim fails if loss is insufficiently alleged for state warranty claims); *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 711 (D.N.J. 2011) (requiring loss for unjust enrichment claim); *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 380 (D.N.J. 2015) (dismissing TCCWNA claim premised on a CFA violation, as would be required here if loss is insufficiently alleged under the CFA).

14

Kaplan's few, vague references to "out of pocket losses," *id.* ¶ 18; *see also id.* ¶ 136, and his cursory statement about the "diminished value of the Alarm System," *id.* ¶ 18, are not enough to save his claims because both allegations are insufficient under Rule 8.  Kaplan does not offer any allegations showing that he experienced out-of-pocket losses relating to the purported defect.  While he mentions "the cost to repair the Alarm System," *e.g.*, *id.* ¶ 92, Kaplan does not allege that he (or anyone else) ever had to repair one of Interlogix's alarms due to the purported defect.  Nor could he, as he only "learned" of the alleged issue with his 2006 alarm after he was already upgrading the alarm in 2021 for unrelated reasons.  *Id.* ¶ 28.

Kaplan also fails to plausibly allege that the value of his alarm was diminished, considering the alarm never manifested his alleged defect, never failed to operate as intended, and never caused him to incur repair costs.  But even if Kaplan had plausibly alleged that the value of his alarm had been diminished, New Jersey does not recognize benefit-of-the bargain damages for these types of claims. *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 2009 WL 2043604, at *31 (D.N.J. July 10, 2009) (explaining that "price inflation theory" was not "cognizable under the NJCFA").  And regardless, Kaplan has not shown how any diminished value would be ascertainable or quantifiable, especially where he has not even alleged that any alarm actually failed to work as intended, let alone caused any harm to persons or property.

15

Courts in this District routinely dismiss claims, like Kaplan's, that are not supported by sufficient allegations of an actual loss.  *See, e.g.*, *Ponzio*, 447 F. Supp. 3d at 244–45 (rejecting as insufficient allegations that plaintiff had "overpaid for his Class Vehicle at the time of purchase, and the value of his Class Vehicle ha[d] been diminished as a result of the Paint Defect"); *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704–05 (D.N.J. 2011) (dismissing plaintiffs' fraud and misrepresentation claims for insufficient allegations of "how they experienced any out-of-pocket loss because of their purchases, or that the soda they bought was worth an amount of money less than the soda they were promised"); *In re Caterpillar, Inc., C13 &C15 Engine Prods. Liab. Litig.*, 2015 WL 4591236, at *38 (D.N.J. July 29, 2015) (dismissing CFA claim premised on plaintiffs paying more for a defective product than they would have paid for a nondefective product, because plaintiffs "offered no information to enable such comparative analysis").  This Court should do the same.

## III.   Kaplan's Claims Are Untimely.

Kaplan's claims all fail because they are barred on the face of the complaint by the applicable statutes of limitation.  *Hernandez v. Montoya*, 2022 WL 11703651, at *1, *4–5 (D.N.J. Oct. 20, 2022) (granting motion to dismiss where claims were barred by statute of limitations); *Southward v. Elizabeth Bd. of Educ.*, 2017 WL 111924, at *6–9, *12, *17 (D.N.J. Jan 11, 2017) (granting in relevant part motion to dismiss on limitations grounds).  His fraud, unjust enrichment, and TCCWNA

claims are each subject to a six-year limitations period, which means for his claims to be timely, the latest the limitations period could have begun was 2016.[7]  The remainder of his claims are subject to a four-year limitations period, for which the latest the limitations period could have begun was 2018.[8]  But Kaplan purchased his first alarm in 2002, which he replaced in 2006—*16 years* before filing these claims. Compl. ¶¶ 21–22.  Indeed, he used his 2006 alarm without issue for 15 years before upgrading it last year.  *Id.* ¶ 28.  Even assuming the statute of limitations began to run at some point *after* Kaplan purchased his second alarm in 2006, all of his claims expired well before he filed this lawsuit in 2022.

Kaplan attempts to invoke the discovery rule to argue all his claims are tolled, but he has pled no facts demonstrating that he is entitled to application of the rule. *Hubbard v. Corr. Med. Servs., Inc.*, 2008 WL 2945988, at *5–7 (D.N.J. July 30, 2008) (concluding that "Plaintiff has not established that he is entitled to equitable tolling under the discovery rule"); *see also Lopez v. Swyer*, 300 A.2d 563, 567–68

---

[7] *See* N.J.S.A. § 2A:14-1 (Count 1 (CFA), Count 2 (common-law fraud), Count 3 (negligent misrepresentation), Count 7 (unjust enrichment), Count 8 (TCCWNA)); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 425 (3d Cir. 1999) (Counts 1, 2, and 3); *Dunham v. Wells Fargo Bank*, 2019 WL 9657790, at *3–4 (D.N.J. Nov. 6, 2019) (Count 7); *Kendall v. CubeSmart L.P.*, 2015 WL 7306679, at *3 (D.N.J. Nov. 19, 2015) (Count 8).

[8] *See* N.J.S.A. § 12A:2-725 (Count 4 (express warranty), Count 5 (implied warranty), Count 6 (MMWA)); *Suriaga v. Gen. Elec. Co.*, 2019 WL 6799613, at *3 (D.N.J. Dec. 12, 2019) (Counts 4 and 5); *ACH Enters. 1 LLC v. Viking Yacht Co.*, 817 F. Supp. 2d 465, 472 (D.N.J. 2011) (Count 6).

(N.J. 1973) ("The burden of proof will rest upon the party claiming the indulgence of the [discovery] rule."). Instead, he simply states that he "learned" in August 2021 that his system was "non-conforming." Compl. ¶ 28; *see id.* ¶¶ 32, 34 (referring, without description, to his "due diligence"). Those threadbare allegations do not justify tolling.

Unable to satisfy his burden to plead why he could not have discovered the purported misrepresentations earlier, Kaplan half-heartedly mentions the equitable doctrine of fraudulent concealment. *See id.* ¶ 34. That doctrine cannot save his claims either. "A party that seeks to invoke the doctrine of fraudulent concealment to toll a statute of limitations must plead the circumstances of the fraudulent concealment with the particularity required by Fed. R. Civ. P. 9(b)." *In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 738 (D.N.J. 2016). In other words, Kaplan must allege the "who, what, when, where[,] and how" of Interlogix's alleged fraudulent concealment. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002).

Kaplan's tolling allegations fall considerably short of Rule 9(b)'s requirements. Kaplan summarily alleges that "[d]espite [his] due diligence"—what diligence, he does not say—he "could not have reasonably discovered" the purported defect, meaning Interlogix has thus "concealed" the defect. Compl. ¶ 32. Kaplan offers no allegations as to which Defendant, if any, fraudulently concealed the

purported defect, nor does he explain what acts or omissions any Defendant took to conceal the purported defect, let alone when or where such acts or omissions were conducted.  His complaint is insufficiently particularized to invoke equitable tolling as a matter of law.  *See Fuqua v. Bristol-Myers Squibb Co.*, 926 F. Supp. 2d 538, 550 (D.N.J. 2013) (rejecting allegations that were not "specific to each plaintiff's conduct," but rather were "pled in a generalized matter," as insufficient to justify "an equitable tolling doctrine that is generally used sparingly"); *see infra* at 24–28.

## IV. Kaplan's Tort Claims Are Subsumed By New Jersey's Products Liability Act Or Otherwise Precluded By The Economic Loss Doctrine.

In addition to the common flaws described above, Kaplan's claims under the CFA and for common-law fraud, negligent misrepresentation, breach of the implied warranty, and unjust enrichment (Counts 1, 2, 3, 5, and 7) should be dismissed because they are subsumed by New Jersey's Products Liability Act ("PLA"), N.J.S.A. § 2A:58C-1 *et seq.*  The PLA provides "one unified, statutorily defined theory of recovery for harm caused by a product" in product liability actions.  *In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. 2007).  The statute defines a "[p]roduct liability action" as "any claim or action brought by a claimant for harm *caused by a product*, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty."  N.J.S.A. § 2A:58C-1(b)(3) (emphasis added).  Claims falling within the statute's scope are those that generally allege harms "caused by a manufacturing, warning, or design defect," including economic

losses. *Sun Chem. Corp. v. Fike Corp.*, 235 A.3d 145, 153, 156 (N.J. 2020). If a claim *can* be brought under the PLA, it *must* be brought under the PLA. *Id.* at 156.[9]

Kaplan's claims—with the exception of his breach of express warranty, MMWA, and TCCWNA claims (Counts 4, 6, and 8)—all "sound in the type of products liability actions defined in the PLA" that "must be brought under the PLA." *Id.* Each of Kaplan's claims rests on a theory that Interlogix's products were defective and that product issues caused his purported harm. *See, e.g.*, Compl. ¶¶ 84–90 (alleging that Interlogix sold alarms it "knew to be defective"), 94–97 (alleging without supporting facts that Interlogix induced Kaplan "to purchase Alarm Systems with the Alarm System Defects"), 102 (reincorporating allegations that consumers "expected the Alarm System to be reliable," and to "sound[] an audible fire alarm inside the home," and to "function in its intended manner," *id.* ¶¶ 36–42), 118–19 (alleging that Interlogix failed to provide "reliable fire alarm protection that would not experience failure from its exposure to fire"), 132 (alleging that Interlogix alarms "were defective in that they do not provide reliable fire alarm life safety protection"). The PLA "is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other

---

[9] Kaplan has not attempted to allege a PLA claim. Nor could he: A defendant is liable under the PLA only if a defective product causes personal injury, and Kaplan pleads only economic losses unrelated to any personal injury. *See* N.J.S.A. § 2A:58C-1(b)(2).

products," and Kaplan's allegations plainly relate to such purported harms. *See Lead Paint Litig.*, 924 A.2d at 503. Counts 1, 2, 3, 5, and 7 thus fall within the scope of the PLA and are subsumed by it. *See, e.g.*, *Calender v. NVR Inc.*, 548 F. App'x 761, 764 (3d Cir. 2013) ("The PLA does not recognize negligence or implied breach of warranty as separate claims for harm caused by a product."); *Schraeder v. Demilec (USA) LLC*, 2013 WL 3654093, at *4 (D.N.J. July 12, 2013) ("Plaintiffs' unjust enrichment claim is nothing more than conclusory legal language used to dress up a claim that, in reality, sounds in product liability.").

The Third Circuit's recent decision in *Sun Chemical Corp. v. Fike Corp.*, 981 F.3d 231 (3d Cir. 2020), confirms that Kaplan's non-warranty claims are subject to dismissal under the PLA. In that case, the district court held that Sun Chemical could pursue a CFA claim on the theory "that Fike made a specific 'affirmative misrepresentation' about a specific feature of" a fire-suppression system, when "the system did not include that feature as promised." *Id.* at 238. But the Third Circuit did not allow Sun Chemical to pursue a misrepresentation claim that was, at bottom, the more general claim "that the product did not work." *Id.* The court emphasized that for Sun Chemical's latter claim, "there is no scenario in which the suppression system could simultaneously perform its intended purpose and still fail to fulfill Fike's representations on this point." *Id.*

The same is true here:  Kaplan does not allege that Interlogix misrepresented any specific feature of its alarms, but rather designed and marketed a product that was subject to "catastrophic failure," Compl. ¶ 6, and that was "not fit for [its] ordinary and intended purpose" of providing "reliable fire alarm protection," *id.* ¶ 118.   Under *Sun Chemical*, Interlogix's alleged misrepresentations go to the fundamental effectiveness of the product, not merely discrete omitted features. Kaplan's claims are therefore product-defect claims that must be brought, if at all, under the PLA.

Since *Sun Chemical*, courts in this District have consistently rejected claims like Kaplan's as subsumed by the PLA when they are based on allegations of harms caused by a manufacturing, warning, or design defect.  *See Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 824 (D.N.J. 2021) (concluding that even though plaintiff had tried "to shoehorn his allegations into other causes of action, it is clear from the innumerable boilerplate allegations that his claims sound in products liability"); *Levari Enters., LLC v. Kenworth Truck Co.*, 2022 WL 248101, at *2–3 (D.N.J. Jan. 27, 2022) (granting summary judgment on CFA, negligence, and warranty claims because despite plaintiffs' "boilerplate language," there was "no actual evidence of any affirmative misrepresentation," and the claims were "really just a claim for harm from a faulty product"); *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 2021 WL 364663, at *6–9 (D.N.J. Feb. 3, 2021)

(dismissing with prejudice various CFA, negligence, implied warranty, and common-law fraud claims as subsumed by the PLA).  Kaplan's boilerplate fraud allegations cannot transform his claims sounding in product liability into claims that fall outside the scope of the PLA.  This Court should join others in this District and dismiss them.

Even if they were not subsumed by the PLA, Kaplan's common-law-fraud and negligent-misrepresentation claims (Counts 2 and 3) are barred by New Jersey's economic-loss doctrine, under which "[PLA] and common law tort actions" cannot be asserted based on "consequential but purely economic losses." *Sun Chem.*, 235 A.3d at 150 n.2.  As common-law tort claims, Counts 2 and 3 are subject to the economic-loss doctrine.  Kaplan has only alleged purely economic losses for those claims.  He has not alleged that the purportedly defective alarms caused him any physical harm or otherwise damaged anything.  *See* Compl. ¶¶ 27–29 (alleging only that the alarms were "non-conforming").  In these circumstances, the economic-loss doctrine precludes Kaplan from pursuing claims for fraud and negligent misrepresentation.

## V.   Kaplan's Fraud Claims Fail Rule 9(b)'s Particularity Requirement.

Kaplan's fraud-based claims (Counts 1, 2, 3, and 7) fail as a matter of law because they are not pled with the particularity Federal Rule of Civil Procedure 9(b) requires.  Rule 9(b) requires a party "alleging fraud or mistake" to "state with

particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).
Because Kaplan's CFA, common-law fraud, unjust-enrichment, and negligent-
misrepresentation claims all sound in fraud, they must be pled with particularity.
*See Duncan v. Wells Fargo Bank, N.A.*, 2021 WL 22086, at \*4 (D.N.J. Jan. 4, 2021)
(Martinotti, J.) (noting that Rule 9(b)'s heightened pleading standard applies to CFA
claims); *Van Brunt v. Wells Fargo Bank, N.A.*, 2022 WL 4366414, at \*5 (D.N.J.
Sept. 21, 2022) (same for common law fraud); *Crete v. Resort Condos. Int'l, LLC*,
2011 WL 666039, at \*5 (D.N.J. Feb. 14, 2011) (same for unjust enrichment); *Gray
v. Bayer Corp.*, 2009 WL 1617930, at \*2 (D.N.J. June 9, 2009) (same for negligent
misrepresentation claims sounding in fraud).

That means that plaintiffs must allege facts detailing the "who, what, when,
where, and how" of their fraud claims.  Failure to do so requires dismissal.  *See In
re Rockefeller Ctr.*, 311 F.3d at 216–17; *see also, e.g.*, *In re Schering-Plough*, 2009
WL 2043604, at \*32–33 (dismissing "fraud and negligent misrepresentation claims"
that did "not meet the stringent requirements for pleading fraud under Rule 9(b)");
*FDIC v. Bathgate*, 27 F.3d 850, 876–77 (3d Cir. 1994) (affirming denial of a "motion
to amend the New Jersey Consumer Fraud Act claim and common law fraud claim
because the amended claims failed to satisfy the particularity requirement");
*Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85–86 & n.3 (3d Cir. 2015)

24

(affirming dismissal under Rule 9(b) of "negligent misrepresentation" and "unjust enrichment" claims, among others).

Kaplan has not satisfied Rule 9(b) for at least three reasons. **First**, he does not identify the statements on which he relied in purchasing his alarms, let alone who made those statements or when they were made. *See* Compl. ¶¶ 21–22. Although Kaplan cites his 2006 alarm's schematic and installation guide, *id.* ¶¶ 24–25, Kaplan does not allege that he reviewed either document before purchasing the 2006 alarm, let alone the 2002 alarm. Without identifying the statements he relied on in deciding whether to purchase his alarms, Kaplan cannot plausibly allege that had he known of his alarms' purported noncompliance with UL standards, he would not have purchased them. *See, e.g.*, *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 503–05 (D.N.J. 2014) (explaining that common law fraud requires "reasonable reliance" and dismissing claim because plaintiffs did not allege "what written materials contained misrepresentations"); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012) (dismissing complaint where plaintiff "failed to specifically allege that he saw any of the statements that he claims are misleading, or where he saw them, under what circumstances, how they impacted his purchasing decision, etc.").

**Second**, Kaplan has not alleged any of the particular circumstances of either of his alarm purchases. *See* Compl. ¶¶ 21–22. He has not identified which

Defendant—if any—actually sold him his alarm.  Nor has he offered any indication that his alarm system was purchased directly from Interlogix, the manufacturer, rather than a third-party distributor.  Kaplan's failure to plead the "date, time[,] and place" of the alleged misrepresentations likewise justifies dismissal.  *See, e.g.*, *SAT Agiyar, LLC v. 7-Eleven, Inc.*, 2020 WL 3546821, at *5 (D.N.J. June 30, 2020); *Cnty. of Essex v. Aetna Inc.*, 2018 WL 6584920, at *7–8 (D.N.J. Dec. 13, 2018).

**Third**, Kaplan makes no specific allegations as to what any Defendant knew about the alleged defect, or any other circumstances particular to any Defendant. Complaints "that generally allege fraud as against multiple defendants, without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed do not satisfy Rule 9(b)."  *Poling v. K. Hovnanian Enters.*, 99 F. Supp. 2d 502, 508 (D.N.J. 2000).   Pleadings containing only "collectivized allegations against 'defendants' do not suffice."  *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999).  Here, Kaplan flatly alleges, in collectivized form and without any elaboration, that "Defendants knew or were required to know that [their] product was non-conforming before [they] submitted [the] equipment to UL."  Compl. ¶ 52; *see also id.* ¶ 75.  Kaplan does not otherwise include any particularized allegations about how he came to learn of the alleged defect in his 2006 alarm, let alone his 2002 alarm.  *See* Compl. ¶¶ 21–28.  He does not allege what any Defendant knew, how they came to know it, when they came to

know it, which Defendant made the purported misrepresentations, what any Defendant represented, when or where any Defendant made the alleged misrepresentations, or how he was deceived by them. *See Naporano*, 79 F. Supp. 2d at 512 (dismissing fraud claims that did not specify "which defendants were involved in which misrepresentations" and that did not "inform defendants of the substance of these alleged misrepresentations"); *Rapid Models & Prototypes*, 71 F. Supp. 3d at 504 n.7 (dismissing "collectivized allegations that 'Defendants' engaged in wrongful conduct, without specifying the nature of each defendant's alleged participation in the fraud"); *Hale v. Stryker Orthopaedics*, 2009 WL 321579, at *5–6 (D.N.J. Feb. 9, 2009) ("Plaintiffs have failed to plead, except in the vaguest of terms, who made a misrepresentation to whom and the general content of the misrepresentation.").

Kaplan's fraud-based claims fail to meet the heightened pleading standard multiple times over, and this Court should dismiss them on that basis.

## VI.   Kaplan's Warranty Claims Fail As A Matter Of Law.

To state a claim for breach of express warranty under New Jersey law, a plaintiff must allege: "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Arlandson*

*v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 706 (D.N.J. 2011). "To state a claim for breach of the implied warranty of merchantability under New Jersey law, a plaintiff must allege (1) that a merchant sold goods, (2) which were not merchantable at the time of sale, (3) injury and damages to the plaintiff or its property, (4) which were [ ] caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of injury." *Hoffman v. Nordic Naturals, Inc.*, 2014 WL 1515602, at *7 (D.N.J. Apr. 17, 2014).

Both of Kaplan's warranty claims fail at the outset because he has not alleged that he provided any Defendant, let alone every Defendant, with pre-suit notice of an alleged defect and an opportunity to cure. New Jersey has a "notice requirement for an express warranty claim," *Kury v. Abbott Laboratories, Inc.*, 2012 WL 124026, at *7 (D.N.J. Jan. 17, 2012), as well as for an implied-warranty claim, *Nordic Naturals*, 2014 WL 1515602, at *7. *See also* N.J.S.A. § 12A:2-607(3)(a) ("Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]"). Providing notice pursuant to N.J.S.A. § 12A:2-607(3)(a) is a "condition precedent" to filing certain claims, including "breach of warranty." *JOC, Inc. v. ExxonMobil Oil Corp.*, 2010 WL 1380750, at *4 (D.N.J. Apr. 1, 2010). Kaplan's unexplained, boilerplate allegation that he "notified Defendants of the breach within a reasonable time, and/or was not required to do so

because affording Defendants a reasonable opportunity to cure [their] breach of written warranties would have been futile," Compl. ¶ 110, is insufficient under Rule 8.[10] Kaplan does not allege the form of the notice, what it contained, which Defendant received it, the response Kaplan received, or the length of time he allowed for any Defendant to cure.

As numerous courts have held, a plaintiff's failure to provide the requisite notice warrants dismissal. *See, e.g.*, *Santiago v. Total Life Changes LLC*, 2021 WL 5083835, at *4–5 (D.N.J. Nov. 2, 2021) (dismissing express and implied warranty claims where "Defendant was not given pre-suit notice prior to filing the original Complaint"); *Kury*, 2012 WL 124026, at *7 (dismissing an express warranty claim where there was "no dispute that Plaintiff has failed to plead that she provided the pre-litigation notice of breach"); *Hammer v. Vital Pharms., Inc.*, 2012 WL 1018842, at *11 (D.N.J. Mar. 26, 2012) ("[B]ecause Plaintiff has failed to allege that the condition precedent has been met—sending a pre-litigation notice—Plaintiff's express and implied warranty claims necessarily fail.").

With respect to Kaplan's express-warranty claim, that claim also fails because he has not identified any express warranty that Interlogix purportedly breached.

---

[10] Kaplan's cursory allegation that pre-suit notice was futile does not cure this deficiency. *See Brame v. Gen. Motors LLC*, 535 F. Supp. 3d 832, 840–41 (E.D. Wisc. 2021); *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 144 (E.D.N.Y. 2018).

Kaplan does not even allege what—if anything—he saw or read before he purchased either his 2002 or his 2006 alarm.  Instead, Kaplan appears to allege that Interlogix represented that its alarms were "UL listed and complied with NFPA 72," and that this alone constituted an express warranty of compliance with those standards. Compl. ¶ 108.  If so, Kaplan's claim fails for the reasons described above:  UL certified Interlogix's alarms as compliant with UL and NFPA standards, and it continues to certify Interlogix's alarms as compliant even assuming they possess the vulnerability Kaplan alleges.  Kaplan thus has not plausibly alleged any breach on this basis.  *See Koski*, 347 F. Supp. 3d at 1195 (finding that plaintiffs had not plausibly alleged that the manufacturer defendants were "responsible for any misrepresentations in the [UL] certification labels" because UL had, in fact, certified the products).  Regardless, Kaplan has not pled sufficient facts to show that the UL listing itself constitutes an express warranty forming the "basis of the bargain" as required. *Mendez v. Shah*, 94 F. Supp. 3d 633, 640 (D.N.J. 2015) (dismissing claim because "[a]bsent allegations that false statements made to plaintiff became the basis of the bargain for the purchase of the good, no claim for breach of express warranty can be sustained"); *Semeran v. BlackBerry Corp.*, 2016 WL 406339, at *5 (D.N.J. Feb. 2, 2016) (dismissing claim because plaintiff failed to allege that the challenged statements "amounted to an express warranty and that they became a basis of the bargain").

30

With respect to breach of an implied warranty of merchantability, Kaplan's claim should likewise be dismissed because he has not alleged, as state law requires, that he suffered any physical harm, or even that the alleged defect deprived him of his alarms' functionality. Under New Jersey law, a plaintiff must show that an alleged defect caused actual injury or impaired the product's functionality, not merely that a defect existed, before a claim for breach of the implied warranty will arise. In other words, a plaintiff must allege how the purported defect rendered a product "unfit for [its] purpose," *Hammer*, 2012 WL 1018842, at *12, or describe the "physical harm[] resulting from the product," *Bowman v. RAM Med., Inc.*, 2012 WL 1964452, at *5 (D.N.J. May 31, 2012). *See also Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 508–09 (D.N.J. 2012) (dismissing implied warranty claim where plaintiffs failed to allege product did not satisfy "the purposes for which it is intended" or "that it operated improperly"); *Hoffman v. Nutraceutical Corp.*, 2013 WL 2650611, at *4 (D.N.J. June 10, 2013) (dismissing implied warranty claim because "Plaintiff fails to establish what damages resulted from the product containing said" issue).

Although Kaplan attempts to allege that the purported defect caused him to incur out-of-pocket losses and diminished the value of his alarms, his complaint is devoid of allegations that his alarms caused him any physical harm or that the purported defect ever caused his alarms to function improperly. *See* Compl. ¶¶ 18,

92.  Instead, Kaplan alleges that he only discovered the purported defect once he was already in the process of upgrading his alarm, apparently for reasons unrelated to the defect.  *Id.* ¶ 28.  This is insufficient to state an implied-warranty claim.

## VII.  Kaplan's MMWA Claim Fails As A Matter Of Law.

The MMWA provides a private cause of action for consumers who are "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty[] [or] implied warranty."  15 U.S.C. § 2310(d)(1).  "A claim under the MMWA relies on the underlying state claim." *Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 265 (D.N.J. 2011); *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("[T]his court's disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims.").  Kaplan's MMWA claim (Count 6) fails for three independent reasons.

***First***, the Court lacks jurisdiction over the claim.  The MMWA provides that "[n]o claim shall be cognizable in a suit" that is "brought as a class action, and the number of named plaintiffs is less than one hundred."  15 U.S.C. § 2310(d)(3); *see also, e.g.*, *Kavon v. BMW of N. Am., LLC*, 2022 WL 1830797, at *4–5 (D.N.J. June 3, 2022) (dismissing MMWA claim where the complaint "name[d] fewer than 100 plaintiffs, and therefore d[id] not satisfy the MMWA's procedural prerequisites"); *Simner v. LG Elecs. U.S.A., Inc.*, 2022 WL 3152707, at *10 (D.N.J. Aug. 8, 2022)

(same).  Although Kaplan attempts to assert an MMWA claim in a suit that is "brought as a class action," the number of named plaintiffs—just one—is 99 plaintiffs short of the jurisdictional minimum.  *See* 15 U.S.C. § 2310(d)(3).  The Court should dismiss the claim for this reason alone.

*Second*, Kaplan's MMWA claim (like his warranty claims) fails to meet the requirements for pre-suit notice.  The MMWA, like New Jersey law, requires a consumer to provide a warrantor with a "reasonable opportunity" to cure an alleged defect before any litigation begins.  *Id.* § 2310(e); *see also, e.g.*, *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 601 n.11 (D.N.J. 2016) (noting § 2310(e)'s requirement of a "reasonable opportunity to cure").  As discussed above, Kaplan does not plausibly allege that he provided any Defendant, let alone every Defendant, with a "reasonable opportunity" to cure the alleged defect.

*Third*, Kaplan's MMWA claim fails because his underlying state warranty claims are deficient as a matter of law.  *See Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010) (holding that, because the district court had "correctly dismissed" plaintiff's state warranty claims, his "Magnuson-Moss claim was also properly dismissed").

## VIII.  Kaplan Does Not State A Claim For Unjust Enrichment.

### A.    Kaplan Does Not Allege The Required Direct Relationship.

To state a claim for unjust enrichment, a plaintiff must allege "both that defendant received a benefit and that retention of that benefit without payment would

be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994); *see also, e.g.*, *Arlandson*, 792 F. Supp. 2d at 711 (similar).  In New Jersey, an unjust-enrichment claim requires "a direct relationship between the parties," or otherwise some mistaken conferral of a benefit on an indirect party, in order for a benefit to have been conferred by the plaintiff on the defendant.  *Potts v. Johnson & Johnson Consumer Inc.*, 2021 WL 2177386, at *11 (D.N.J. May 28, 2021).

Kaplan has not plausibly alleged any direct relationship between him and any Defendant.  He does not allege any facts about the purchase of his 2002 and 2006 alarm systems, much less the person or entity from whom he acquired the system.  In consumer cases like this one, "if a plaintiff purchases a product from a third party retailer, rather than the defendant, then no direct relationship exists where the plaintiff purchaser conferred a benefit on the defendant."  *Hughes v. Panasonic Consumer Elecs. Co.*, 2011 WL 2976839, at *27 (D.N.J. July 21, 2011); *see also Potts*, 2021 WL 2177386, at *11 ("[T]here is no dispute that [p]laintiffs did not purchase the cosmetic products directly from [defendant], which is a manufacturer, not a retailer.").  Kaplan does not allege that he directly purchased his alarms from any Defendant, rather than from a third-party retailer.  That deficiency precludes his claim.

Another court in this District confronted a similar situation in *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275 (D.N.J. 2011), and granted a motion

to dismiss.  In *Green*, the plaintiff alleged "that he purchased a brewer," but "fail[ed] to allege if he purchased the brewer directly from Defendants."  *Id.* at 283.  *Green* held that "[a]bsent an allegation of a direct relationship or a mistake, Plaintiff has insufficiently pled a claim for unjust enrichment."  *Id.*  This Court should do the same here.

### B.    Kaplan Has Adequate Remedies At Law.

"Restitution for unjust enrichment is an equitable remedy, available *only when* there is no adequate remedy at law."  *Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 814 (D.N.J. 2000) (emphasis added); *see also, e.g.*, *Santiago v. Total Life Changes LLC*, 2022 WL 2619855, at *4 (D.N.J. July 7, 2022) (same); *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 505 (D.N.J. 2006) (same).  It is not available here, where Kaplan's warranty claims (if adequately pled) would provide an adequate remedy at law.

Kaplan's unjust-enrichment claim is substantively the same as his claims for breach of warranty.  The allegation underlying both Kaplan's warranty claims and his unjust-enrichment claim is that Interlogix sold him defective alarms, ostensibly because the alarms were supposed to be compliant with UL and NFPA standards and Kaplan contends they were not.  *Compare* Compl. ¶¶ 108–09 (express warranty), *and id.* ¶¶ 115–18 (implied warranty), *with id.* ¶ 132 (unjust enrichment).

Because the allegations underlying those claims are substantively identical, a warranty claim provides an adequate remedy at law. *See Santiago*, 2022 WL 2619855, at *4 ("This Court already dismissed Plaintiffs' unjust enrichment claims, noting that the claims were identical to their claims for breach of warranty, and that Plaintiffs had an adequate remedy at law and, therefore, the unjust enrichment claim must be dismissed."). That Kaplan's legal claims are insufficiently pled makes no difference, because it "is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *See Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017); *see also, e.g.*, *Justice v. United States*, 6 F.3d 1474, 1482 n.16 (11th Cir. 1993) ("This is not to say that a legal remedy must succeed to be adequate."). His equitable unjust enrichment claim should be dismissed. *See, e.g.*, *Shaulis*, 865 F.3d at 16; *Stone v. Prudential Fin., Inc.*, 2021 WL 5413989, at *3 (D.N.J. Nov. 19, 2021) ("Because Plaintiff has an adequate remedy at law, [the unjust enrichment claim] will be dismissed with prejudice."); *Norcom Rsch., LLC v. Net2Phone Glob. Servs., LLC*, 2021 WL 1153140, at *6 (D.N.J. Mar. 26, 2021) (dismissing unjust enrichment claim because plaintiff could plead a claim under "a valid and enforceable contract"); *Ortiz v. Goya Foods, Inc.*, 2020 WL 1650577, at *5–6 (D.N.J. Apr. 3, 2020) (concluding that, because "Plaintiff has an adequate remedy at law," his "claim for unjust enrichment must be dismissed").

### C.   Unjust Enrichment Claims Cannot Be Based Solely On Defective Products.

Kaplan's unjust-enrichment claim fails because New Jersey does not permit claims for unjust enrichment that are "essentially another way of stating a traditional tort claim." *Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936–37 (3d Cir. 1999); *see also Gray v. Bayer Corp.*, 2009 WL 1617930, at *3 (D.N.J. June 9, 2009) (finding that plaintiff's "claim of unjust enrichment is subsumed by . . . her tort claims"); *Blystra v. Fiber Tech Grp., Inc.*, 407 F. Supp. 2d 636, 644 n.11 (D.N.J. 2005) ("[T]he Court will treat the Plaintiffs' unjust enrichment claim as subsumed by their other tort claims, and not as an independent cause of action.").

The decision in *McGuire v. BMW of North America, LLC*, 2014 WL 2566132, at *2–3 (D.N.J. June 6, 2014), illustrates the problem with Kaplan's claim in particular, which is based purely on the sale of an allegedly defective product.  In *McGuire*, the "crux of the claim" was that BMW had been "unjustly enriched" because it was aware of a defect but "failed to disclose it and misled Plaintiff and Class members regarding the features and quality" of the product.  *Id.* at *3.  The court concluded that the plaintiff had "failed to state a facially plausible claim of unjust enrichment because the conduct underlying Plaintiff's unjust enrichment claim sounds in tort," and "New Jersey does not recognize unjust enrichment as an

independent tort cause of action." *Id.*[11]   Kaplan's claim is just like the claim that was dismissed in *McGuire*, and it should be dismissed here, too.

## IX.   Kaplan's New Jersey TCCWNA Claim Fails As A Matter Of Law.

New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act provides that a seller may not give "any written consumer warranty, notice or sign . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller." N.J.S.A. § 56:12-15; *see also Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 922 (3d Cir. 2015).   "The TCCWNA only bolsters rights established by other laws; it does not create any new consumer rights."   *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 380 (D.N.J. 2015).   "To properly state a claim under the TCCWNA, a plaintiff must allege each of the following: (1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the 'seller offers a consumer contract' or gives or displays any written notice, or sign; and (4) the contract, notice or sign includes a provision that 'violate[s] any legal right of a consumer' or responsibility of a seller."   *Id.* (quoting *Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 135 (3d Cir. 2014)).

Kaplan's final cause of action suffers from three fatal deficiencies.   ***First***, Kaplan has not identified any allegedly unlawful provision in any warranty or notice

---

[11] Under New Jersey law, Kaplan cannot state a product-defect claim for purely economic losses under either the PLA (which governs all New Jersey product defect claims) *or* under state tort law.

that Interlogix provided to him. Courts in this District evaluating TCCWNA claims consider whether particular contractual provisions violate a plaintiff's clearly established rights. *See e.g.*, *Castro v. Sovran Self Storage, Inc.*, 114 F. Supp. 3d 204, 211–21 (D.N.J. 2015) (granting in part and denying in part a motion to dismiss TCCWNA claims premised on various provisions in a rental agreement, accompanying insurance addendum, and notice to vacate); *Gillette v. Toyota Motor Sales, U.S.A., Inc.*, 980 F. Supp. 2d 660, 662–63 (D.N.J. 2013) (finding that a notice containing a certified-mail notification requirement did not support a TCCWNA claim). Because Kaplan has identified no written provision that violated any of his clearly established rights, his claim should be dismissed. *See Trexler v. Dodge City, Inc.*, 2021 WL 754004, at *6 (D.N.J. Feb. 26, 2021) ("Plaintiffs do not articulate what right has been violated or what contract violates such right.").

**Second**, Kaplan's TCCWNA claim should be dismissed to the extent it is predicated on an alleged violation of New Jersey's Consumer Fraud Act. *See* Compl. ¶ 142. His CFA claim fails as a matter of law for the reasons discussed above, and it therefore cannot serve as a basis for his TCCWNA claim. *Mladenov*, 124 F. Supp. 3d at 380 (explaining that because plaintiffs "failed to state viable CFA claims, [their] TCCWNA claims cannot survive to the extent they rely on the alleged CFA violations").

*Third*, Kaplan has not pled sufficient facts to establish that Interlogix is a "seller" within the meaning of the statute. *See id.* (requiring a plaintiff to allege that "the defendant is a seller"). Kaplan does not allege where he purchased his alarms or from whom he purchased them, *see* Compl. ¶¶ 21–22, let alone provide any indication that Interlogix, rather than a third-party retailer, sold them directly to consumers. Kaplan's pleading deficiency likewise requires dismissal. *See Rosenzweig v. Transworld Sys. Inc.*, 2017 WL 3025557, at *7 (D.N.J. July 14, 2017) ("Plaintiff does not allege that Defendant is a seller, lessor, or lender.").

## CONCLUSION

The complaint should be dismissed with prejudice in its entirety.

Dated:  October 31, 2022

Respectfully submitted,

*/s/ Justin T. Quinn*

Justin T. Quinn
ROBINSON MILLER LLC
110 Edison Place, Suite 302
Newark, NJ 07102
Tel.:  (973) 690-5400
Fax:  (973) 466-2761
Email: jquinn@rwmlegal.com

K. Winn Allen, P.C. (admitted *pro hac vice*)
Devin Anderson (admitted *pro hac vice*)
Mary Elizabeth Miller (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel.:  (202) 389-5000
Fax:  (202) 389-5200
Email: winn.allen@kirkland.com
         devin.anderson@kirkland.com
         mary.miller@kirkland.com

*Counsel for Defendants*