# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

SAMUEL L. KAPLAN, on behalf of himself and the Putative Class,

        Plaintiffs,

v.

GENERAL ELECTRIC COMPANY d/b/a GE, UNITED TECHNOLOGIES CORP., UTC FIRE & SECURITIES AMERICAS CORPORATION, INC., d/b/a INTERLOGIX, and CARRIER GLOBAL CORPORATION,

        Defendants.

Civil Action No.: 2:22-cv-05296-BRM-ESK

MOTION RETURN DATE:
02/06/2023

**ORAL ARGUMENT REQUESTED
[L.Civ.R. 78.1(b)]**

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

**Of Counsel and on the Brief:**
    Joseph LoPiccolo, Esq.
    Randee M. Matloff, Esq.
    Anthony S. Almeida, Esq.

**POULOS LOPICCOLO, PC**
1305 South Roller Road
Ocean, New Jersey 07712
Tel: (732) 757-0165
Fax: (732) 358-0180
Email: lopiccolo@pllawfirm.com

**NAGEL RICE LLP**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Tel: (973) 618-0400
Fax: (973) 618-9194
rmatloff@nagelrice.com

*Attorneys for Plaintiff Samuel L. Kaplan*

# TABLE OF CONTENTS

**Pages**

TABLE OF CONTENTS.        .        .        .        .        .        .        .        i-ii

TABLE OF CITATIONS.        .        .        .        .        .        .        .        iii-xii

PRELIMINARY STATEMENT        .        .        .        .        .        .        1-2

STATEMENT OF FACTS        .        .        .        .        .        .        .        2-5

      A.        General Background        .        .        .        .        .        .        2-4

      B.        Defendants' Knowledge of the Alarm System Defect        .        4-5

LEGAL STANDARD        .        .        .        .        .        .        .        .        6-7

LEGAL ARGUMENT        .        .        .        .        .        .        .        .        7-40

      POINT I: PLAINTIFF HAS ADEQUATELY ALLEGED
      FRAUD, MISREPRESENTATION AND BREACH OF
      WARRANTY AGAINST THE DEFENDANTS        .        .        .        7-13

      POINT II: PLAINTIFF HAS SUFFICIENTLY PLED
      DAMAGES TO SURVIVE THIS MOTION TO DISMISS        .        13-15

      POINT III: PLAINTIFF'S CLAIMS ARE NOT
      TIME-BARRED BECAUSE HE HAS SUFFICIENTLY
      PLED EQUITABLE TOLLING        .        .        .        .        .        16-18

      POINT IV: THE NEW JERSEY PRODUCTS LIABILITY
      ACT DOES NOT SUBSUME ANY OF PLAINTIFFS'
      LEGAL THEORIES UNDER NEW JERSEY LAW        .        .        18-25

      POINT V: PLAINTIFF'S MISREPRESENTATION AND
      OMISSION- BASED FRAUD CLAIMS ARE PLED
      WITH THE REQUISITE RULE 9(b) PARTICULARITY        .        25-33

POINT VI: PLAINTIFF HAS ADEQUATELY PLED
EXPRESS AND IMPLIED WARRANTY CLAIMS        .        .        33-36

    A.        Plaintiff Has Adequately Pled a Claim for Breach
        of Express Warranty Based on Defendants' False
        Affirmations        .        .        .        .        .        .        33-35

    B.        The Plaintiff's Breach of Implied Warranty Claim
        Must Survive        .        .        .        .        .        .        35-36

    C.        The Plaintiffs' MMWA Claim Must Survive.        .        36

POINT VII: PLAINTIFF HAS ADEQUATELY PLED AN
UNJUST ENRICHMENT CLAIM IN THE SEVENTH
COUNT        .        .        .        .        .        .        .        .        .        37-38

POINT VIII: PLAINTIFF'S NJ TCCWNA CLAIM
ADEQUATELY SETS FORTH A CLAIM FOR RELIEF        .        39-40

CONCLUSION        .        .        .        .        .        .        .        .        .        40

CERTIFICATE OF SERVICE        .        .        .        .        .        .        .        42

# TABLE OF CITATIONS

**Pages**

## *Cases*

Alloway v. Gen. Marine Indus.,
    149 N.J. 620 (1997)   .    .    .    .    .    .    .    19,39

Alsup v. 3-Day Blinds, Inc.,
    435 F. Supp. 2d 838 (S.D. Ill. 2006)   .    .    .    .    .    13

Arlandson v. Hartz Mountain Corp.,
    792 F. Supp. 2d 691 (D.N.J. 2011)   .    .    .    .    .    36

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)   .    .    .    .    .    .    .    6

Baird v. American Medical Optics,
    155 N.J. 54 (1988) .    .    .    .    .    .    .    16-17

Barrett v. Tri-Coast Pharmacy, Inc.,
    518 F. Supp. 3d 810 (D.N.J. 2021)   .    .    .    .    24

Blystra v. Fiber Tech Grp., Inc.,
    407 F. Supp. 2d 636, 645 (D.N.J. 2005)   .    .    .    39

Bosland v. Warnock Dodge, Inc.,
    396 N.J. Super. 267 (N.J. App. Div. 2007),
    aff'd and remanded on other grounds, 197 N.J. 543 (2009)   .    40

Board-Tech Elec. Co. Ltd. v. Eaton Elec. Holdings LLC,
    No. 17-cv-5028, 2017 WL 4990659 (S.D.N.Y. Oct. 31, 2017)   .    10

Bregman Screen & Lumber Co. v. Bechefsky,
    83 A.2d 804 (N.J. App. Div. 1951)   .    .    .    .    .    33

Bruce v. Jet.com, Inc.,
    482 F. Supp. 3d 731 (E.D. Tenn. 2020)   .    .    .    .    13

Burt v. Makita USA, Inc.,
     212 F. Supp. 2d 893 (N.D. Ind. 2002) .    .    .    .    .    10

Calender v. NVR Inc.,
     548 F. App'x 761 (3d Cir. Dec. 13, 2013)    .    .    .    .    24

Christidis v. Pennsylvania Mortgage Trust,
     717 F.2d 96 (3d Cir. 1983)    .    .    .    .    .    26

Craftmatic Sec. Litig. v. Kraftsow,
     890 F.2d 628 (3d Cir. 1989)    .    .    .    .    .    25-26

Creadore v. Shades of Light,
     No. 01 CIV. 4110 (GBD),
     2003 WL 152003 (S.D.N.Y. Jan. 21, 2003)    .    .    .    13

Davis v. U.S. Gauge,
     844 F. Supp. 1443 (D. Kan. 1994)    .    .    .    .    13

Dean v. Barrett Homes, Inc.,
     204 N.J. 286 (2010)    .    .    .    .    .    20-21

DeFrank v. Samsung Elecs. Am., Inc.,
     No. CV1921401KMJBC,
     2020 WL 6269277 (D.N.J. Oct. 26, 2020)    .    .    .    32,37-38

Devane v. Church & Dwight Co.,
     No. 319CV09899BRMLHG,
     2020 WL 998946 (D.N.J. Feb. 28, 2020)    .    .    .    34

Durso v. Samsung Electronics Am., Inc.,
     No. 12-CV-5352, 2014 WL 4237590 (D.N.J. Aug. 26, 2014)    .    26

Dzielak v. Whirlpool Corp.,
     26 F. Supp. 3d 304 (D.N.J. 2014)    .    .    .    .    36

Dzielak v. Whirlpool Corp.,
     No. CV 12-89 (KM) (JBC),
     2019 WL 6607220 (D.N.J. Dec. 5, 2019)    .    .    .    34

Elias v. Ungar's Food Products, Inc.,
        252 F.R.D. 233 (D.N.J. 2008)   .   .   .   .   .   .   33

Estate of Knoster v. Ford Motor Co.,
        No. 01–3168, 2008 WL 5416399 (D.N.J. Dec. 22, 2008)   .   .   19-20

Falk v. Gen. Motors Corp.,
        496 F. Supp. 2d 1088 (N.D. Cal. 2007)   .   .   .   .   27

Feldman v. Mercedes–Benz USA,
        Civ. No. 2:11–cv–00984 (WJM),
        2012 WL 6596830 (D.N.J. Dec. 18, 2012)   .   .   .   .   27

Gelis v. Bayerische Motoren Werke Aktiengesellschaft,
        No. 2:17-cv-07386 2018 WL 6804506 (D.N.J. Oct. 30, 2018)   .   37

Gonzales v. Ethicon Corp., Inc.,
        Civil Action No. 3:18-cv-17658 (PGS) (DEA),
        2019 WL 4306352 (D.N.J. Sep. 11, 2019)   .   .   .   .   17

Gray v. Bayer Corp.,
        No. CIV.A. 08-4716JLL,
        2009 WL 1617930 (D.N.J. June 9, 2009)   .   .   .   .   38-39

Gray v. BMW of North America, LLC,
        22 F. Supp. 3d 373 (D.N.J. 2014)   .   .   .   .   31

Gujral v. BMW of N. Am., LLC,
        No. 19-CV-20581, 2022 WL 3646627 (D.N.J. Aug. 23, 2022)   .   38

Hale v. Stryker Orthopaedics,
        No. CIV 08-3367(WJM),
        2009 WL 321579 (D.N.J. Feb. 9, 2009)   .   .   .   .   31

Henderson v. Volvo Cars of North America,
        Civ. No. 09–4146 (DMC)(JAD),
        2010 WL 2925913 (D.N.J. July 21, 2010)   .   .   .   .   27

Highland Tank & Mfg. Co. v. PS Intern., Inc.,
        393 F. Supp. 2d 348 (W.D. Pa. 2005)   .   .   .   .   .   7

Hubbard v. Correctional Medical Services, Inc.,
        Civil Action No. 04–3412 (SDW),
        2008 WL 2945988 (D.N.J. July 30, 2008)    .        .        .        .        17

In re Lead Paint Litig.,
        191 N.J. 405 (2007)        .        .        .        .        .        .        .        24

In re Toshiba America HD DVD Marketing and Sales Practices
        Litigation, Civ. No. 08-939 (DRD),
        2009 WL 2940081 (D.N.J. Sept. 11, 2009)    .        .        .        .        35

In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.,
        No. MDL 2875 (RBK/KW),
        2021 WL 364663 (D.N.J. Feb. 3, 2021)        .        .        .        .        24

Indian Brand Farms v. Novartis Crop Protection, Inc.,
        No. 99-2118, 2012 WL 3715964 (D.N.J. Aug. 27, 2012)    .        .        20

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,
        559 U.S. 573 (2010)        .        .        .        .        .        .        .        31

Jurado v. Western Gear Works,
        131 N.J. 375 (1993)        .        .        .        .        .        .        .        20

Kavon v. BMW of N. Am., LLC,
        No. 20-15475 (KM) (ESK),
        2022 WL 1830797 (D.N.J. June 3, 2022)        .        .        .        .        32

Koski v. Carrier Corp.,
        347 F. Supp. 3d 1185 (S.D. Fla. 2017).        .        .        .        .        9

Kuzian v. Electrolux Home Prod., Inc.,
        937 F. Supp. 2d 599 (D.N.J. 2013)        .        .        .        .        35-36

LaSpina v. SEIU Pennsylvania State Council,
        985 F.3d 278 (3d Cir. 2021)        .        .        .        .        .        .        10

Levari Enters., LLC v. Kenworth Truck Co.,
        2022 WL 248101 (D.N.J. Jan. 27, 2022)        .        .        .        .        24

Lombreglia v Sunbeam Products, Inc.,
    No 20-0332, 2021 WL 118932 (D.N.J. Jan. 13, 2021)   .   .   12

Lopez v. Swyer,
    62 N.J. 267 (1973) .   .   .   .   .   .   .   .   16

Lynch v. Tropicana Products, Inc.,
    No. 2:11–cv–07382 (DMC)(JAD),
    2013 WL 2645050 (D.N.J. June 12, 2013)   .   .   .   .   30-31

Majdipour v. Jaguar Land Rover N. Am.,
    Civ. No. 2:12–cv–07849 (WHW),
    2013 WL 5574626 (D.N.J. Oct. 9, 2013)   .   .   .   .   27

Maniscalco v. Brother Intern. Corp. (USA),
    627 F. Supp. 2d 494 (D.N.J. 2009)   .   .   .   .   .   14-15

Matter of Analysis of Walsh Trucking Occupancy & Sprinkler Sys.,
    215 N.J. Super. 222, 521 A.2d 883 (N.J. App. Div. 1987) .   .   12

Mayer v. Belichick,
    605 F.3d 223 (3d Cir. 2010), cert. denied, 562 U.S. 1271 (2011) .   2

McDermott v. Clondalkin Group, Inc.,
    649 Fed. Appx. 263 (3d Cir. 2016)   .   .   .   .   .   26,30

Mickens v. Ford Motor Co.,
    900 F. Supp. 2d 427 (D.N.J. 2012)   .   .   .   .   .   14-15

Montich v. Miele USA, Inc.,
    849 F. Supp.2d 439 (D.N.J. 2012)   .   .   .   .   .   24-25,35

Morcom v. LG Elecs. USA, Inc.,
    No. 16-CV-4833, 2017 WL 8784836 (D.N.J. Nov. 30, 2017)   .   38

Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.,
    331 F.3d 406 (3d Cir.2003)   .   .   .   .   .   .   26

Motwani v. Marina Dist. Dev. Co., LLC,
      Civil Action No. 15-2069 (JLL) (JAD),
      2015 U.S. Dist. LEXIS 69562 (D.N.J. May 29, 2015)   .    .    40

Naporano Iron & Metal Co. v. Am. Crane Corp.,
      79 F. Supp. 2d 494 (D.N.J. 1999)   .    .    .    .    29-30

New Hope Pipe Liners, LLC v. Composites One, LLC,
      No. 09-3222, 2009 WL 4282644 (D.N.J. Nov. 30, 2009)   .    .    19-20

N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.,
      760 F.3d 297 (3d Cir. 2014)   .    .    .    .    .    .    6

Pfeiffer v. Eagle Mfg. Co.,
      771 F. Supp. 1141 (D. Kan. 1991)   .    .    .    .    12,13

Ponzio v. Mercedes-Benz USA, LLC,
      447 F. Supp. 3d 194 (D.N.J. 2020)   .    .    .    .    15

Pruco Life Ins. Co. v. Koslowsky,
      Civil Action No. 14–03976 (CCC)(JBC),
      2015 WL 4606985 (D.N.J. Jul. 31, 2015)   .    .    .    17

Pygatt v. Painters' Local No. 277, Intern. Broth. of Painters &
      Allied Trades, 763 F. Supp. 1301 (D.N.J. 1991)   .    .    .    6-7

Q Capital Corp. v. Wilmington Trust Co.,
      2007 WL 93231 (N.J. App. Div. Jan. 12, 2007)   .    .    .    19

Rapid Models & Prototypes, Inc. v. Innovated Sols.,
      71 F. Supp. 3d 492 (D.N.J. 2014)   .    .    .    .    31

Richer Marketing Inc. v. Fairfield Gourmet Foods Corp.,
      Civil Action No.: 15–cv–6793,
      2017 WL 3641742 (D.N.J. Aug. 24, 2017)   .    .    .    16

Rodnite v. Hovnanian Enterprises, Inc.,
      No. 08-3787, 2010 WL 3079576 (D.N.J. Aug. 5, 2010)   .    .    18-19

Rolo v. City Investing Co. Liquidating Trust,
      155 F.3d 644 (3d Cir. 1998)   .     .     .     .     .     .     26

Schraeder v. Demilec (USA) LLC,
      2013 WL 3654093 (D.N.J. July 12, 2013)   .     .     .     .     24

Seville Indus. Machinery Corp. v. Southmost Machinery Corp.,
      742 F.2d 786 (3d Cir. 1984), cert. denied, 469 U.S. 1211 (1985).   26

Sinclair v. Merck & Co., Inc.,
      195 N.J. 51 (2008).     .     .     .     .     .     .     .     24

Smarte Carte, Inc. v. Innovative Vending Solutions LLC,
      1:19-cv-08681-NLH-AMD,
      2020 WL 5758363 (D.N.J. Sep. 28, 2020)   .     .     .     30

Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.,
      171 F.3d 912 (3d Cir. 1999)   .     .     .     .     .     .     38

Stewart v. Beam Glob. Spirits & Wine, Inc.,
      877 F. Supp. 2d 192 (D.N.J. 2012)   .     .     .     .     37

Strzakowlski v. Gen. Motors Corp.,
      No. CIV.A. 04-4740, 2005 WL 2001912 (D.N.J. Aug. 16, 2005)   35

Sun Chem. Corp. v. Fike Corp.,
      243 N.J. 319 (2020)   .     .     .     .     .     .     .     22-23

Sun Chemical Corp. v. Fike Corp.,
      981 F.3d 231 (3d Cir. 2020)   .     .     .     .     .     .     21-23

Taylor v. JVC Americas Corp.,
      No. CIV. 07-4059(FSH),
      2008 WL 2242451 (D.N.J. May 30, 2008)   .     .     .     34-35

Teamsters Local Union No. 177 v. United Parcel Services,
      409 F. Supp. 3d 285 (D.N.J. 2019),
      rev'd on other grounds, 966 F.3d 245 (3d Cir. 2020)   .     .     6

Thiedemann v. Mercedes-Benz USA, LLC,
    183 N.J. 234 (N.J. 2005) . . . . . . . . 15

Travelers Indem. Co. v. Dahmann Co.,
    594 F.3d 238 (3d Cir. 2010) . . . . . . . 19

Underwriters Laboratories Inc. v Innovative Indus. Of Tampa, Inc.,
    2000 WL 631304 (N.D. Ill. May 16, 2000) . . . . 10

United States v. Audek Model No. 5601 AM/FM Clock Radios,
    220 F.3d 539 (7th Cir. 2000) . . . . . . 10

U.S. Lighting Service, Inc. v. Llerrad Corp.,
    800 F. Supp. 1513, (N.D. Ohio 1992),
    vacated, 807 F. Supp. 439 (N.D. Ohio 1992) . . . . 11

Viking Yacht Co. v. Composites One LLC,
    496 F. Supp. 2d 462 (D.N.J. 2007),
    on reconsideration in part, No. CIV.A. 05-538 (JEI),
    2007 WL 2746713 (D.N.J. Sept. 18, 2007),
    aff'd sub nom. Viking Yacht Co. v. Composite One LLC,
    385 F. App'x 195 (3d Cir. 2010) . . . . . 34

Warren Technology, Inc. v. UL LLC,
    Case No. 1:18-cv-21019-UU,
    2018 WL 10550930 (S.D. Fla. Oct. 31, 2018),
    aff'd, 962 F.3d 1324 (11th Cir. 2020) . . . . . 8-9

Wendling v. Pfizer, Inc.,
    2008 WL 833549 (N.J. App. Div. Mar. 31, 2008) . . . 19

## **_Statutes_**

15 U.S.C. § 2301, et seq. . . . . . . . . 36

N.J.S.A. 2A:58C-1(b)(2) . . . . . . . . 19

N.J.S.A. 2A:58C-1(b)(3) . . . . . . . . 18

N.J.S.A. 56:8-1, et. seq. .   .   .   .   .   .   .   .   .   40

N.J.S.A. 56:8-2.13 .   .   .   .   .   .   .   .   .   22

N.J.S.A. 56:12-15 .   .   .   .   .   .   .   .   .   39


**_Federal Rules of Civil Procedure_**

Fed. R. Civ. P. 8(a)   .   .   .   .   .   .   .   .   .   6

Fed. R. Civ. P. 9(b)   .   .   .   .   .   .   .   .   .   26-27,33

Fed. R. Civ. P. 12(b)(6)   .   .   .   .   .   .   .   .   .   6


**_Local Rules of Civil Procedure_**

L.Civ.R. 78.1(b)   .   .   .   .   .   .   .   .   .   .   Cover


**_Other Authorities_**

UCC § 2–607(3)(a)   .   .   .   .   .   .   .   .   .   35

## PRELIMINARY STATEMENT

This brief is submitted on behalf of Plaintiff Samuel L. Kaplan ("Plaintiff"), and the Putative Class, in opposition to Defendants General Electric Company, doing business as GE, United Technologies Corp., UTC Fire & Securities Americas Corporation, Inc., doing business as Interlogix, and Carrier Global Corporation's (collectively "Defendants") Motion to Dismiss Plaintiff's Complaint. (See ECF No. 18). [1]

Defendants are the manufacturer of the defective Combination Fire/Burglar Alarm System Control Unit[2] that was installed in the Kaplan home. While the system is currently operational, a fatal defect concerning the data bus circuit in this Control Unit causes a dangerous vulnerability that the alarm will not sound in the event of a fire and the central station will be unable to notify the fire department to respond. Kaplan and the Class should not have to wait for their houses to burn down or death or injury to result before they can sue the manufacturer for selling a defective Control Unit.   Defendants try to hide behind a UL Listing as a shield from liability against the Life Safety Defects present in Kaplan's Control Unit.  Listing by UL does not

---

[1] References to Defendants' "Memorandum of Support of Defendants' Motion to Dismiss Plaintiff's Complaint," (ECF No. 18-1), shall be cited to hereafter as "Def. Br. at p. #." The Complaint (ECF No. 1) shall be cited to herein as "Compl. at ¶ #." The page numbers cited to herein shall be the page numbers automatically generated by the Court's ECF's electronic filing system.

[2] Hereinafter referred to as "Control Unit(s)."

mean that the Control Unit complies with NFPA 72® and New Jersey's Uniform Construction Code. Each of the causes of action alleged have been adequately stated in the Complaint. Hence, the Motion to Dismiss should be denied in its entirety.

## STATEMENT OF FACTS[3]

### A.   General Background.

Plaintiff Samuel L. Kaplan ("Plaintiff") has commenced this putative class action against Defendants who currently are, or at one point were, manufacturers and sellers of defective combination-listed burglar and fire alarm system Control Units sold under the brand name Interlogix ("Interlogix Burglar and Fire Alarm Control Units"). (Compl. at ¶¶ 1-6).

Plaintiff first purchased and had installed an Interlogix Control Unit in his home in the year 2002 (Model GE Security Version III Control Unit). It was upgraded to a Model Concord IV by Interlogix in 2006. The Interlogix Control Unit purchased and upgraded by Plaintiff represents on the unit itself and in the installation guide that it complies with NFPA 72 ® National Fire Alarm Code and/or NFPA 72 National Fire Alarm and Signaling Code. NFPA 72 is recognized as the

---

[3] Plaintiff's "Statement of Facts" are taken from the Complaint as well as the Exhibits A through E attached thereto (ECF No. 1). See, e.g., Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."), cert. denied, 562 U.S. 1271 (2011).

most authoritative standard for fire alarm systems nationwide. It is adopted by reference in most, if not all, model building codes and some version of NFPA 72® is adopted in some manner in every state in the nation, including New Jersey's Uniform Construction Code. (Compl. at ¶ 45). Plaintiff's Interlogix Control Unit also represents that it is UL listed, meaning it was tested by Underwriters Laboratories, Inc. and complies with relevant sections of its standards related to residential combination burglar and fire alarm Control Units. Indeed, Alarm equipment manufacturers have a duty to comply with UL Standards and NFPA 72 Standards for household occupancies. Unfortunately, in August 2021, when Plaintiff upgraded his alarm system with a new wireless radio alarm transmitter, he first learned that the Interlogix Concord IV Control Unit that was installed in his home in fact did not comply with NFPA 72 and thus New Jersey Construction Code. The Interlogix Control Units do not comply because if the data-bus circuit wiring within these Control Units is faulted and/or shorted anywhere the data-bus circuit wiring is installed throughout the home by fire, such as in the common areas, in the wall, attic or basement, the Control Unit is instantly rendered non-functional (the "Alarm System Defect"). (Id. at ¶ 11).[4] This is in direct contradiction of what the NFPA 72

_____

[4] All household combination listed burglar and fire alarm system Control Units contain a single data-bus circuit. The data-bus circuit consists of four wires that are required to be terminated onto the systems circuit board. Two of the wires consist of the data side of the data12 bus circuit, and the other two wires are for the (+) and (-) 12 volts of DC power that is needed to operate the data bus. In order for the alarm

minimally requires of residential combination burglar and fire alarm systems. NFPA 72 expressly states, "faults in other systems (such as a burglar alarm system) or components, shall not affect the operation of the fire alarm system." (Id. at ¶¶ 48-49). In other words, if fire attacks any part of the burglar alarm portion of the combination system, such as the DC power to operate glass break detectors or motion detectors, it will instantly shut down and render the Interlogix Control Unit non-functional. Thus, instead of the alarm system performing its crucial life safety function by audibly warning all occupants inside the home of the fire emergency and the central station, the combination listed Control Unit fails. (Id. at ¶ 6). Had Plaintiff known that the Interlogix Concord IV Control Unit that was installed in his home contained the Alarm System Defect, he would not have purchased it. (Id. at ¶ 29).

## B.   **Defendants' Knowledge of the Alarm System Defect.**

Based on Defendants' own internal testing of the Interlogix Control Unit Defendants knew or should have known that its products were non-conforming to NFPA 72 (Compl. at ¶ 52). Notwithstanding the testing which should have alerted them to the Alarm System Defect, Defendants sold the defective Interlogix Control Units. (Id. at ¶ 61).

---

system to function, the data-bus terminals in the Control Units are wired to alarm system equipment that is installed throughout the home or business. This alarm system equipment includes but is not limited to remote system keypads, wireless radio receivers, wireless radio alarm transmitters and zone expansion modules. (Compl. at ¶ 44).

In fact, the Senior Electrical Engineer of the NFPA confirmed the Alarm System Defect – a failure in the fire alarm system due to the failure in another part of the system is strictly prohibited. (Compl. at ¶ 72). Moreover, Combustion Science & Engineering, Inc. ("CSE"), a company that for more than twenty years has been dedicated to the study, advancement, and application of combustion and fire sciences, (id. at ¶ 73), conducted an independent evaluation of combination listed single data-bus residential burglar and fire alarm system Control Units. CSE confirmed the Alarm System Defect in units, such as those manufactured or sold by Defendants under the brand names GE Security and Interlogix, and their noncompliance to the minimum standards required by both UL and NFPA 72. (Id. at ¶ 74; Exhibit E). Defendants were under a duty to disclose the Alarm System Defects based upon their exclusive knowledge of and/or concealed material information regarding the Alarm System Defect from consumers like the Plaintiff. (Id. at ¶ 75). Defendants' misrepresentations that the Alarm Systems complied with NFPA 72 and applicable UL Standards and the failure to disclose the Alarm System Defect has caused damages, including, the amount Plaintiff and class members paid for the Interlogix Fire Alarm System and the cost to repair the alarm system such that it operates in accordance with all applicable codes and regulations described in the Complaint. (Id. at ¶ 92).

## LEGAL STANDARD

"Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated." Teamsters Local Union No. 177 v. United Parcel Services, 409 F. Supp. 3d 285, 289 (D.N.J. 2019), rev'd on other grounds, 966 F.3d 245 (3d Cir. 2020). "For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff." Ibid. (citing N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J., 760 F.3d 297, 302 (3d Cir. 2014)).

"Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations." Teamsters, 409 F. Supp. 3d at 289. However, "the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is 'plausible on its face.'" Ibid. (quoting Twombly, 550 U.S. at 570). "That facial-plausibility standard is met 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Ibid. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"Motions to dismiss should be granted sparingly and only where the complaint discloses that plaintiff can not possibly prove a case entitling him or her to relief."

<u>Pygatt v. Painters' Local No. 277, Intern. Broth. of Painters & Allied Trades</u>, 763 F. Supp. 1301, 1307 (D.N.J. 1991). Indeed, in this Circuit there exists a "general disfavor toward granting a motion to dismiss." <u>Highland Tank & Mfg. Co. v. PS Intern., Inc.</u>, 393 F. Supp. 2d 348, 359 (W.D. Pa. 2005).

## <u>LEGAL ARGUMENT</u>

### <u>POINT I</u>

**PLAINTIFF HAS ADEQUATELY ALLEGED FRAUD, MISREPRESENTATION AND BREACH OF WARRANTY AGAINST THE DEFENDANTS.**

This litigation is against the manufacturer of the defective combination fire/burglar alarm Control Unit that was installed in the Kaplan home. UL is not named in this lawsuit. Despite this fact, Defendants seek to hide behind a two-page letter penned by a UL official, on the verge of retirement, who misconstrued UL 985 and NFPA 72 to contend that the combination-listed Control Unit was compliant with UL standards.  Defendants ignore the hundreds of pages of other documents by experts in the field of fire safety, including an email by one of the NFPA Senior Electrical Engineers who agreed with Plaintiff's position, (Compl. at Ex. E, pp. 136-137); the extensive independent Report of CSE analyzing the hypothesized data-bus failure mode of combination-listed fire/security Control Units and concluding that the alarm systems do not comply with NFPA (<u>id.</u> at pp. 56-134); the letters by Merton Bunker, PE a Fire Alarm and NFPA 72 expert with 7 years at the National

Fire Protection Association, where he was staff liaison to NFPA 72 and the co-editor of the NFPA 72 Handbook, and currently is the chair of the NFPA 72 Correlating Committee (id. at pp. 138-141); and Mr. Zwirn, a fire safety expert, who first uncovered the Alarm System Defect and has conducted extensive testing of the devices which can be reviewed on his Youtube.com channel.[5] It should be noted that these individuals and groups who have independently concluded that these Control Units do not comply with UL and NFPA standards. These subject matter experts serve on UL and NFPA committees and are qualified to reach their conclusions based upon extensive scientific evidence and testing. This is a case where the Complaint provides detailed factual assertions which, although disputed by Defendants, cannot be resolved on a motion to dismiss.

Thus, contrary to Defendants' assertions at Def. Br. at p. 21, Plaintiffs do not assert that UL's certification was based upon UL misinterpreting its own standards, rather Plaintiff's focus is that these Control Units do not comply with NFPA 72 in accordance with state law.

In attempting to dispose of this litigation without a hearing on the merits, Defendants rely primarily upon two cases arising in Florida, which do not constitute binding precedent, and which are factually inapposite. These cases are based upon the Lantham Act and unfair competition between dueling companies selling similar

---

[5] https://www.youtube.com/channel/UC_AhSpzDIMXPOEgCtMGWnZQ?

products. Additionally, in both cases, UL is a named party. In <u>Warren Technology, Inc. v. UL LLC</u>, No. 1:18-cv-21019-UU, 2018 WL 10550930 (S.D. Fla. Oct. 31, 2018), <u>aff'd</u>, 962 F.3d 1324 (11th Cir. 2020), plaintiff sued both UL and Warren's competitor, Tutco, who was able to sell a UL certified competing heater that could be made more cheaply than Warren's because the Tutco heater did not have an NSRT Cutoff. Warren alleged that UL 1995 required an NSRT cutoff. Warren asserted that UL certification constituted a misrepresentation and a deceptive act which resulted in the loss of all Warren's sales to Carrier. The court rejected the claim that UL and Tutco were making a misrepresentation, because Tutco's advertising and selling of its Heaters as UL 1995 compliant and UL's certification of such heaters as UL 1995 compliant was accurate. "The district court granted Tutco's and UL's joint motion to dismiss because Warren failed to show UL's interpretation of the UL 1995 standard or Tutco's use of the UL-granted certification mark was an actionable misrepresentation." 962 F.3d at 1326.

Similarly, <u>Koski v. Carrier Corp.</u>, 347 F. Supp. 3d 1185 (S.D. Fla. 2017), is also distinguishable. In that case, the Plaintiff sued the manufacturer, UL and other testing labs claiming that various HVAC heaters were non-compliant with UL standards. However, the Court found that they were compliant.  The court also found that the complaint did not contain any misrepresentations on the certification labels that could be attributed to the HVAC and Heater Manufacturer Defendants because

the defendant was merely indicating that the product had been UL certified.
However, these are not the facts in this case.[6] Here, Kaplan has not even sued UL,
but rather asserts that it is the manufacturer that is responsible for making sure that
the product complies with the applicable state regulations, which is NFPA 72.[7] (See
Compl. at ¶¶ 10, 11, 14, 16, 17).

Indeed, UL's own literature makes it clear that the testing entity does not
accept responsibility for dangerous products or products that fail to comply with
applicable state standards, which are promulgated not by UL, but instead, by the

---

[6] Plaintiff does not assert that the fault lies with UL, but rather places blame squarely
on the manufacturing Defendants. Thus, Defendants' reliance upon LaSpina v. SEIU
Pennsylvania State Council, 985 F.3d 278, 286–87 (3d Cir. 2021), is misplaced as
Kaplan's concrete injuries are directly traceable, not merely "fairly traceable," to the
named Defendants. There is no question that Kaplan has standing to pursue these
claims.

[7] Thus, the cases referenced in the string cite at Def. Br. at p. 22 are irrelevant. See
United States v. Audek Model No. 5601 AM/FM Clock Radios, 220 F.3d 539, 540
(7th Cir. 2000) (forfeiture proceeding regarding clock radio imported from China
that were not entitled to use UL mark); Burt v. Makita USA, Inc., 212 F. Supp. 2d
893, 902 (N.D. Ind. 2002) ( product liability act case involving injury caused by saw
where defendant specified it was not relying upon UL certification as a defense );
Board-Tech Elec. Co. Ltd. v. Eaton Elec. Holdings LLC, No. 17-cv-5028, 2017 WL
4990659, at *6 (S.D.N.Y. Oct. 31, 2017) (Court dismissed claim for false and
misleading advertising against competitor whose light switches were UL certified
because Plaintiff could not identify which specific switches that did not comply with
standards and could not establish that fact of UL compliance was false—court did
not discuss failure to comply with NFPA requirements ); Underwriters Laboratories
Inc. v Innovative Indus. Of Tampa, Inc., 2000 WL 631304, at *1 (N.D. Ill. May 16,
2000) (deceptive use by manufacturer of unauthorized mark).

entity known as the Authority Having Jurisdiction. UL's own website provides as follows:

> An authorized use of the UL Mark is the manufacturer's declaration that the product was manufactured in accordance with all applicable requirements, and was in compliance with those requirements when it was shipped from the factory.[8]

Accordingly, the misrepresentations come directly from the manufacturer(s) who makes the declaration to the public. If this were otherwise, then every product defect case would include UL as a named defendant. Manufacturers would be routinely hiding behind the UL listing as a shield from liability for dangerous products, and UL would potentially be driven out of business by the inability to obtain insurance. That is simply not the case in the real world. Thus, cases where UL is forced to defend its certification decision are few and far between.[9]

There is no legal basis for Defendants to treat the UL Listing as a shield from liability against the Life Safety Defects present in the Kaplan's alarm system.

---

[8] See https://code-autorities.ul.com/about/code-authority-faqs/.

[9] See, e.g., U.S. Lighting Service, Inc. v. Llerrad Corp., 800 F. Supp. 1513 (N.D. Ohio 1992), which was vacated by parties' joint stipulation, at 807 F. Supp. 439 (N.D. Ohio 1992). In that case, an installer of commercial lighting equipment sought damages in negligence from UL after the lighting product had self-destructed. The court stated that "a third-party certifier is required to "act with ordinary care in the conduct of its own business—the certification process." *Prior to vacating the opinion, the court held* that issues of fact precluded summary judgment of a negligent misrepresentation claim against UL.)

Listing by UL does not provide a basis to dismiss any fraud, misrepresentation or warranty claims.

In <u>Lombreglia v Sunbeam Products, Inc.</u>, No 20-0332, 2021 WL 118932 (D.N.J. Jan. 13, 2021), recently decided in this jurisdiction, Sunbeam attempted to hide behind its UL certification, but the Court rejected Sunbeams argument that it would be futile to permit amendment of the complaint by an injured Plaintiff to assert punitive damages where plaintiff was burned by a heating pad which was certified under UL130 regarding the  maximum allowable temperature. <u>See</u> <u>also</u> <u>Matter of Analysis of Walsh Trucking Occupancy & Sprinkler Sys.</u>, 215 N.J. Super. 222, 229–30, 521 A.2d 883, 887 (N.J. App. Div. 1987) (Court holds Factory Mutual Data Sheet does not have the force of law and is not entitled to the presumption of validity[10]).

In <u>Pfeiffer v. Eagle Mfg. Co.</u>, 771 F. Supp. 1141, 1143 (D. Kan. 1991), a case which has been widely cited in many jurisdictions, the court stated that:

> Even if defendant's "safety can" was in compliance with UL and FM standards, . . .  Voluntary standards issued by private entities such as FM and UL are not "the byproduct of open hearings, debate, and intense scrutiny by the legislature and government agency." *Id.* at 1137. Further, private laboratories do not receive input from all interested parties. *Id.* In addition, voluntary standards are, in many cases, drafted by the very corporations which design and manufacture the product that is governed by the standard. *Id.* at 1137.

---

[10] Factory Mutual is an entity similar to UL. See https://blog.qrfs.com/242-ul-listed-and-fm-approvals-which-listings-matter-for-fire-protection-under-nfpa-13/.

See also Alsup v. 3-Day Blinds, Inc., 435 F. Supp. 2d 838, 853 (S.D. Ill. 2006) ("[T]ypically voluntary safety standards do not enjoy the force of law."); Bruce v. Jet.com, Inc., 482 F. Supp. 3d 731, 736–37 (E.D. Tenn. 2020) (stating "The CPSC did not issue UL 2272; rather, Underwriter Laboratories—a private safety organization—established these voluntary standards. . ." and rejecting Plaintiffs' urge to the Court "to recognize that voluntary standards may sometimes enjoy the force of law"); Davis v. U.S. Gauge, 844 F. Supp. 1443, 1447 (D. Kan. 1994) ("Judge O'Connor noted that safety standards issued by private entities, such as UL, 'have neither the force of law nor are they entitled to the presumption of validity which would be accorded administrative regulations.'" (quoting Pfeiffer, 771 F. Supp. at 1136); Creadore v. Shades of Light, No. 01 CIV. 4110 (GBD), 2003 WL 152003, at *3 (S.D.N.Y. Jan. 21, 2003) ("Underwriters Laboratories…guidelines are not mandated by law and are purely voluntary.").

## POINT II

### PLAINTIFF HAS SUFFICIENTLY PLED DAMAGES TO SURVIVE THIS MOTION TO DISMISS.

Defendants argue that Plaintiff's Complaint should be dismissed because he has not plausibly alleged any loss. (See Def. Br. at pp. 23-26). That argument is meritless.

Plaintiff's Complaint alleges that "Plaintiff and the Class have suffered an ascertainable loss … including but not limited to, out of pocket losses and

- 13 -

diminished value of the Alarm System." (See Compl. at ¶ 18). The "out of pocket losses" are thereafter fleshed out as "[h]ad Plaintiff known that the Interlogix Concord IV Control Unit that was installed in his home contained the Alarm System Defect, he would not have purchased it." (Id. at ¶ 29); (See also id. at ¶ 42). Moreover, Plaintiff pleads:

> As a direct and proximate result of Defendants' violations of the NJCFA, Plaintiff and the other members of the Nationwide Class and New Jersey Subclass have suffered ascertainable losses, which include but are not limited to, **the amount they paid for the Alarm System or the cost to repair the Alarm System** such that it operates in accordance with all applicable codes and regulations described in this Complaint.

(Id. at ¶ 92) (emphasis added). At Paragraph 81, Plaintiff even provides an estimate of the cost of parts and labor to make the repair – "around $100 and installation of the part would only require one service call for 15-20 minutes around $75."

"To survive a motion to dismiss for failure to state a claim arising under the CFA, a complaint must sufficiently allege an ascertainable loss." Mickens v. Ford Motor Co., 900 F. Supp. 2d 427, 446 (D.N.J. 2012). However, "[a]lthough the loss must be ascertainable, no special specificity with regard to pleading ascertainable loss is required." Maniscalco v. Brother Intern. Corp. (USA), 627 F. Supp. 2d 494, 503 (D.N.J. 2009). Moreover, "[t]he plaintiff need not, however, plead ascertainable loss with pinpoint specificity." Mickens, 900 F. Supp. 2d at 446.

- 14 -

Pleading the cost of replacement of a defective product is sufficient to survive a motion to dismiss. <u>Maniscalco</u>, 627 F. Supp. 2d at 503. In addition, "[a]t the motion to dismiss stage, alleging diminution in value due to the defect is sufficient." <u>Mickens</u>, 900 F. Supp. 2d at 446.

Defendants' primary reliance upon <u>Ponzio v. Mercedes-Benz USA, LLC</u>, 447 F. Supp. 3d 194 (D.N.J. 2020), is misplaced '" There, the court determined that allegations that "**Plaintiff overpaid for his Class Vehicle at the time of purchase, and the value of his Class Vehicle has been diminished as a result of the Paint Defect**… provide no out-of-pocket expense to Ponzio or information to otherwise quantify his loss." 447 F. Supp. 3d at 244 (emphasis added).

In stark contrast, in this case, the out-of-pocket loss alleged is quite easily quantifiable and not conclusory – it's the cost of the alarm system the consumer paid because "[h]ad Plaintiff known that the Interlogix Concord IV Control Unit that was installed in his home contained the Alarm System Defect, he would not have purchased it." (Compl. at ¶ 29); (Compl. at ¶ 92) (or the $175 cost to repair the Alarm System Defect (Compl. at ¶ 81). See <u>Thiedemann v. Mercedes-Benz USA, LLC</u>, 183 N.J. 234, 248 (N.J. 2005) ("The certainty implicit in the concept of an "ascertainable" loss is that it is quantifiable or measurable. Moreover, it need not yet have been experienced as an out-of-pocket loss to the plaintiff.").

## POINT III

### PLAINTIFF'S CLAIMS ARE NOT TIME-BARRED BECAUSE HE HAS SUFFICIENTLY PLED EQUITABLE TOLLING.

Plaintiff's sufficient allegations regarding the tolling of any applicable statutes of limitations are set forth within Paragraphs 32 through 35 of the Complaint. Plaintiff invokes both the "discovery rule," (Compl. at ¶¶ 32-33), and the doctrine of "fraudulent concealment," (id. at ¶¶ 34-35), to toll all applicable statutes of limitations.

"Because statute of limitations is an affirmative defense, a claim may be dismissed for failure to state a claim on statute of limitations grounds only if it is apparent on the face of the complaint that the claim is time-barred." Richer Marketing Inc. v. Fairfield Gourmet Foods Corp., No.: 15–cv–6793, 2017 WL 3641742, at *2 (D.N.J. Aug. 24, 2017).

In New Jersey, "[t]he discovery rule delays the accrual of a cause of action until 'the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.'" Baird v. American Medical Optics, 155 N.J. 54, 66 (1988) (quoting Lopez v. Swyer, 62 N.J. 267, 272 (1973)). "Critical to the running of the statute is the injured party's awareness of the injury and the fault of another." Ibid. "The discovery rule prevents the statute of limitations from running when injured parties reasonably

are unaware that they have been injured, or, although aware of an injury, do not know that the injury is attributable to the fault of another." Ibid.

"Thus, the discovery rule is generally available to rebut a statute of limitations affirmative defense for all of the claims asserted against Defendants." Pruco Life Ins. Co. v. Koslowsky, No. 14–03976 (CCC)(JBC), 2015 WL 4606985, at *4 (D.N.J. Jul. 31, 2015). "While a court may entertain a motion to dismiss on statute of limitations grounds, it may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." Id. at *5.

In this case, Plaintiff pleads with specificity that he did not learn of the Alarm System Defect until August 2021. (Compl. at ¶ 28). That was also the time he became aware of his damages. (Id. at ¶ 29) ("Had Plaintiff known that the Interlogix Concord IV Control Unit that was installed in his home contained the Alarm System Defect, he would not have purchased it."). These are sufficient allegations to invoke the discovery rule. Baird, 155 N.J. at 66 ("Critical to the running of the statute is the injured party's awareness of the injury and the fault of another.").[11]

---

[11] Defendants' reliance upon Hubbard v. Correctional Medical Services, Inc., No. 04–3412 (SDW), 2008 WL 2945988 (D.N.J. July 30, 2008), to seek dismissal on the pleadings is misplaced because that opinion was decided on a summary judgment motion with a fully developed factual record. Id. at *1. Generally speaking, the issue of whether the discovery rule should apply "is better addressed at a later time, after discovery." Gonzales v. Ethicon Corp., Inc., No. 3:18-cv-17658 (PGS) (DEA), 2019 WL 4306352, at *3 (D.N.J. Sep. 11, 2019).

With regard to the doctrine of fraudulent concealment, Plaintiff's Complaint readily meets the heightened pleading standards of Rule 9(b). For the reasons set forth in Point V below, Plaintiff has sufficiently pled fraudulent concealment to toll all applicable statutes of limitations.

## POINT IV

### THE NEW JERSEY PRODUCTS LIABILITY ACT DOES NOT SUBSUME ANY OF PLAINTIFFS' LEGAL THEORIES UNDER NEW JERSEY LAW.

Defendants request dismissal of Plaintiff's First Count (New Jersey Consumer Fraud Act), Second Count (Common Law Fraud), Third Count (Negligent Misrepresentation), Fifth Count (Breach of Implied Warranty) and Seventh Count (Unjust Enrichment) for failure to state a claim asserting these counts are subsumed by New Jersey's Products Liability Act ("NJPLA"). What Defendants fail to understand, however, is that the NJPLA does not subsume all claims for damages caused by the sale of a product.[12] For example, the NJPLA does not subsume claims under the NJCFA when a consumer seeks relief arising out of representation-based harms. Rodnite v. Hovnanian Enterprises, Inc., No. 08-3787, 2010 WL 3079576, at *4 (D.N.J. Aug. 5, 2010) (affirming that product-related claims premised on specific

---

[12] As conceded by Defendants, claims for breach of express warranty, MMWA, and TCCWNA (Counts 4, 6 and 8) are not subsumed by the NJPLA.  N.J.S.A. 2A:58C-1(b)(3). For the reasons stated herein, Counts 1-3, 5 and 7 should also not be subsumed.

representations may proceed under CFA); New Hope Pipe Liners, LLC v. Composites One, LLC, No. 09-3222, 2009 WL 4282644, at *3 (D.N.J. Nov. 30, 2009) ("Since representation-based harms are distinct from products liability-type harms, the PLA does not subsume those claims."); Wendling v. Pfizer, Inc., 2008 WL 833549, at *7-8 (N.J. App. Div. Mar. 31, 2008) (concluding that the NJPLA did not subsume the plaintiff's NJCFA and negligent misrepresentation claims).

Likewise, the NJPLA does not subsume claims that sound in contract. See Alloway v. Gen. Marine Indus., 149 N.J. 620, 629 (1997) ("The U.C.C. represents the Legislatures attempt to strike the proper balance in the allocation of the risk of loss between manufacturers and purchasers for economic loss arising from injury to a defective product."); accord Travelers Indem. Co. v. Dahmann Co., 594 F.3d 238, 247 (3d Cir. 2010) (noting that the New Jersey Supreme Court has held that implied warranty of merchantability applies when a plaintiff alleges damage to the good itself). Thus, where a plaintiff sues in contract for loss of value in the good itself, the NJPLA does not preempt the plaintiff's claims. N.J.S.A. 2A:58C-1(b)(2) (defining "harm" as damage "other than to the product itself"); accord Q Capital Corp. v. Wilmington Trust Co., 2007 WL 93231, at *3 (N.J. App. Div. Jan. 12, 2007) (allowing recovery under both contract and tort claims based on same conduct); Estate of Knoster v. Ford Motor Co., No. 01–3168, 2008 WL 5416399, at *9 n. 4

(D.N.J. Dec. 22, 2008) (holding that "economic damages for destruction of the product are not recoverable under the PLA").

"Taken literally, the language of the PLA is broad – so broad in fact, that a literal reading must be discarded." New Hope Pipeliners, 2009 WL 4282644 at *2. "[C]ourts do not simply determine whether or not the victim's injury was literally 'caused by the product'", rather the New Jersey Courts look at the essence of the claims" (Id.) and "evaluate the essential nature of the claims presented and decide whether, at their core, Plaintiffs' claims would traditionally be considered as products liability claims." Indian Brand Farms v. Novartis Crop Protection, Inc., No. 99-2118, 2012 WL 3715964 (D.N.J. Aug. 27, 2012). See Jurado v. Western Gear Works, 131 N.J. 375 (1993).

The essential nature or core of Plaintiffs claim is one based in contract and representation based harms, not for personal injuries or property damage.  Defendant purposefully misreads Plaintiffs' complaint by suggesting that the "essential nature" of Plaintiffs' claims are claims subsumed by the NJPLA.  In enacting the Products Liability Act,

> our Legislature did not intend it to be a catch-all remedy that would fill the gap created when ordinary contract remedies, including breach of contract, statutory causes of action, or express and implied warranty claims, were lost or unavailable. *Nor was it designed to transform a contract-like claim, that is, a claim that the product itself in some fashion fails to operate as it should, into a tort claim.*

Dean v. Barrett Homes, Inc., 204 N.J. 286, 304-5 (2010) (emphasis added). Here,
Defendant misrepresents to the Court that the Plaintiff's claims are based on a
defective fire alarm that caused physical harm to Plaintiff in an attempt to transform
all of Plaintiffs' legal theories based in contract and representation based claims into
tort claims, something the legislature expressly stated the NJPLA was not enacted
to do.  See id. Plaintiffs' complaint is not about harm the defective fire alarm causes
to people or property, but of the harm caused by Defendants' misrepresentations to
Plaintiff (and the Class) and to the product itself.  The allegations highlighted by
Defendants in an attempt to fit the square pegged complaint in the round holed PLA,
simply allege that the fire alarm is defective.  Def.'s Brief at 20.

     Defendants highlight Sun Chemical Corp. v. Fike Corp., 981 F.3d 231 (3d
Cir. 2020), in support of their subsumption argument.  However, Sun Chemical
actually strengthens Plaintiff's argument that subsumption doesn't apply here.
There, Sun Chemical operated an ink manufacturing business.  Sun purchased an
explosion isolation and suppression system (Suppression System) from Fike
Corporation and Suppression Systems Incorporated (collectively, Fike) to prevent
and contain potential explosions in that dust collection system.  Id. at 326.  Sun
brought a single-count complaint under the CFA alleging that Fike made material
oral and written misrepresentations about, among other things, the Suppression
System's compliance with industry standards. Following discovery, both parties

moved for summary judgment.  Id.  The District Court ruled that Sun's claims are governed by the PLA.  Sun appealed to the Third Circuit.  The Third Circuit certified the question of law to the New Jersey Supreme Court of whether "a Consumer Fraud Act claim [can] be based, in part or exclusively, on a claim that also might be actionable under the Products Liability Act.  Sun Chem. Corp. v. Fike Corp., 243 N.J. 319, 325 (2020).

The Supreme Court held that the PLA was not intended to replace or subsume the CFA. "[H]ad the Legislature intended for the PLA to preempt, displace, or subsume the CFA, it would have said so…Instead…the Legislature has announced the opposite -- the CFA supplements any other right or remedy available."  Id. at 337 (citing N.J.S.A. 56:8-2.13).  Therefore, the Court concluded, "a CFA claim alleging express misrepresentations -- deceptive, fraudulent, misleading, and other unconscionable commercial practices -- may be brought in the same action as a PLA claim premised upon product manufacturing, warning, or design defects.  In other words, the PLA will not bar a CFA claim alleging express or affirmative misrepresentations." Id. at 339.  The Court also instructed how to analyze whether a claim is a PLA claim or a CFA claim:

> Significantly, it is the nature of the action giving rise to a claim that determines how a claim is characterized. Sun is mistaken in its heavy reliance on the nature of the damages it seeks, claiming they are economic losses rather than damages for injury to persons or property. The nature of the plaintiff's damages does not determine whether the

> cause of action falls under the CFA or PLA; rather, it is
> the theory of liability underlying the claim that determines
> the recoverable damages

Id.

The Third Circuit concluded, "Fike represented that the system would comply with several industry standards that required audible alarms…[t]he heart of Sun's claim, then, is not that the product did not work. Rather, Sun's claim is premised on the underlying theory that Fike broke its promise. The CFA thus neither directly nor unavoidably conflicts with the PLA as applied to that claim, and the presumption in favor of preserving a CFA remedy stands." Sun Chem. Corp., 981 F.3d 231 at 238.

Here, Plaintiff is not asserting personal injury resulting from Defendant's defective fire alarm.  It is clear upon a reading of the Complaint that the heart of Plaintiff's Complaint is that Defendants knowingly manufactured and sold combination burglar and fire alarms Control Units they represented comply with life safety standards such as the NFPA 72 when the Control Units did not so it could continue making a profit. These types of claims – sounding in contract and fraud based on deceptive acts – are not covered by the NJPLA and must not be subsumed.

Moreover, each of the cases cited by Defendants in support of its subsumption argument is factually distinguishable. In each of those cases, the NJCFA claims were tangential to the other alleged harms, which predominated the claims and fell squarely within the NJPLA. See In re Lead Paint Litig., 191 N.J. 405,

437 (2007) (failure to warn of lead paint dangers); Calender v. NVR Inc., 548 F.
App'x 761, 764 (3d Cir. Dec. 13, 2013) (personal injury suffered from defectively
designed attic access panel); Schraeder v. Demilec (USA) LLC, 2013 WL 3654093,
at *4 (D.N.J. July 12, 2013) ("[failure] to warn of the potential health issues that
could occur if their product was not mixed correctly."); Sinclair v. Merck & Co.,
Inc., 195 N.J. 51 (2008) ("potential for harm caused by Merck's drug"); Barrett v.
Tri-Coast Pharmacy, Inc., 518 F. Supp. 3d 810, 824 (D.N.J. 2021) (Plaintiff's use of
pharmaceuticals causing bacterial infection); Levari Enters., LLC v. Kenworth
Truck Co., 2022 WL 248101, at *2-3 (D.N.J. Jan. 27, 2022) (no allegations of
affirmative misrepresentations or other unconscionable commercial practice); In re
Valsartan, Losartan, & Irbesartan Prod. Liab. Litig., No. MDL 2875 (RBK/KW),
2021 WL 364663, at *8 (D.N.J. Feb. 3, 2021) (physical injuries suffered as a result
of the VCDs.).

Here, the core of Plaintiff's claims are based on Defendants'
misrepresentations that their Control Units met certain life safety standards. Any
allegations of possible injury to person or property here are "tangential" to the
contract and representation-based claims and should not be used to shoehorn
Plaintiff's fraud and contract-based claims into the NJPLA. See Montich v. Miele
USA, Inc., 849 F. Supp.2d 439, 457 n. 14 (D.N.J. 2012) (Distinguishing

subsumption cases). Accordingly, the NJPLA should not subsume any of Plaintiffs' claims.[13]

## POINT V

### PLAINTIFF'S MISREPRESENTATION AND OMISSION-BASED FRAUD CLAIMS ARE PLED WITH THE REQUISITE RULE 9(b) PARTICULARITY.

Plaintiff's Complaint provides extensive details on the Alarm System Defect, expert opinions confirming the Alarm System Defect after testing, Defendants' misrepresentation and omissions, and why Defendants knew or should have known about the Alarm System Defect before they began selling the Alarm Systems. (Compl. at ¶¶ 43-75; Ex. E).

Nonetheless, Defendants challenge the sufficiency of Plaintiffs' allegations arguing they lack particularity and detail. However, Plaintiffs are not required to prove their case at this pleading stage, especially with regard to their fraud claims. Indeed, the Third Circuit has recognized relaxed pleading standards where defendants are in exclusive possession of relevant information:

> Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs. Thus, courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control.

---

[13] Similarly, as made clear in <u>Sun Chemical</u>, the economic loss rule does not apply to bar Plaintiff's claims which only seek recovery for economic loss.

Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989); see also McDermott v. Clondalkin Group, Inc., 649 Fed. Appx. 263, 268 (3d Cir. 2016) ("This Court has explained that pleading upon information and belief is permissible '[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control'") (Citations omitted).

In Durso v. Samsung Electronics Am., Inc., No. 12-CV-5352, 2014 WL 4237590, at *4–5 (D.N.J. Aug. 26, 2014), Judge Martini stated:

> "The purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim." Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 414 n. 2 (3d Cir.2003). "Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.'" Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir.1989) (quoting Christidis v. Pennsylvania Mortgage Trust, 717 F.2d 96, 99–100 (3d Cir. 1983)); see also Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) ("Courts should ... apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants."). .. .

The Third Circuit has repeatedly admonished that "'focusing exclusively on [Rule 9(b)'s] 'particularity' language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984), (internal quotation marks omitted) (quoting Christidis, 717 F.2d at 100), cert. denied, 469 U.S. 1211 (1985).

Moreover, and crucial here, well-recognized decisional law instructs that claims based on fraudulent omission, such as those Plaintiff has pleaded here, require relaxing Rule 9(b)'s heightened standard. Majdipour v. Jaguar Land Rover N. Am., No. 2:12–cv–07849 (WHW), 2013 WL 5574626, at *15 (D.N.J. Oct. 9, 2013). See also Feldman v. Mercedes–Benz USA, No. 2:11–cv–00984 (WJM), 2012 WL 6596830, at *10 (D.N.J. Dec. 18, 2012) ("[P]laintiffs pleading a fraud by omission claim are not required to plead fraud as precisely as they would for a false representation claim."). "This is because 'a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim.'" Majdipour, 2013 WL 5574626, at *15 (quoting Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007)); See Henderson v. Volvo Cars of North America, No. 09–4146 (DMC)(JAD), 2010 WL 2925913, at *5 (D.N.J. July 21, 2010) (although "certain aspects of Plaintiffs' pleadings are sparse…the claims here are sufficient to withstand dismissal at this early stage.") (Footnote omitted).

Given that the bulk of the facts related to Defendant's fraud are within Defendants' exclusive control, Plaintiff has more than satisfied his pleading burden under Rule 9(b) by pleading misrepresentation and omission based fraud with particularity. The Complaint contains the "who, what, when, where, and how" of the events in issue. More specifically, Plaintiff states:

- 27 -

a.     Who and When:    Plaintiff alleges that the Interlogix alarm system Control Unit was manufactured and sold by GE from 2002 through 2009 under the GE Security name, and then UTC from 2010 through late 2015 under the Interlogix brand name and then UTC Security from late 2015 through early 2020 under the Interlogix brand name and then by Carrier under the Interlogix brand name after UTC Security was spun off into Carrier in early 2020.  (Compl. at ¶ 6).  Plaintiff had a combination listed burglar and fire alarm system Control Unit installed in his home in the year 2002 consisting of a Model GE Security Version III Control Unit.  In 2006, Plaintiff upgraded the combination listed burglar and fire alarm system Control Unit that he had, to a Model Concord IV by Interlogix.  (Compl. at ¶¶ 21-22)

b.     What and Where:    Defendants, during the times each of them manufactured and sold the alarm system Control Units (Compl. at ¶ 6) represented on the alarm system's schematic on Plaintiff's alarm panel and in the installation guide that the Control Units complied with NFPA 72.  However, the Defendants' Control Units actually do not comply with NFPA 72 because the combination listed Control Units catastrophically shut down, as a result of the introduction of a short circuit condition on the data-bus circuit wiring, which instantly renders the combination-listed fire/security system Control Unit non-functional. Consequently, the fire alarms do not  sound when there is a fire in the home. Moreover, because the system does not comply with NFPA 72, it does not comply with New Jersey's Uniform Construction Code, the Uniform Fire Code, both of which require compliance with NFPA 72.  Thus, Defendants knew or were required to know that they had manufactured a non-conforming combination listed Control Unit with the Alarm System Defect that failed to meet the applicable and minimum UL and NFPA Standards and in turn New Jersey codes.  Defendants were under a duty to disclose the Alarm System Defects based upon its exclusive knowledge of and/or concealed material information regarding the Alarm System Defect from consumers like the Plaintiff.  Defendants failed to disclose the Alarm System Defect to Plaintiff, other Class members, or the public at any time or place or in any manner such that it could (and would) have affected Plaintiff's and other Class members' pre-sale decision to purchase the Alarm Systems since the Defendants equipment violates the minimum requirements of UL and NFPA 72 Standards.  (Compl. at ¶¶ 43-75)

c.     How: Defendants concealed the Alarm System Defect by not disclosing it to Plaintiffs, the Class, Subclasses or anyone in the chain of distribution at any time or place or in any manner, even though it knew this

information and knew that it would be important to a reasonable consumer, and even though its omissions with regard to the Alarm System Defect were contrary to its representations that the Alarm Systems Control Unit complied with NFPA 72 and ultimately adopted  New Jersey Codes. (Compl. at ¶75)

Nonetheless, Defendants attempt to nitpick the Complaint arguing the fraud claims must be dismissed because the Plaintiff has not alleged the "particular circumstances of his alarm purchase" such as which Defendant he purchased from, what any Defendant knew about the Defect "or any other circumstances particular to any Defendant."

First, Defendants disingenuously argue that the Complaint generally refers to Defendants collectively without alleging which Defendant made the misrepresentations and when or where any Defendant made the misrepresentations. (Def's Br. at pp. 26-27). Defendants apparently totally disregard the specific timeline described in paragraph 6 of the Complaint detailing when each Defendant manufactured and sold the Alarm Systems and when Plaintiff purchased and upgraded his Alarm System (2002 and 2006). (Compl. at ¶ 6). Referring to the Defendants collectively here because they each made the same misrepresentations and omissions during the different time periods they manufactured and sold the Alarm Systems is not the insufficient "collectivized allegations" made in Naporano relied on by Defendants where the plaintiff referred to the defendants collectively without indicating which defendant was involved in which misrepresentation. Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 512 (D.N.J.

1999) ("Naporano neither alleges the information is within the control of the defendants, nor specifies which defendants were involved in which misrepresentations."). And if for any reason, based on the numerous mergers and acquisitions of the Interlogix entities and/or transfers of the Interlogix brand, one of the other Defendants, and not GE, was the actual Defendant who manufactured and sold the Alarm Systems purchased by Plaintiff, it is Defendants who are in the exclusive possession of that information, and therefore cannot be grounds for dismissal here. See McDermott, supra, 649 Fed. Appx. at 267-68 ("Pleading upon information and belief is permissible '[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control'"); Smarte Carte, Inc. v. Innovative Vending Solutions LLC, 1:19-cv-08681-NLH-AMD, 2020 WL 5758363, at *6 n. 7 (D.N.J. Sep. 28, 2020) (same).

Second, Defendants argue Plaintiff does not identify the statements he relied on, who made them or when they were made. As explained, Plaintiff alleges the specifics of the misrepresentation – that the representations that the Control Units complied with UL standards and NFPA 72 made by each Defendant during the respective time period on the alarm system's schematic on Plaintiff's alarm panel and in the installation guide were false. These particulars satisfy Rule 9 pleading standards here. See Lynch v. Tropicana Products, Inc., No. 2:11–cv–07382 (DMC)(JAD), 2013 WL 2645050, at *5 (D.N.J. June 12, 2013) ("Plaintiffs assert

that the alleged misrepresentations appeared on the labels, packaging, and advertisements for Tropicana's orange juice throughout the Class Period" satisfied the where …"). Plaintiff would not have purchased the Alarm System had he known that the Alarm System did not comply with required life safety standards/laws. (Compl. at ¶ 29).[14] See, e.g., Gray v. BMW of North America, LLC, 22 F. Supp. 3d 373, 383 (D.N.J. 2014) ("The plaintiffs in this case have likewise plead that they reasonably expected that their convertible tops would not have repair-resistant defects … and that they would not have bought the vehicles or would have paid less for them had they known of the defect.").

Defendants further argue that the Complaint does not state what any Defendant knew about the Defect or when they came to know it. However, ignorance of the law is no excuse. See, e.g., Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 581 (2010).  Defendants essentially argue, "well, no one told us."  If that was the standard of liability, manufactures could recklessly release

---

[14] Defendants cite to Rapid Models & Prototypes, Inc. v. Innovated Sols., 71 F. Supp. 3d 492, 504 (D.N.J. 2014) and Hale v. Stryker Orthopaedics, No. CIV 08-3367(WJM), 2009 WL 321579, at *5 (D.N.J. Feb. 9, 2009), in support of their argument that Plaintiff has not provided enough detail about the statements at issue. However, in Rapid Models, Judge Hillman emphasized that the plaintiff did not specify which portion of a document contained misrepresentations and in Hale the Complaint essentially just recited the RICO statute as its facts with no particulars. Here, Plaintiff provided the exact details Judge Hillman explained the Complaint was missing in Rapid Models – Defendants misrepresented that the Alarm Systems complied with NFPA 72 and UL standards on the Plaintiff's alarm panel and installation guide.  (Compl. at ¶¶ 24-25).

products into the marketplace and would be absolved from liability as long as no one informed them of their products' noncompliance. However, here, Plaintiff alleges testing of the Alarm Systems for compliance was conducted by Defendants through UL.  Indeed, Defendants admit the same. (Def.'s Brief at p. 8). New Jersey courts have held that allegations that Defendants conducted testing are sufficient to support allegations that the Defendants had knowledge of the defect because the testing should have caught the defect. DeFrank v. Samsung Elecs. Am., Inc., No. CV1921401KMJBC, 2020 WL 6269277, at *13 (D.N.J. Oct. 26, 2020) ("Such allegations are sufficient to make plausible the claim that the Class Dryers were tested and that the test caught the defect prior to the time of sale. While plaintiffs cannot now prove that [defendant] in fact knew of the defect, they have alleged enough facts to meet their pleading burden, particularly since the relevant facts regarding testing are in [defendant's] possession); Kavon v. BMW of N. Am., LLC, No. 20-15475 (KM) (ESK), 2022 WL 1830797, at *14 (D.N.J. June 3, 2022) ("The [second amended complaint] does not provide specific facts as to the means by which BMW allegedly become aware of the battery defect …It is also true, of course, that BMW would have exclusive possession of evidence such as internal testing data and sources… [thus] the Court finds that Plaintiffs have alleged enough to unlock the doors of discovery.").  The doors to discovery should also be unlocked here so the Plaintiff has the opportunity to review all facts

surrounding the testing performed by UL as well as any testing performed by Defendants themselves prior to the UL testing.

For the foregoing reasons, Plaintiff's fraud-based allegations meet the Rule 9(b) pleading standards and should survive Defendants' motion to dismiss.

## POINT VI

### PLAINTIFF HAS ADEQUATELY PLED EXPRESS AND IMPLIED WARRANTY CLAIMS.

**A.**   **Plaintiff Has Adequately Pled a Claim for Breach of Express Warranty Based on Defendants' False Affirmations.**

Plaintiff has sufficiently alleged breach of express warranty claims based on Defendants' express affirmations that the Control Units were UL listed and complied with NFPA 72 which were false. It is well settled in New Jersey that any affirmation of fact or promise in advertising or other marketing material may become a basis of the bargain and create an express warranty. Moreover, "as a rule, no proof of the buyer's reliance on the warranty is necessary other than that the seller's statements were of the kind which naturally would induce the purchase. The warranty need not be the sole inducement." Elias v. Ungar's Food Products, Inc., 252 F.R.D. 233, 239 (D.N.J. 2008) (citing Bregman Screen & Lumber Co. v. Bechefsky, 83 A.2d 804, 806-07 (N.J. App. Div. 1951)).

Defendants' assertions that the failure to plead facts to support that these affirmations formed the basis of the bargain is fatal to Plaintiff's express warranty

- 33 -

claim is simply wrong because affirmative representations are *presumed* to have formed the basis of the bargain. Dzielak v. Whirlpool Corp., No. CV 12-89 (KM) (JBC), 2019 WL 6607220, at *14 (D.N.J. Dec. 5, 2019) ("Plaintiffs enjoy the benefit of a presumption that the affirmation represented by the Energy Star branding formed the basis of the bargain.") "Under New Jersey law, a representation is presumed to be part of the basis of the bargain 'once the buyer has become aware of the affirmation of fact or promise' and can be rebutted by 'clear affirmative proof' ... that the buyer knew that the affirmation of fact or promise was untrue.'" Viking Yacht Co. v. Composites One LLC, 496 F. Supp. 2d 462, 469 (D.N.J. 2007), on reconsideration in part, No. CIV.A. 05-538 (JEI), 2007 WL 2746713 (D.N.J. Sept. 18, 2007), aff'd sub nom. Viking Yacht Co. v. Composite One LLC, 385 F. App'x 195 (3d Cir. 2010). Here, Plaintiff even alleges he would not have purchased the Alarm System had he known the representations were false. (Compl. at ¶ 17). Accordingly, Plaintiff has adequately pled a claim for breach of express warranty based on Defendants' false affirmations.

Further, despite Defendants' argument, New Jersey courts have consistently "held the lack of pre-litigation notice of breach of warranty claims does not obviate dismissal of those claims." Devane v. Church & Dwight Co., No. 319CV09899BRMLHG, 2020 WL 998946, at *7 (D.N.J. Feb. 28, 2020); Taylor v. JVC Americas Corp., No. CIV. 07-4059(FSH), 2008 WL 2242451, at *6 (D.N.J.

May 30, 2008) (New Jersey federal courts have held that UCC § 2–607(3)(a) does not require pre-litigation notice to a defendant) (citing <u>Strzakowlski v. Gen. Motors Corp.</u>, No. CIV.A. 04-4740, 2005 WL 2001912, at *3 (D.N.J. Aug. 16, 2005) ("no notice must be given to a manufacturer who is not the immediate seller in an express warranty case. Further, even if notice to GM is necessary under section 2–607(3)(a), the filing of Plaintiff's Complaint satisfied this requirement. As indicated in *Cipollone,* whether this notice-by-suit was provided within a reasonable time is a question for the fact finder.").

## B.    <u>The Plaintiff's Breach of Implied Warranty Claim Must Survive</u>.

Defendants argue that Plaintiff's implied warranty of merchantabilty claim fails because Plaintiff has not shown the defect actually occurred or impaired the functionality.  (Def.'s Br. at 31).  However, "[i]n order for the implied warranty of merchantability to be breached, the product at issue must have been defective *or not fit for the ordinary purpose for which it was intended*." <u>In re Toshiba America HD DVD Marketing and Sales Practices Litigation</u>, No. 08-939 (DRD), 2009 WL 2940081, at *16 (D.N.J. Sept. 11, 2009) (emphasis added) "'Merchantability requires that a product conform to its ordinary and intended use.'" <u>Montich</u>, <u>supra</u>, 849 F. Supp. 2d at 458; <u>see</u> <u>also</u> <u>Kuzian v. Electrolux Home Prod., Inc.</u>, 937 F. Supp. 2d 599, 612 (D.N.J. 2013) ("where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is

relying on the seller's skill or judgment to select or furnish suitable goods, there is ... an implied warranty that the goods shall be fit for such purpose").

Here, Plaintiff provides extensive detailed allegations from experts in the field of the Alarm System Defect and how the Control Units will not perform its essential function – to alert homeowners of a fire in or around the home – when there is a failure in another part of the system.  The fact that Plaintiff has yet to experience the Defect, is not fatal to his breach of implied warranty claim.  Arlandson v. Hartz Mountain Corp., 792 F. Supp. 2d 691, 706 (D.N.J. 2011) (Claim for breach of implied warranty of merchantability "does not require a showing that the product was defective.").  This is especially true here where the only way the Plaintiff would experience the Defect is if his home suffered a house fire.

## C.   **The Plaintiffs' MMWA Claim Must Survive.**

The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. (the "MMWA") "creates a separate federal cause of action for breach of an implied warranty". Id.; see also Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 331-32 (D.N.J. 2014) (denying motion to dismiss MMWA claims because the alleged state-law causes of action for breach of express and implied warranties are legally sufficient and "[t]he MMWA claim stands with them"). Therefore, because Plaintiff has alleged viable express and implied state-law warranty claims, his causes of action under the MMWA must also survive.

## POINT VII

**PLAINTIFF HAS ADEQUATELY PLED AN UNJUST ENRICHMENT CLAIM IN THE SEVENTH COUNT.**

Defendants' arguments that Plaintiff's unjust enrichment claim cannot survive are without merit. Contrary to Defendants' contentions, Courts in New Jersey do not uniformly require a direct relationship between the parties for unjust enrichment to be a viable cause of action. As the late-Judge Walls stated in rejecting this argument in Gelis v. Bayerische Motoren Werke Aktiengesellschaft, No. 2:17-cv-07386 2018 WL 6804506, at *10 (D.N.J. Oct. 30, 2018), "the extent to this requirement has been both questioned and downplayed by courts in this District. This Court finds that purchasing a vehicle from an intermediate retailer is good enough for the non-strenuous privity requirement at hand in light of the court's reasoning in *Stewart*." (Footnote omitted). In Stewart v. Beam Glob. Spirits & Wine, Inc., 877 F. Supp. 2d 192, 199 (D.N.J. 2012), the Court stated: "the 'some direct relationship' element of an unjust enrichment claim does not standing alone preclude a consumer from ever bringing an unjust enrichment claim against a manufacturer simply because the consumer purchased the product at issue from a third-party retailer and not directly from the manufacturer. The Court rejects that such a bright light rule is supported by New Jersey law ..." See also DeFrank v. Samsung Elecs. Am. Inc., No. 19–21401, 2020 WL 6269277, at *24 (D.N.J. Oct. 26, 2020) ("[I]t is clearly not the case that New Jersey law prohibits unjust enrichment simply because the parties are not in

privity"); see also Morcom v. LG Elecs. USA, Inc., No. 16-CV-4833, 2017 WL 8784836, at *10 (D.N.J. Nov. 30, 2017) (same).

Additionally, the court should reject Defendants' second and third arguments that Plaintiff has an adequate remedy at law, and that an unjust enrichment claim cannot be based upon a defective product, respectively.  In Gujral v. BMW of N. Am., LLC, No. 19-CV-20581, 2022 WL 3646627, at *6 (D.N.J. Aug. 23, 2022), the court cited with approval opinions that held: "[A]lthough Plaintiff will not ultimately be able to recover under both an express and implied contract theory, Plaintiff is not foreclosed from properly pleading these claims in the alternative in its Complaint … it may advance these theories in the alternative until it has gathered sufficient facts to determine which theory more properly applies." (Citations omitted).

Here, Plaintiff sufficiently alleges that the Defendants benefited financially from their alleged breach of warranty, misrepresentations, and fraud. (Compl. at ¶ 133). Moreover, virtually every case cited above involved claims arising from defective products and in each instance the court refused to dismiss the unjust enrichment claims on a motion to dismiss. Thus, Plaintiff has adequately pleaded an unjust enrichment claim.[15]

_____

[15] None of the cases relied upon by Defendants on this issue are on point. Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912 (3d Cir. 1999), is completely inapposite. This was a RICO and antitrust case brought against tobacco companies to recover the cost of smoking related illnesses. The court found it was a tort case.  In Gray v. Bayer Corp., No. CIV.A. 08-4716JLL, 2009 WL

## POINT VIII

## PLAINTIFF'S NJ TCCWNA CLAIM ADEQUATELY SETS FORTH A CLAIM FOR RELIEF.

TCCWNA is a consumer protection statute. Like the NJCFA, it is designed to protect consumers from being misled or deceived about their rights. Specifically, TCCWNA prohibits a seller from entering into a consumer transaction that violates any right provided by State and/or Federal law. N.J.S.A. 56:12-15. Under the TCCWNA, a consumer need not show harm or loss; rather, only the violation of a statutory right by a seller. Id. The pertinent parts of the TCCWNA are as follows:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

The purpose of this statute is to ensure consumers are informed of their rights and are not misled into entering into transactions that would otherwise violate those rights. See Alloway, supra, 149 N.J. at 641. In fact, the TCCWNA "establishes

---

1617930, at *3 (D.N.J. June 9, 2009), the court held that plaintiff never alleged any quasi-contract with the defendant and thus her only claims were tort claims. In Blystra v. Fiber Tech Grp., Inc., 407 F. Supp. 2d 636, 645 (D.N.J. 2005), the Court was primarily concerned with statute of limitations issues and treated the Plaintiffs' unjust enrichment claim as subsumed by their other tort claims, and not as an independent cause of action.

liability whenever a seller offers a consumer a contract, the provisions of which violate any legal right of a consumer." Bosland v. Warnock Dodge, Inc., 396 N.J. Super. 267, 278 (N.J. App. Div. 2007), aff'd and remanded on other grounds, 197 N.J. 543 (2009). In Motwani v. Marina Dist. Dev. Co., LLC, No. 15-2069 (JLL) (JAD), 2015 U.S. Dist. LEXIS 69562, at *10 (D.N.J. May 29, 2015) the Court denied Defendants' motion to dismiss the TCCWNA claim where the Court found that the Plaintiff's CFA claim also survived dismissal on the pleadings.

Plaintiff has met his burden of alleging facts establishing a violation of a "clearly established right" under the TCWNAA. Plaintiff plainly alleges that the Defendants' "practices contravene the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et. seq." (Compl. at ¶¶ 82-92) and they "have engaged in deceptive, unconscionable, unfair, fraudulent and/or misleading commercial practices in the advertising, promoting, marketing, distributing and selling of the Class Alarm Systems it knew to be defective." (Id. at ¶ 84). The false advertising constitutes a consumer notice under the statute which is sufficient to state a claim. Hence, Defendants' motion to dismiss the Eighth Count should be denied.

## CONCLUSION

Based upon the foregoing, Plaintiff Samuel L. Kaplan, on behalf of himself and the Putative Class, respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety and direct that discovery forthwith proceed.

Respectfully submitted,

Date: December 30, 2022                By: _____ *s/ **Joseph LoPiccolo**_____
Ocean, New Jersey                           Joseph LoPiccolo, Esq.
**POULOS LOPICCOLO, PC**
1305 South Roller Road
Ocean, New Jersey 07712
Tel: (732) 757-0165
Fax: (732) 358-0180
Email: lopiccolo@pllawfirm.com

Bruce H. Nagel, Esq.
Randee M. Matloff, Esq.
**NAGEL RICE LLP**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Tel: (973) 618-0400
Fax: (973) 618-9194
Emails:  bnagel@nagelrice.com
rmatloff@nagelrice.com

*Attorneys for Plaintiff*
*Samuel L. Kaplan*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this **<u>30th</u>** day of **<u>December 2022</u>**, the foregoing Opposition Brief and all other supporting papers were filed electronically on the Court's ECF/CM electronic filing system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through that system.

POULOS LOPICCOLO, PC
*Attorneys for Plaintiff Samuel L. Kaplan*

By:   **s/ *Joseph LoPiccolo***
Joseph LoPiccolo, Esq.
1305 South Roller Road
Ocean, New Jersey 07712
Tel: (732) 757-0165
Fax: (732) 358-0180
Email: lopiccolo@pllawfirm.com

Date: December 30, 2022
          Ocean, New Jersey