<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SAMUEL L. KAPLAN, on behalf of himself and the Putative Class,<br><br>    Plaintiff,<br><br>    v.<br><br>GENERAL ELECTRIC COMPANY d/b/a GE, UNITED TECHNOLOGIES CORP., UTC FIRE & SECURITY AMERICAS CORPORATION, INC. d/b/a INTERLOGIX, and CARRIER GLOBAL CORPORATION,<br><br>    Defendants. | Case No. 2:22-cv-05296 (BRM) (ESK)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) filed by Defendants General Electric Company ("GE"), United Technologies Corp. ("UTC"), UTC Fire & Security Americas Corporation, Inc. ("UTC Security"), and Carrier Global Corporation ("Carrier") (collectively, "Defendants"). (ECF No. 18.) Plaintiff Samuel L. Kaplan ("Kaplan") filed an opposition to the motion (ECF No. 29), and Defendants filed a reply (ECF No. 30). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND

For the purposes of this Motion to Dismiss, the Court "accept[s] as true all factual allegations in the [C]omplaint and draw[s] all inferences from the facts alleged in the light most favorable to [Plaintiffs]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This action arises out of alleged defects, dangers, and non-conformities in the Interlogix alarm system control units ("Alarms") manufactured and sold by Defendants. (Compl. (ECF No. 1) ¶ 6.) Kaplan is a consumer who purchased and owned defective Alarms and brings this class action on behalf of himself and all others similarly situated nationwide. (*Id.* ¶¶ 12, 21–22, 28–29.) Interlogix manufactured and sold the Alarms until 2002 when GE purchased Interlogix and renamed the company GE Security. (*Id.* ¶ 6.) From 2002 to 2009, GE sold the Alarms under the GE Security name. (*Id.*) In 2010, UTC, a once multinational conglomerate that developed and manufactured numerous commercial system products, acquired GE Security and began selling the Alarms under the Interlogix name. (*Id.* ¶ 3.) In 2015, UTC Security, a wholly-owned subsidiary of UTC, took over manufacturing and selling the Alarms under the Interlogix name. (*Id.* ¶¶ 4, 6.) UTC Security continued to manufacture and sell the Alarms until UTC "spun off UTC Security into Carrier" in 2020. (*Id.* ¶ 5.) At which point, Carrier took up all manufacturing and sales of the Alarms. (*Id.*)

Kaplan brings this action alleging Defendants knowingly manufactured and sold Alarms with "serious defects, dangers, and non-conformities" that led to the Alarms "instantaneous and

catastrophic failure . . . during a fire." (*Id.* ¶ 6.) Kaplan alleges Defendants misrepresented the Alarms as safe and reliable and concealed the Alarm's true dangerous condition of becoming silent and nonfunctional upon contact with fire rather than alerting those nearby of the potential danger. (*Id.*) Defendants represented the Alarms satisfied the requirements set out by several safety organizations including Underwriters Laboratories, Inc. ("UL"), and the National Fire Protection Agency ("NFPA"). (*Id.* ¶ 10.) Every three years the NFPA publishes a standard for fire alarm systems known as the NFPA 72.

In 2002, Kaplan had an Alarm installed in his New Jersey home, which he upgraded to a newer version in 2006.[1] (*Id.* ¶ 21.) Kaplan first discovered the defects in 2021 when upgrading his Alarm to include wireless radio transmitting capabilities. (*Id.* ¶ 28.) Kaplan claims he would not have purchased the Alarms had he known of their defective condition. (*Id.* ¶ 17.)

On August 30, 2022, Kaplan filed a putative Class Action Complaint against Defendants, alleging violations of New Jersey's Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2 *et seq.* (Count I); common law fraud (Count II); negligent misrepresentation (Count III); breach of express warranty (Count IV); breach of implied warranty (Count V); violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.* (Count VI); unjust enrichment (Count VII); and violations of the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA") (Count VIII). (*Id.* ¶¶ 82–143.) On October 31, 2022, Defendants filed a motion to dismiss. (ECF No. 18.) On December 30, 2022, Kaplan filed an opposition to Defendants' motion to dismiss. (ECF No. 29.) On January 30, 2023, Defendants filed a reply. (ECF No. 30.)

---

[1] Kaplan first purchased and installed a Model GE Security Vision III produced by GE Security in 2002, and then in 2006 upgraded to a Model Concord IV produced by Interlogix. (ECF No. 1 ¶¶ 21–22.)

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include

"factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral'

document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

**B.      Rule 9(b)**

Fraud-based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For a fraud-based claim, a court may grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b) if the plaintiff fails to plead with the required particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200–02 (3d Cir. 2007). This level of particularity requires plaintiff to allege sufficient details to put the defendant on notice of the "precise misconduct with which [it is] charged." *Id*. at 201 (citation omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) (citation omitted).

**III.      DECISION**

Defendants argue all claims contained in the Complaint must be dismissed because they are barred by applicable statutes of limitation or otherwise fail to state a claim upon which relief can be granted. (ECF No. 18.) Kaplan contends Defendants' motion must be denied because he has sufficiently pled equitable tolling to avoid the applicable statutes of limitation, and he has otherwise sufficiently stated each claim contained in the Complaint. (ECF No. 29.)

**A.      Statutes of Limitation**

Defendants argue all claims contained in the Complaint are barred by their respective statutes of limitation. (ECF No. 18 at 16.) Defendants assert Kaplan "has pled no facts demonstrating that he is entitled to application of the [discovery] rule" in order to toll the various

statutes of limitation (*id.* at 17), nor has he pled the doctrine of fraudulent concealment with the level of specificity required under Rule 9(b) to toll the applicable statutes of limitation. (*Id.* at 18.) Kaplan contends he has adequately pled the "discovery rule" and the "doctrine of 'fraudulent concealment'" to toll any applicable statutes of limitation. (ECF No. 29 at 16.)

Generally, a statute of limitations defense may not be asserted in a Rule 12(b)(6) motion. *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). However, "where the complaint facially shows noncompliance with the limitations period," the statute of limitations can be determined on a motion to dismiss. *Id*. at 135 n.3 (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3rd Cir. 1994)); *see also LeBlanc v. Snavely*, 453 F. App'x 140, 141 (3d Cir. 2011) (citations omitted) ("If the allegations, taken as true, show that relief is barred by the applicable statute of limitations, a complaint is subject to dismissal for failure to state a claim."). "[I]n order to alleviate the harsh results that might otherwise flow from a rigid or mechanical application of the statute of limitations, the New Jersey Supreme Court has devised an equitable principle known as the 'discovery rule.'" *Yarchak v. Trek Bicycle Corp.*, 208 F. Supp. 2d 470, 479 (D.N.J. 2002). "The discovery rule postpones a claim from accruing until the 'injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim.'" *Kelly v. Pier*, Civ. A. No. 16-3417, 2017 WL 3397030 at *11 (D.N.J. Aug. 8, 2017) (quoting *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)). "Normally, courts permit the parties to take discovery on the issue of when plaintiffs reasonably discovered, or could have reasonably discovered, that they had a viable cause of action." *Id*. at *12 (citing *SC Holdings, Inc. v. A.A.A. Realty Co.*, 935 F. Supp. 1354, 1368 (D.N.J. 1996)).

Under New Jersey law, the statute of limitations for claims brought for NJCFA violations, common law fraud, negligent misrepresentation, unjust enrichment, and TCCWNA violations is

six years from the date the cause of action accrued. *Ryan v. Liberty Fire Ins. Co.*, 234 F. Supp. 3d 612, 618 (D.N.J. 2017); *Tammera v. Grossman*, Civ. A. No. 10-569, 2010 WL 1372406, at *5 (D.N.J. Mar. 29, 2010); *Angelo v. Fid. & Guar. Life Ins. Co.*, Civ. A. No. 18-3224, 2019 WL 330521, at *2 (D.N.J. Jan. 25, 2019); *Martinez-Santiago v. Pub. Storage*, 38 F. Supp. 3d 500, 508 (D.N.J. 2014). The statute of limitations for breach of express warranty, breach of implied warranty, and MMWA violations is four years. *Viking Yacht Co. v. Composites One LLC*, 496 F. Supp. 2d 462, 470 (D.N.J. 2007); *Block v. Jaguar Land Rover N. Am., LLC*, Civ. A. No. 15-5957, 2022 WL 522752, at *6 (D.N.J. Feb. 22, 2022); *ACH Enters. 1 LLC v. Viking Yacht Co.*, 817 F. Supp. 2d 465, 472 (D.N.J. 2011).

Here, the Complaint does not facially show noncompliance with the applicable limitation periods. Kaplan alleges he was unaware of the Alarm defects until 2021 when upgrading the Alarms to have wireless radio transmitting capabilities. (ECF No. 1 ¶ 28.) Nothing in the Complaint demonstrates Kaplan was, nor should have been, aware of the Alarms defective nature prior to 2021. While Kaplan "bears the burden of showing that the discovery rule tolls the statute of limitations[,]" the Court "may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014). The Court finds the Complaint "does not reveal when the limitations period began to run, and the statute of limitations cannot justify Rule 12 dismissal." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011).

### B.    NJPLA Subsumption and the Economic Loss Doctrine

Defendants argue Kaplan's claims for common law fraud, negligent misrepresentation, breach of implied warranty, and unjust enrichment must be dismissed because they are subsumed

by the New Jersey Products Liability Act ("NJPLA"). (ECF No. 18 at 19–23.) Defendants also assert the economic loss doctrine bars Kaplan's claims for common law fraud and negligent misrepresentation. (*Id.*) Kaplan contends none of his claims are barred by the NJPLA nor the economic loss doctrine. (ECF No. 29 at 18–25.)

### 1.    NJPLA Subsumption

"[T]he NJPLA 'established the sole method to prosecute a product liability action,' and following its enactment, 'only a single product liability action remains.'" *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 817 (D.N.J. 2019) (quoting *Tirrell v. Navistar Int'l, Inc.*, 591 A.2d 643, 647–48 (N.J. Sup. Ct. App. Div. 1991)). "[T]he NJPLA generally subsumes common law product liability claims, thus establishing itself as the sole basis of relief under New Jersey law available to consumers injured by a defective product." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991). To determine if a claim is subsumed by the NJPLA, the Court must look to "whether the claim is based upon a product's manufacturing, warning, or design defect and therefore covered by the [NJ]PLA." *Sun Chem. Corp. v. Fike Corp.*, 235 A.3d 145, 156 (N.J. 2020); *see also Flint Grp. Packaging Inks N. Am. Corp. v. Fox Indus. Inc.*, Civ. A. No. 16-3009, 2020 WL 6156750, at *10 (D.N.J. Oct. 20, 2020). "[I]t is the nature of the action giving rise to a claim that determines how a claim is characterized." *Fike*, 235 A.3d at 156. All "claims that sound in the type of products liability actions defined in the [NJ]PLA must be brought under the [NJ]PLA." *Id.*

Here, Kaplan's claim for breach of implied warranty is subsumed by the NJPLA because the claim is based solely on the Alarms' defective nature, and not on representations made by Defendants. (*See* ECF No. 1 ¶ 119); *Guardavacarro v. Home Depot*, Civ. A. No. 16-8796, 2017 WL 3393812, at *7 (D.N.J. Aug. 8, 2017) ("Indeed, New Jersey federal and state courts have

consistently dismissed common law claims for negligence and breach of implied warranty as subsumed by the NJPLA, whenever those claims are grounded in harm caused by a defective product.") Conversely, Kaplan's claims for common law fraud, negligent misrepresentation, and unjust enrichment are not subsumed by the NJPLA because the nature of the claims do not sound in products liability, but rather misrepresentations. (*See* ECF No. 1 ¶¶ 94, 102, 133); *Sun Chem. Corp. v. Fike Corp.*, 981 F.3d 231, 238 (3d Cir. 2020) (holding a plaintiff's claim is not subsumed by the NJPLA where the plaintiff's claim was not premised on the product being defective, but rather the producer of that product breaching a promise that the product would have a certain feature). Kaplan brings these claims not just on the premise that the Alarms were defective, but on the grounds that "Defendants made material misrepresentations by advertising that the [Alarms] met UL and NFPA standards . . . when in fact they did not." (ECF No. 1 ¶ 97.) Accordingly, Defendants motion to dismiss Kaplan's claim for breach of implied warranty (Count V) is **GRANTED**.[2]

### 2.  Economic Loss Doctrine

"The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Chen v. HD Dimension, Corp.*, Civ. A. No. 10-863, 2010 WL 4721514, at *8 (D.N.J. Nov. 15, 2010) (quoting *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002)); *see also Atlas Acquisitions, LLC v. Porania, LLC*, Civ. A. No. 18-17524, 2019 WL 6130774, at *3 (D.N.J. Nov. 19, 2019) ("Under New Jersey law, a plaintiff typically may not recover in tort for damages caused by a breach of contract . . . ."). "[T]he economic loss doctrine 'defines the boundary between the

---

[2] While Kaplan's claims of common law fraud (Count II), negligent misrepresentation (Count III), and unjust enrichment (Count VII) are not subsumed by the NJPLA, Defendants set forth other arguments in support of dismissal of those claims which the Court addresses later in this opinion.

overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort, particularly in strict liability and negligence cases.'" *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 244 (3d Cir. 2010) (citation omitted). However, the economic loss doctrine will not bar "[f]raud claims . . . where there exists fraud in the inducement of a contract or an analogous situation based on pre-contractual misrepresentations." *RNC Sys., Inc. v. Mod. Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012) (quoting *Barton v. RCI, LLC*, Civ. A. No. 10-3657, 2011 WL 3022238, at *7 (D.N.J. July 22, 2011)).

"Generally, fraud claims that are extrinsic to the underlying contract, and consequently not barred under the economic loss doctrine, are claims for fraudulent inducement." *Touristic Enters. Co. v. Trane Inc.*, Civ. A. No. 09-02732, 2009 WL 3818087, at *2 (D.N.J. Nov. 13, 2009) (citations omitted). "[T]he 'critical issue' with regard to economic loss 'is whether the allegedly tortious conduct is extraneous to the contract.'" *Bracco Diagnostics, Inc.*, 226 F. Supp. 2d at 564 (quoting *Emerson Radio Corp. v. Orion Sales, Inc.*, Civ. A. No. 95-6455, 2000 WL 49361, at *7 (D.N.J. Jan. 10, 2000), *aff'd*, 253 F.3d 159 (3d Cir. 2001)). "The doctrine does not apply . . . when a party uses misrepresentations to induce another into entering an agreement." *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 418 (D.N.J. 2021) (citing *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 465 (D.N.J. 2020)). In other words, "a plaintiff may be permitted to proceed with tort claims sounding in fraud in the inducement so long as the underlying allegations involve misrepresentations unrelated to the performance of the contract, but rather precede the actual commencement of the agreement." *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676 (D.N.J. 2009) (citations omitted).

Here, while Kaplan's claim for common law fraud avoids the bar presented by the economic loss doctrine, his claim for negligent misrepresentation does not. *Id.* at 676; *Plastic*

*Surgery Ctr., P.A. v. Cigna Health and Life Ins. Co.*, Civ. A. No. 17-2055, 2018 WL 2441768, at *7 (D.N.J. May 31, 2018); *Chen*, 2010 WL 4721514, at *8; *Tri Coast LLC v. Sherwin-Williams Co.*, Civ. A. No. 16-3366, 2018 WL 468279, at *6 (D.N.J. Jan. 18, 2018); *see also Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 620 (3d Cir. 1995) (explaining "courts in jurisdictions which have adopted the economic loss doctrine routinely have declined to carve out an exception for claims of negligent misrepresentation"). Kaplan's allegations of negligence are not extraneous to the contract and Kaplan has suffered purely economic loss to which his entitlements only flow from a contract. Conversely, Kaplan's allegation that Defendants knew of the Alarm defects and fraudulently induced Kaplan to purchase the Alarms by making "material misrepresentations by advertising that the [Alarms] met UL and NFPA standards . . . when in fact they did not" is sufficient to prevent his claim for common law fraud from being barred by the economic loss doctrine. (ECF No. 1 ¶¶ 96–97.) Accordingly, Defendants' motion to dismiss Kaplan's negligent misrepresentation claim (Count III) is **GRANTED**.

### C.    Fraud-based Claims

Defendants argue that dismissal of Kaplan's remaining fraud-based claims (Counts I, II, and VII) is appropriate because the Complaint fails to allege Kaplan suffered any loss and fails to satisfy Rule 9(b)'s heightened pleading standard. (ECF No. 18 at 13–15, 23–27.) Additionally, Defendants contend Kaplan's unjust enrichment claim fails because: (1) Kaplan has failed to "plausibly allege any direct relationship between him and any Defendant" (*id.* at 33–35); (2) Kaplan has adequate remedies at law (*id.* at 35–36); and (3) Kaplan's unjust enrichment claim is "essentially another way of stating a traditional tort claim." (*Id.* at 37–38) (quoting *Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936–37 (3d Cir. 1999)). Kaplan asserts he has sufficiently pled damages to survive a motion to dismiss and satisfied Rule

9(b)'s heightened pleading standard. (ECF No. 29 at 13–15, 25–33.) Kaplan argues his unjust enrichment claim cannot be dismissed because: (1) a direct relationship with Defendants is not required; (2) plaintiffs may advance an unjust enrichment claim in the alternative until sufficient facts are gathered to determine if other adequate remedies of law are applicable; and (3) an unjust enrichment claim can be based on a defective product. (*Id.* at 37–38.)

      1.      **NJCFA**

A *prima facie* NJCFA claim requires showing: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the conduct and the loss. *Int'l Union of Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007). "Claims under the [NJ]CFA are required to meet the particularity requirement of Fed. R. Civ. P. 9(b)." *Daloisio v. Liberty Mut. Fire Ins. Co.*, 754 F. Supp. 2d 707, 709 (D.N.J. 2010) (internal citations omitted). However, "courts have relaxed [Rule 9(b)] when factual information is peculiarly within the defendant's knowledge or control." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989). In such circumstances, "pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based." *Id.* Rule 9(b) requires plaintiffs to support their "allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). In other words, "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation" *Frederico*, 507 F.3d at 200. "However, a plaintiff need not allege every material detail so long as it pleads the

circumstances of the fraud with sufficient particularity to place a defendant on notice of the 'precise misconduct with which [it is] charged.'" *Aetna, Inc. v. Open MRI and Imaging of Rochelle Park, P.A.*, No. 21-20043, 2022 WL 17176934, at *4 (D.N.J. Nov. 23, 2022) (alterations in original) (quoting *Frederico*, 507 F.3d at 200). "While the heightened pleading standard of Rule 9(b) allows essential elements of the omission under the NJCFA, such as intent, to be alleged generally, such elements still need to be alleged." *Maniscalco v. Brother Int'l. Corp. (USA)*, 627 F. Supp. 2d 494, 500 (D.N.J. 2009).

To sustain a NJCFA claim, a plaintiff must show unlawful conduct on part of the defendant. *Int'l Union*, 929 A.2d at 1086. Section 2 of the NJCFA prohibits:

> any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . .

N.J. Stat. Ann. § 56:8-2. "Proof of any one of those acts or omissions or of a violation of a regulation will be sufficient to establish unlawful conduct under the Act." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). "[C]ourts have derived three broad categories of unlawful conduct: affirmative acts, knowing omissions, and regulatory violations." *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 436 (D.N.J. 2012) (citing *Frederico*, 507 F.3d at 202).

To state a NJCFA claim based on an affirmative act, the plaintiff need not show the defendant intended to deceive. *Cox*, 647 A.2d at 462. However, when a NJCFA claim is based on an omission, the plaintiff must show some form of intent on part of the defendant. *See Sarlo v. Wells Fargo Bank, N.A.*, 175 F. Supp. 3d 412, 426 (D.N.J. 2015) (explaining that "an omission or failure to disclose a material fact, if accompanied by knowledge and intent" is actionable under the NJCFA); *Cox*, 647 A.2d at 462 ("[W]hen the alleged consumer fraud consists of an omission,

14

the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud.").

"The CFA does not define what constitutes an 'ascertainable loss,' and there is no legislative history 'that sheds direct light on those words.'" *Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 361 (D.N.J. 2006) (citing *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005)). "The New Jersey Supreme Court has instructed, 'To give effect to the legislative language describing the requisite loss for private standing under the CFA, . . . a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss.'" *Id.* (citing *Thiedemann*, 872 A.2d at 792). "The certainty implicit in the concept of an ascertainable loss is that it is quantifiable or measurable, and in order to raise a genuine dispute, the plaintiff must proffer evidence of loss that is not hypothetical or illusory." *Id.* (quotation marks omitted) (citing *Thiedemann*, 872 A.2d at 792). "In cases involving breach of contract or misrepresentation, either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle and will set the stage for establishing the measure of damages." *Thiedemann*, 872 A.2d at 792.

Allegations that a product is worth less because of a defect satisfies the ascertainable loss element because such a loss is quantifiable. *See Bang v. BMW of N. Am., LLC*, Civ. A. No. 15-6945, 2016 WL 7042071, at *6 (D.N.J. Dec. 1, 2016) (finding the plaintiffs adequately pled ascertainable loss because they alleged that the purchased vehicles are worth less as a result of the vehicles' purported defects); *Marcus v. BMW of N. Am.*, Civ. A. No. 08-5859, 2010 WL 4853308, at *11 (D.N.J. Nov. 19, 2010) (finding ascertainable loss adequately pled where the plaintiffs "got less than what they expected"), *rev'd on other grounds, Marcus v. BMW of North Am.*, 687 F.3d 583 (3d Cir. 2012).

Here, a relaxing of Rule 9(b)'s heightened pleading standard is appropriate because Kaplan has adequately alleged that Defendants exclusively possess information relevant to his claims, and Kaplan's allegation is accompanied by a statement of facts upon which the allegation is based. *See Craftmatic*, 890 F.2d at 645 ("Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs.").  Kaplan's allegation that Defendants had "exclusive knowledge of and/or concealed material information regarding the Alarm [] Defect" is sufficient to entitle him to a relaxing of Rule 9(b)'s heightened pleading standard. (ECF No. 1 ¶ 75.) Therefore, Kaplan's allegations that: "Defendants made material misrepresentations by advertising that the [Alarms] met UL and NFPA standards . . . when in fact they did not" (*id.* ¶ 97) and "Defendants intended that Plaintiff . . . would rely upon its acts of concealment and/or omission to avoid replacing the defective parts during the warranty period" (*id.* ¶ 89) are sufficient to satisfy Rule 9(b)'s pleading standard. Additionally, while Kaplan is not permitted to "lump[] all . . . defendants together as having engaged in wrongful conduct without specifying which defendant was responsible for which actions[,]" *Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 450 (D.N.J. 2011), Kaplan has included a timeline showing which Defendant produced the Alarms at the relevant times (ECF No. 1 ¶ 6). Accordingly, Kaplan has satisfied Rule 9(b)'s pleading standard.

Kaplan has also alleged sufficient facts to sustain an NJCFA claim at the motion to dismiss stage. Kaplan's allegation that Defendants knowingly concealed the Alarms defective nature adequately pleads unlawful conduct. Kaplan adequately pleads ascertainable loss and a causal connection between the unlawful conduct and the ascertainable loss by alleging "out of pocket losses and diminished value of the Alarm[s] . . ." due to "Defendant's affirmative misrepresentations and omissions associated with the Alarm [] Defects." (ECF No. 1 ¶ 18); *see*

*Bang*, 2016 WL 7042071, at *6 (finding the plaintiffs adequately pled ascertainable loss because they alleged that the purchased vehicles are worth less as a result of the vehicles' purported defects); *Marcus*, 2010 WL 4853308, at *11 (finding ascertainable loss adequately pled where the plaintiffs "got less than what they expected"). Additionally, while Defendants argue Kaplan's claim cannot survive because Defendants accurately stated that the Alarms were UL certified, the Court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. Accordingly, Defendants motion to dismiss Kaplan's NJCFA claim (Count I) is **DENIED**.

### 2.    Common Law Fraud

"Common law fraud involves a more onerous standard than a claim for fraud under the [NJ]CFA." *Mason v. Costco Wholesale Corp.*, Civ. A. No. 09-361, 2009 WL 2634871, at *7 (D.N.J. Aug. 26, 2009) (citing *Cox*, 647 A.2d at 462). To state a claim for common law fraud under New Jersey law, a plaintiff must allege "(1) [the defendant made] a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) [the defendant had] an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Triffin v. Automatic Data Processing, Inc.*, 926 A.2d 362, 368 (N.J. Super. Ct. App. Div. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)). The heightened pleading standard set forth in Rule 9(b) also applies to New Jersey common law fraud claims. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) (applying Rule 9(b) to both CFA and common law fraud claims). To reiterate, Rule 9(b) requires plaintiffs to support their "allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *United States ex rel. Moore & Co.*, 812 F.3d at 307 (quoting *In*

*re Rockefeller*, 311 F.3d at 217). In other words, "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200.

Here, Kaplan has adequately pled his claim for common law fraud with the requisite level of specificity to satisfy Rule 9(b)'s pleading standard, and to satisfy the five elements required to sustain a common law fraud claim. Kaplan is entitled to a relaxing of Rule 9(b)'s heightened pleading standard. *See supra* Sec.III.C.1. Kaplan alleges: (1) "Defendants made material misrepresentations by advertising that the Alarm[s] [] met UL and NFPA standards for household combination listed burglar and fire alarm system control units when in fact they did not" and "concealed [] serious defects, dangers, and non-conformities from consumers and/or failed to disclose the Alarm [] Defects . . ." (ECF No. 1 ¶¶ 16, 97); (2) Defendants knew the Alarms contained the defects (*id.* ¶ 96); (3) "Defendants intended that the Plaintiffs and the other members of the Class and Subclass rely upon the . . . misrepresentations, concealment and omissions" (*id.* ¶ 98); (4) Kaplan "justifiably relied upon Defendants' misrepresentations . . ." (*id.* ¶ 99); and (5) Kaplan "suffered [] damages . . . as a proximate result thereof." (*Id.* ¶ 100.) These allegations plead "the who, what, when, where, and how" of his claim, and satisfy each of the five elements required to sustain a common law fraud claim. *Moore*, 812 F.3d at 307.

Accordingly, Defendants' motion to dismiss Kaplan's common law fraud claim (Count II) is **DENIED**.

### 3.    Unjust Enrichment

"To establish a claim of unjust enrichment in New Jersey, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *Hughes v. Panasonic Consumer Elecs. Co.*, Civ. A. No. 10-846, 2011 WL 2976839, at *26 (D.N.J.

July 21, 2011) (quoting *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007)). "[T]he equitable remedy of unjust enrichment is not available when there is a valid contract" between the parties. *Joseph Oat Holdings, Inc. v. RCM Digesters, Inc.*, Civ. A. No. 06-4449, 2009 WL 900758, at *7 (D.N.J. Mar. 31, 2009) (citing *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982)). "Furthermore, unjust enrichment 'requires that [the] plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" *Hughes*, 2011 WL 2976839, at *26 (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (N.J. 1994)). Also, "a claim for unjust enrichment requires a direct relationship between the parties." *Hammer v. Vital Pharms., Inc.*, Civ. A. No. 11-4124, 2012 WL 1018842, at *10 (D.N.J. Mar. 26, 2012) (citations omitted); *see also Bedi v. BMW of N. Am., LLC*, Civ. A. No. 15-1898, 2016 WL 324950, at *5 (D.N.J. Jan. 27, 2016) ("[T]here must be a direct relationship to assert an unjust enrichment claim."). "[I]t is the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the basis of an unjust enrichment claim." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998). Unjust enrichment claims premised on fraud must plead the underlying fraud with the "particularity" required by Rule 9(b). *Crete v. Resort Condos. Int'l, LLC*, Civ. A. No. 09-5665, 2011 WL 666039, at *5–6 (D.N.J. Feb. 14, 2011).

Here, Kaplan fails to allege he had a direct relationship with Defendants. While the Complaint states "Defendants were at all relevant times the . . . seller of the Alarm[s,]" (ECF No. 1 ¶ 115), Kaplan fails to dispute Defendants' contention that he has inadequately alleged a direct relationship with Defendants; rather, Kaplan argues a direct relationship is not required to sustain a claim for unjust enrichment. (ECF No. 29 at 37–38.) Accordingly, Defendants' motion to dismiss Kaplan's unjust enrichment claim (Count VII) is **GRANTED**.

### D.     Breach of Express Warranty

Defendants argue Kaplan's breach of express warranty claim (Count IV) must be dismissed because Kaplan failed to provide Defendants "with pre-suit notice of an alleged defect and an opportunity to cure." (ECF No. 18 at 28.) Additionally, Defendants contend dismissal is warranted because Kaplan has failed to establish an express warranty was created. (*Id.* at 29–30.) Kaplan asserts pre-suit notice of breach of warranty is not required under New Jersey law, and he has adequately pled an express warranty was formed and thereafter breached. (ECF No. 29 at 33–35.)

Pursuant to New Jersey law, a plaintiff must allege the following to state a claim for breach of express warranty: "(1) that Defendant made an affirmation, promise or description [of] the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder v. Farnam Cos. Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011).

"A statement can amount to a warranty, even if unintended to be such by the seller, if it could be fairly understood . . . to constitute an affirmation or representation that the [product] possesse[s] a certain quality or capacity relating to future performance." *Avram v. Samsung Elecs. Am., Inc.*, Civ. A. No. 11-6973, 2013 WL 3654090, at *8 (D.N.J. July 11, 2013) (alterations in original) (citations and quotation marks omitted). "However, 'an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.'" *Snyder*, 792 F. Supp. 2d at 721 (quoting N.J. Stat. Ann. § 12A:2-313(2)). "While the alleged warranties may later be found to be no more than 'puffery,' except in clear cases, this is normally a question of fact for the jury." *Id.* at 723; *see also In re Toshiba Am. HD DVD Mktg. & Sales Pracs. Litig.*, Civ. A. No. 08-939, 2009 WL 2940081, at *16 (D.N.J. Sept. 11, 2009) (dismissing a breach of warranty claim based on Defendant's statement

that HD DVD Players were for "Today, Tomorrow, and Beyond," because the statement is merely "puffery"). "At the motion to dismiss stage, it is enough that Plaintiffs provide more than 'bald assertions,' and identify specific affirmations by Defendant that could be found to constitute an express warranty." *Snyder*, 792 F. Supp. 2d at 722.

New Jersey has adopted the UCC's notice requirement, which reads in pertinent part: "Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.J. Stat. Ann. 12A:2-607(3)(a). In other words, "this statutory notice is a 'condition precedent to filing any suit for breach of warranty.'" *Hammer*, 2012 WL 1018842, at *10 (quoting *Joc, Inc. v. Exxonmobil Oil Corp.*, Civ. A. No. 08-5344, 2010 WL 1380750, at *4 (D.N.J. Apr. 1, 2010)). While the Court has held "lack of pre-litigation notice of breach of warranty claims does not obviate dismissal of those claims," this exception to the UCC's notice requirement is limited to cases where a plaintiff brings suit "against a remote manufacturer who was not the immediate seller of a defective product." *Compare Devane v. Church & Dwight Co., Inc.*, Civ. A. No. 19-9899, 2020 WL 998946, at *7 (D.N.J. Feb. 28, 2020) (explaining "lack of pre-litigation notice of breach of warranty claims does not obviate dismissal of those claims" where a plaintiff purchased multivitamins from various drug stores but brought suit against the multivitamin manufacturer), *and Strzakowlski v. Gen. Motors Corp.*, Civ. A. No. 04-4740, 2005 WL 2001912, at *3 (D.N.J. Aug. 16, 2005) (holding "no notice must be given to a manufacturer who is not the immediate seller in an express warranty case."), *with Santiago v. Total Life Changes LLC*, Civ. A. No. 20-18581, 2021 WL 5083835, at *4–5 (D.N.J. Nov. 2, 2021) (holding "New Jersey law also requires a plaintiff to give pre-litigation notice of warranty claims" where a plaintiff brought warranty claims against the direct seller of the product). Courts regularly dismiss breach of warranty claims

where a plaintiff fails to give notice to the direct seller of the product in question. *See e.g.,*
*Santiago*, 2021 WL 5083835, at *4–5; *Kury v. Abbott Labs., Inc.*, Civ. A. No. 11-803, 2012 WL
124026, at *7 (D.N.J. Jan. 17, 2012); *Luppino v. Mercedes–Benz USA, LLC*, Civ. A. No. 09–5582,
2011 WL 2470625, at *3 (D.N.J. June 20, 2011); *Joc*, 2010 WL 1380750, at *4.

Here, dismissal of Kaplan's claim for breach of express warranty for lack of pre-suit notice
is inappropriate because Kaplan does not allege he purchased the Alarms directly from Defendants.
*See supra* Sec.III.C.3. Therefore, Defendants are not entitled to pre-suit notice. *See Devane*, 2020
WL 998946, at *7. Additionally, Kaplan has satisfied the three elements required to state a claim
for breach of express warranty. Kaplan's allegations that he "justifiably relied upon Defendants'
misrepresentations" that the Alarms "met UL and NFPA standards for household combination
listed burglar and fire alarm system control units when in fact they did not" adequately alleges "(1)
that Defendant[s] made an affirmation, promise or description [of] the product; (2) that this
affirmation, promise or description became part of the basis of the bargain for the product; and (3)
that the product ultimately did not conform to the affirmation, promise or description." (ECF No.
1 ¶¶ 16, 97, 99); *Snyder v. Farnam Cos. Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011). Accordingly,
Defendants' motion to dismiss Kaplan's breach of express warranty claim (Count IV) is **DENIED**.

### E.     Magnuson-Moss Warranty Act Claim

Defendants contend Kaplan's MMWA claim (Count VI) must be dismissed because: (1)
the Court lacks jurisdiction over the claim because Kaplan has failed to reach the requisite number
of named plaintiffs for a MMWA claim to be brought as a class action; (2) Kaplan has failed to
give adequate pre-suit notice; and (3) Kaplan's underlying state law warranty claims are deficient.
(ECF No. 18 at 32–33.) Kaplan fails to contest all of Defendants arguments but contends his

MMWA claim is viable because his underlying state law warranty claims are also viable. (ECF No. 29 at 36.)

The MMWA provides a federal cause of action for state law express and implied warranty claims. 15 U.S.C. § 2301 *et seq.* The MMWA serves as a vehicle for consumers to assert state law breach of warranty claims in federal court. *DeFrank v. Samsung Elecs. Am.*, *Inc.*, Civ. A. No. 19-21401, 2020 WL 6269277, at *17 (D.N.J. Oct. 26, 2020.) Therefore, "[c]laims under the MMWA depend on the disposition of the underlying state law warranty claims . . . . [I]f there exists no actionable warranty claim, there can be no violation of the MMWA." *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 600 (D.N.J. 2016) (citations omitted). Further, the MMWA states, "No claim shall be cognizable . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3).

Here, Kaplan's MMWA claim must be dismissed because he has failed to meet the MMWA's numerosity requirement for class action suits. Kaplan names himself as the sole named plaintiff within this putative class action; well short of the one hundred named plaintiffs required under the MMWA. (ECF No. 1 ¶ 12); *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 885 (D.N.J. 2020); 15 U.S.C. § 2310(d)(3). Accordingly, Defendants motion to dismiss Kaplan's MMWA claim (Count VI) is **GRANTED**.

### F.      Truth-in-Consumer Contract, Warranty, and Notice Act

Defendants argue dismissal of Kaplan's TCCWNA claim (Count VIII) is appropriate on three grounds: (1) Kaplan has failed to "identif[y] any allegedly unlawful provision in any warranty or notice that [Defendants] provided to him"; (2) Kaplan's NJCFA claim fails as a matter of law and therefore cannot serve as a basis for his TCCWNA claim; and (3) Kaplan has not pled sufficient facts to establish that Defendants are "sellers" within the meaning of the TCCWNA.

(ECF No. 18 at 38–40.) Kaplan fails to dispute Defendants' argument that Defendants are not "sellers" within the meaning of the TCCWNA. Kaplan contends his allegation that Defendants violated the NJCFA and "have engaged in deceptive, unconscionable, unfair, fraudulent and/or misleading commercial practices in the advertising, promoting, marketing, distributing and selling of the [Alarms] it knew to be defective" adequately pleads his TCCWNA claim. (ECF No. 29 at 40.)

"The purpose of the TCCWNA . . . is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts." *Kent Motor Cars, Inc. v. Reynolds and Reynolds, Co.*, 25 A.3d 1027, 1044 (N.J. 2011) (internal citations omitted). "[The] TCCWNA does not establish consumer rights or seller responsibilities. Rather, the statute bolsters rights and responsibilities established by other laws." *Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 134 (3d Cir. 2014).

The TCCWNA provides:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J. Stat. Ann. § 56:12–15.

"To state a claim under TCCWNA, a plaintiff must allege each of four elements: (1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the 'seller offers a consumer a contract' or gives or displays any written notice, or sign; and (4) the contract, notice or sign includes a provision that 'violate[s] any legal right of a consumer' or responsibility of a seller." *Watkins*, 591 F. App'x

at 135 (citing *Bosland v. Warnock Dodge, Inc.*, 933 A.2d 942, 949 (N.J. Super. Ct. App. Div. 2007)). "The terms 'seller, lessor, lender, or bailee' are not defined by statute. Thus, to define those terms, a reviewing court must rely on the plain language of the statute and give the language its ordinary meaning." *Boyko v. Am. Intern. Grp., Inc.*, Civ. A. No. 08-2214, 2009 WL 5194431, at *5 (D.N.J. Dec. 23, 2009).

Here, Kaplan's TCCWNA claim fails because he has not adequately alleged that Defendants sold Kaplan the Alarms. While Kaplan alleges "Defendants were at all relevant times the . . . seller of the Alarm[s]" and "Defendants are sellers within the meaning of TCCWNA, as set forth at N.J.S.A. 56:12-15 and -17," these allegations are legal conclusions not entitled to the same presumption of truth as factual contentions in a complaint. (ECF No. 1 ¶¶ 115, 140); *see Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (explaining that restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth). Beyond the threadbare recital of the elements of his TCCWNA claim, Kaplan fails to allege any facts that Defendants are the sellers of the Alarms. Kaplan does not provide any details regarding how he purchased the Alarms. Such allegations are required to sustain a claim under the TCCWNA. *Boyko*, 2009 WL 5194431, at *5 (explaining that a plaintiff's contention that a defendant is a seller, lessor, lender, or bailee cannot sustain a TCCWNA claim where the defendant did not sell, lease, lend, nor bail any money or property to that plaintiff). Accordingly, Defendants' motion to dismiss Kaplan's TCCWNA claim (Count VIII) is **GRANTED**.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 18) is **GRANTED IN PART** and **DENIED IN PART**. Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) as to Count I (violations of the NJCFA), Count II (common law fraud), and Count IV (breach of express warranty) is **DENIED**. Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) as to Count III (negligent misrepresentation), Count V (breach of implied warranty), Count VI (MMWA claim), Count VII (unjust enrichment), and Count VIII (TCCWNA claim) is **GRANTED** and these claims are **DISMISSED WITHOUT PREJUDICE**.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  June 30, 2023