# UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMUEL L. KAPLAN, on behalf of himself and the Putative Class, <br><br> Plaintiffs, <br><br> v. <br><br> GENERAL ELECTRIC COMPANY d/b/a GE, UNITED TECHNOLOGIES CORP., UTC FIRE & SECURITY AMERICAS CORPORATION, INC. d/b/a INTERLOGIX, and CARRIER FIRE & SECURITY AMERICAS CORPORATION, <br><br> Defendants. | Case No. 2:22-cv-05296 <br><br> Hon. Brian R. Martinotti <br> Magistrate Judge Edward S. Kiel <br><br> ***Document electronically filed*** |

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT

Justin T. Quinn
**ROBINSON MILLER LLC**
IRONSIDE NEWARK
110 Edison Place, Suite 302
Newark, NJ 07102

K. Winn Allen, P.C. (admitted *pro hac vice*)
Devin Anderson (admitted *pro hac vice*)
Mary Elizabeth Miller (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004

General Electric Company d/b/a GE, United Technologies Corp., UTC Fire & Security Americas Corporation, Inc. (d/b/a Interlogix), and Carrier Fire & Security Americas Corp. (collectively, "Carrier") submit this Answer to the allegations in the First Amended Complaint ("Complaint") of Plaintiff Samuel L. Kaplan.[1]  Unless otherwise admitted, Carrier denies the allegations contained in any of the headers in Plaintiff's Complaint, and hereby responds to Plaintiff's allegations as follows.

## PARTIES

1.      Plaintiff, who is a disabled veteran, is a citizen of the State of New Jersey as well as a United States citizen. He resides in Teaneck, New Jersey, where he owns his home.

**RESPONSE:**

Carrier lacks sufficient information about the allegations and characterizations in paragraph 1 and therefore denies the allegations.

2.      Defendant General Electric Company d/b/a GE (hereinafter "GE") is a New York Domestic Business Corporation licensed to do business in the State of New Jersey.  Among other things, it designed and manufactured combination listed household burglar and fire alarm system control units.  In 2002, GE purchased Interlogix, a manufacturer of combination-listed household burglar and fire alarm system control units and changed the name to GE Security.

**RESPONSE:**

Carrier admits that General Electric Company is a New York Domestic Business Corporation licensed to do business in the State of New Jersey.  Carrier further states that General Electric Company purchased Interlogix in 2002 and used the Interlogix brand name for its combination-listed burglar and fire alarm system control units and eventually changed the name to GE Security.  Except as expressly admitted the allegations in paragraph 2 are denied.

---

[1]    Carrier states that Plaintiff's original complaint sued various corporate entities that no longer exist or do not own the Interlogix brand.  Plaintiff has since amended his complaint to name Carrier Fire & Security Americas Corp., who owns the Interlogix brand but no longer produces Interlogix alarms.

3.      United Technologies Corp ("UTC") was a multinational conglomerate incorporated in Delaware and headquartered in Farmington, Connecticut. It developed and manufactured products in numerous areas, including but not limited to aircraft engines, aerospace systems, HVAC, elevators and escalators, fire and security, building automation, and industrial products, among others. In 2010, UTC acquired GE Security and in 2011, revived the Interlogix brand name for its combination-listed burglar and fire alarm system control units.

**RESPONSE:**

Carrier states that the entity formerly known as United Technologies Corp ("UTC") is now known as Raytheon Technologies Corporation.  Carrier further states that UTC was incorporated under Delaware law and headquartered in Farmington, CT, and that UTC acquired GE Security in 2010 and began using the Interlogix brand name for its combination-listed burglar and fire alarm system control units.   Except as expressly admitted the allegations in paragraph 3 are denied.

4.      UTC Fire & Security Americas Corporation, Inc. d/b/a Interlogix ("UTC Security") became a wholly owned subsidiary of United Technologies Corporation and a manufacturer of, inter alia, home security products including the Interlogix brand of combination-listed burglar and fire alarm system control units in late 2015. It was incorporated in Delaware with its principal place of business in Arden Hills, Minnesota.

**RESPONSE:**

Carrier states that entity formerly known as UTC Fire & Security Americas Corporation, Inc. ("UTC Security") is now known as Carrier Fire & Security Americas Corporation.  Carrier further states that UTC Security was a wholly owned subsidiary of UTC, was incorporated under Delaware law, and had its principal place of business in Arden Hills, MN.  Except as expressly admitted the allegations in paragraph 4 are denied.

5.      In April 2020, United Technologies spun off UTC Security into Carrier Global Corporation. Carrier Global Corporation ("Carrier") is a Delaware Corporation with its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. According to its Form S-1 Registration Statement dated March 13, 2020, "Carrier provides its fire and security products and services under Autronica, Chubb, Det-Tronics, Edwards, Fireye, GST, *Interlogix*, Kidde, LenelS2, Marioff, Onity, Supra and other brand names, and sells directly to customers as well as through manufacturers' representatives, distributors, dealers, value-added resellers and retailers." (Emphasis added).

**RESPONSE:**

Carrier states that paragraph 5 purports to describe or characterize a written document, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Carrier admits that Carrier Global Corporation is a Delaware Corporation with its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418 and that Carrier Global Corporation's Form S-1 Registration Statement dated March 13, 2020 contains the quoted language. Except as expressly admitted the allegations in paragraph 5 are denied.

6.     Carrier Fire & Security Americas Corporation ("Carrier Fire") is a corporation organized and existing under the laws of the State of Delaware with its registered agent's office located at 3411 Silverside Road, Tatnall Building #104, Wilmington, Delaware 19810.

**RESPONSE**:

Carrier admits the allegations in paragraph 6.

7.     Upon information and belief, Carrier Fire currently owns the Interlogix brand.

**RESPONSE**:

Carrier states that Carrier Fire & Security Americas Corporation owns the Interlogix brand but no longer produces Interlogix alarms. Except as expressly admitted the allegations in paragraph 7 are denied.

## NATURE OF THE ACTION

8.     This action arises from the dangerous and serious defects, dangers and non-conformities in all combination-listed burglar and fire alarm system control units that were sold under the brand name Interlogix manufactured and sold by GE, UTC, UTC Security and Carrier Fire. The Interlogix alarm system control unit was manufactured and sold by GE from 2002 through 2009 under the GE Security name, and then UTC from 2010 through late 2015 under the Interlogix brand name and then UTC Security from late 2015 through early 2020 under the Interlogix brand name and then by Carrier Fire under the Interlogix brand name after UTC Security was spun off into Carrier Fire in early 2020. The serious defects, dangers and non-conformities which Defendants have known about for years, and/or were required to know about for years, and long before they designed, sold, and put their products out into the stream of commerce can lead to an instantaneous and catastrophic failure of the alarm system's combination-listed control unit

during a fire. In this dangerously silent and non-functional state, instead of the alarm system performing its crucial life safety function by audibly warning all occupants inside the home of the fire emergency and the central station, the combination listed control unit fails. Consequently, the alarm system cannot warn families of the imminent life safety danger within their home, allowing for their timely escape before the premises become untenable.

**RESPONSE:**

Carrier states that the Interlogix alarm system control unit was previously manufactured and sold by GE, UTC, and UTC Security and that Carrier began providing fire and security products under the Interlogix brand name after UTC Security was spun-off into Carrier in early 2020. Except as expressly admitted the allegations in paragraph 8 are denied.

9.     The propensity for serious personal injury and/or death is both dramatically and foreseeably increased without all occupants in the home having the early warning and the window of opportunity needed to escape from the premises during a fire emergency.

**RESPONSE:**

Carrier states that residential alarm systems are intended to warn occupants of a home during fire emergencies. Except as expressly admitted the allegations in paragraph 9 are denied.

10.     As a result, persons inside the home may not wake up and/or they may die as a result of inhaling toxic fumes and/or they may become overcome by smoke inhalation and/or they may breathe in dangerous levels of carbon monoxide and/or they may become disoriented and/or they may become trapped inside the home due to fire and/or smoke conditions with no path to escape.

**RESPONSE:**

Carrier states that residential fire emergencies in certain circumstances can threaten the health and safety of the occupants of a home. Except as expressly admitted the allegations in paragraph 10 are denied.

11.     At the same time, without the central station being alerted to immediately notify the fire department, firefighters will not know to respond rapidly to help locate and take occupants from inside of the home, to safety and out of harm's way. Additionally, if occupants of the home escape it would not be likely to occur without serious personal injury or death happening.

**RESPONSE:**

Carrier denies the allegations in paragraph 11.

12.     The dangers inherent in these control units renders them non-conforming to the minimum standards required by both UL and NFPA 72 Standards. [(UL) Underwriters Laboratories, Inc., UL-985 and UL-1023, and NFPA 72 Standards- National Fire Alarm Code and NFPA 72 National Fire Alarm and Signaling Code.] Notably, before the Defendants submitted their equipment to be listed by a Nationally Recognized Testing Laboratory (NRTL) such as UL-Underwriters Laboratories, Inc. – they were required to verify that their equipment was conforming.

**RESPONSE:**

Carrier denies the allegations in paragraph 12.

13.     If the data-bus circuit wiring is faulted and/or shorted anywhere it is installed throughout the home by fire, such as in the common areas, in the wall, attic or basement, the nonconforming control unit is instantly rendered non-functional (the "Alarm System Defect"). In gross contrast, if the combination listed control unit was conforming, fire attacking the single data-bus circuit of the combination listed control unit or any equipment that is required to connect to the single data-bus of the combination listed control unit shall not cause the system to be rendered non-functional, since conforming to both UL and NFPA 72 Standards specifically prohibits this loss of functionality from happening. Similarly, the State of New Jersey also requires compliance with the aforementioned, through the Uniform Construction Code, the Uniform Fire Code and NFPA 72.

**RESPONSE:**

Carrier denies the allegations in paragraph 13.

14.     Plaintiff brings this action for actual damages, equitable relief, including restitution, injunctive relief, declaratory relief and disgorgement of profits, and all other relief available on behalf of himself and all similarly situated individuals and entities (the "Class") who own combination listed single data-bus residential burglar and fire alarm system control units that were manufactured or sold by Defendants under the brand names GE Security and Interlogix (the "Alarm Systems").

**RESPONSE:**

Carrier states that paragraph 14 states legal conclusions to which no response is required.

15.     All the claims asserted herein arise out of the design, manufacture, advertising, promoting, marketing, distributing, selling and representing that their Combination Listed Household Burglar and Fire Alarm System Control Units met the requirements set forth in the applicable sections of both UL and NFPA 72 Standards making them listed for their intended purpose, safe and reliable. However, these representations were false.

**RESPONSE:**

Carrier denies the allegations in paragraph 15.

16.    Defendants knew or should have known before the time it sold their first Combination Listed Household Burglar and Fire Alarm System Control Unit Alarm System, that their control units were defective, dangerous and non-conforming to both UL 1023/UL-985 and NFPA 72 Standards.

**RESPONSE:**

Carrier denies the allegations in paragraph 16.

17.    The combination-listed control unit deficiencies and non-conformities dangerously and needlessly expose all occupants to an increased risk of property damage, serious personal injury, and/or death.

**RESPONSE:**

Carrier denies the allegations in paragraph 17.

18.    Defendants concealed these serious defects, dangers and non-conformities from consumers and/or failed to disclose the Alarm System Defects to Plaintiff and the class, while at the same time affirmatively representing the high quality and safety of their control unit systems meeting both UL and NFPA Standards. Defendants failed to remove these Alarm Systems from the marketplace and they failed to take appropriate remedial action, even though Defendants were aware that the single data-bus circuit of their combination listed control units was non-compliant to UL and NFPA regulations. Instead, Defendants marketed and sold their combination listed control units, even though it knew and/or should have known that it was non-conforming and was both defective and dangerous. The Defendants concealed these material defects from consumers who relied on the Defendants combination listed control units for their security and life safety protection but it was to no avail.

**RESPONSE:**

Carrier denies the allegations in paragraph 18.

19.    Had Plaintiff and other members of the Class known of the Alarm System Defects and non-conformities at the time of sale, they would not have purchased the Defendants combination listed control unit. This information would have provided them with the opportunity to select code-complaint equipment. Notably, the Defendants combination listed control units did not, and do not even meet minimum fire code requirements as is required in New Jersey and Nationwide under both UL and NFPA Standards.

**RESPONSE:**

Carrier denies the allegations in paragraph 19.

20.     Plaintiff and the Class have suffered an ascertainable loss because of Defendants' affirmative misrepresentations and omissions associated with the Alarm System Defects, including but not limited to, out of pocket losses and diminished value of the Alarm System.

**RESPONSE:**

Carrier denies the allegations in paragraph 20.

21.     Plaintiff seeks actual damages, injunctive relief, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to Plaintiff and the Class.

**RESPONSE:**

Carrier denies the allegations in paragraph 21.

## PLAINTIFF'S EXPERIENCE

22.     Plaintiffs owns a home located at 95 Audubon Road, Teaneck, New Jersey, 07666.

**RESPONSE:**

Carrier lacks sufficient information about the allegations in paragraph 22 and therefore denies them.

23.     Plaintiff had a combination listed burglar and fire alarm system control unit installed in his home in the year 2002 consisting of a Model GE Security Version III control unit.

**RESPONSE:**

Carrier lacks sufficient information about the allegations in paragraph 23 and therefore denies them.

24.     In 2006, Plaintiff upgraded the combination listed burglar and fire alarm system control unit that he had, to a Model Concord IV by Interlogix.

**RESPONSE:**

Carrier lacks sufficient information about the allegations in paragraph 24 and therefore denies them.

25.     The Interlogix Concord IV combination listed control unit represents that it is UL listed and meets NFPA 72 standards.

**RESPONSE:**

Carrier admits the allegations in paragraph 25.

26.    This photo of the Concord IV Combination Listed Control Unit schematic makes these representations:



**RESPONSE:**

Carrier states that paragraph 26 purports to describe or characterize a written document, the terms of which speak for themselves, and therefore no response is required.

27.    The installation guide for the Interlogix Concord IV Control Unit also represents that it is UL Listed with it specifically stating that their control unit complies with UL 985 and UL 1023. A copy of the installation guide is attached hereto as **Exhibit A**.

**RESPONSE:**

Carrier states that the allegations in paragraph 27 purport to quote, describe, or characterize a written document, the terms of which speak for themselves, and therefore no response is required.

28.    By the Defendants representing to consumers that the alarm system equipment is UL listed and meets NFPA 72 standards it is representing that it meets the minimum statutory standard requirements including UL 985 and UL 1023, and the relevant provisions of NFPA 72 regarding Combination Listed Burglar and Fire Alarm Control Units as is described in more detail below.

**RESPONSE:**

Carrier states that UL certified Interlogix's alarms as compliant with UL and NFPA standards, and it continues to certify Interlogix's alarms as compliant.  Except as expressly admitted the allegations in paragraph 28 are denied.

29.    Despite these false representations, the single data-bus "combination listed" control unit(s) such as the Interlogix Concord III and IV control panels that were purchased by Plaintiff and installed in his home contains the Alarm System Defect and thus were both non-conforming and does not and/or never complied with NFPA 72, UL 985 and UL 1023 respectively.

**RESPONSE:**

Carrier denies the allegations in paragraph 29.

30.    In August 2021, when his alarm system was upgraded with a new wireless radio alarm transmitter, Plaintiff first learned that the Interlogix Concord IV Control Unit that was installed in his home contained the Alarm System Defect and was non-conforming.

**RESPONSE:**

Carrier denies the allegations in paragraph 30.

31.    Had Plaintiff known that the Interlogix Concord IV Control Unit that was installed in his home contained the Alarm System Defect, he would not have purchased it.

**RESPONSE:**

Carrier lacks sufficient information about the allegations in paragraph 31 and therefore denies them.

## JURISDICTION AND VENUE

32.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2), as the Class contains more than 100 members, at least one of whom maintains citizenship in a state diverse from Defendants and seeks in the aggregate more than Five Million Dollars ($5,000,000.00), exclusive of costs and interest. This Court also has personal jurisdiction over the parties because Defendants conduct substantial business in New Jersey, and all Defendants have had systematic and continuous contacts with New Jersey and has agents and representatives that can be found in this State.

**RESPONSE:**

Carrier states that the allegations in paragraph 32 contain legal conclusions to which no response is required.

33.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Plaintiff is a citizen of this judicial district, a substantial part of the events giving rise to the claims set forth herein occurred and emanated from this district, and all Defendants conduct has injured members of the Class residing in this district. Accordingly, this Court has jurisdiction over this action, and venue is proper in this judicial district.

**RESPONSE:**

Carrier states that the allegations in paragraph 33 contain legal conclusions to which no response is required.

## TOLLING OF STATUTE OF LIMITATIONS

34.    Any applicable statute(s) of limitations has been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein. Despite their due diligence, Plaintiff and the other members of the Class could not have reasonably discovered the Alarm System Defect and Defendants have not only concealed the Alarm System Defect, but they failed to timely effectuate the necessary repairs.

**RESPONSE:**

Carrier states that the allegations in paragraph 34 contain legal conclusions to which no response is required.

35.    Defendants were and remain under a continuing duty to disclose to Plaintiff and the other members of the Class the true character, quality, and nature of the Alarm System Defect, that the Alarm System Defect poses serious life safety concerns and unreasonable risks to all occupants of the home, and both eliminates the "alarm system" life safety benefits to the Plaintiff and diminishes the value of the Alarm System to Plaintiff and the Class. As a result of the active

concealment by Defendants, all statutes of limitations otherwise applicable to the allegations herein have been tolled.

**RESPONSE:**

Carrier states that the allegations in paragraph 35 contain legal conclusions to which no response is required.

36.    Moreover, because the Alarm System Defect could not be detected due to Defendants' purposefully fraudulent concealment, Plaintiff and the Class were not reasonably able to discover the Alarm System Defect until long after purchasing the Defendants Combination Listed Burglar and Fire Alarm Control Unit, despite their exercise of due diligence. Thus, the discovery rule is applicable to the claims asserted by Plaintiff and the Class.

**RESPONSE:**

Carrier states that the allegations in paragraph 36 contain legal conclusions to which no response is required.

37.    Any applicable statute of limitation has therefore been tolled by Defendants' knowing, active concealment and denial of the facts alleged herein. Defendants are estopped from relying on any statutes of limitation because of its concealment of the Alarm System Defect.

**RESPONSE:**

Carrier states that the allegations in paragraph 37 contain legal conclusions to which no response is required.

## FACTUAL BACKGROUND

### The Reasonable And Legitimate Expectations Of Plaintiff And The Members Of The Putative Class

38.    Consumers purchasing Alarm Systems reasonably and legitimately expect that they properly and safely function and operate for years, particularly in the event of an unpredictable fire emergency happening in their home.

**RESPONSE:**

Carrier denies the allegations in paragraph 38.

39.    In purchasing an Alarm System, Plaintiff and the other members of the Class reasonably and legitimately expected the Alarm System to be reliable, and to operate in accordance with all applicable codes and standards – including immediately sounding an audible fire alarm

inside the home so that its inhabitants would be immediately warned of a fire emergency, and, as a result, be able to escape from the home before the premises become untenable.

**RESPONSE:**

Carrier denies the allegations in paragraph 39.

40.    In purchasing the Alarm System, Plaintiff and the other members of the Class reasonably and legitimately expected that the Alarm System would be free from the Alarm System Defect(s).

**RESPONSE:**

Carrier denies the allegations in paragraph 40.

41.    The existence of the Alarm System Defect(s) is a fact that would be considered material to reasonable consumers deciding whether or not to purchase this Alarm System equipment.

**RESPONSE:**

Carrier states that the allegations in paragraph 41 contain legal conclusions to which no

response is required.

42.    Customers like Plaintiff and the other members of the Class, reasonably and legitimately expect and assume that an Alarm System will function in its intended manner, and will not be subject to catastrophic failure in the event of a fire, which is the very thing that the combination listed control unit is supposed to be designed to detect, and protect the Plaintiffs against, so that it can warn all occupants in the home of a fire emergency. Plaintiff and the other members of the Class also reasonably and legitimately expect and assume that Defendants will not sell Alarm Systems with a known defect, will disclose any such Defects to consumers when they learn of them, and take all steps necessary to remedy any defect in a manner that does not cause dangers, an increase in the risk of serious personal injury and/or death and additional cost to consumers.

**RESPONSE:**

Carrier denies the allegations in paragraph 42.

43.    It was reasonable and legitimate for Plaintiff and the other members of the Class to expect Defendants not to conceal serious defects and non-conformities from them – such as the Alarm System Defect described herein, and to deny the existence of these defects for years after becoming aware of the problems.

**RESPONSE:**

Carrier denies the allegations in paragraph 43.

44.     Had Plaintiff and other members of the Class known about the Alarm System Defect while they were in the market for purchasing an Alarm System, they would not have purchased this Alarm System due to the increased risk of its instantaneous failure during a fire, foreseeably resulting in loss of property, serious personal injury and/or death.

**RESPONSE:**

Carrier denies the allegations and characterizations in paragraph 44.

### The Alarm System Defect and Defendant's Awareness of the Defect

### NFPA 72- National Fire Alarm Code and NFPA 72- National Fire Alarm and Signaling Code

45.     The National Fire Protection Association (NFPA) has indicated that 60% of residential fire deaths occur when smoke detection is not present or disabled. See Ahrens, M. Smoke Alarms in US Home Fires. NFPA Research Report. 2021. Thus, many homeowners across the country install fire alarm systems to alert them to a potential fire in their homes which could ultimately save their lives. Most of these home systems contain combination listed burglar and fire alarm control units.

**RESPONSE:**

Carrier states that the allegations in paragraph 45 purport to quote, describe, or characterize

a written document, the terms of which speak for themselves, and therefore no response is required.

Except as expressly admitted the allegations in paragraph 45 are denied.

46.     All household combination listed burglar and fire alarm system control units contain a single data-bus circuit. The data-bus circuit consists of four wires that are required to be terminated onto the systems circuit board. Two of the wires consist of the data side of the data-bus circuit, and the other two wires are for the (+) and (-) 12 volts of DC power that is needed to operate the data bus. In order for the alarm system to function, the data-bus terminals in the control units are wired to alarm system equipment that is installed throughout the home or business. This alarm system equipment includes but is not limited to remote system keypads, wireless radio receivers, wireless radio alarm transmitters and zone expansion modules. A diagram of the single data-bus combination-listed burglar and fire alarm control unit is attached hereto as **Exhibit B.**

**RESPONSE:**

Carrier states that the allegations in paragraph 46 purport to quote, describe, or characterize a written document, the terms of which speak for themselves, and therefore no response is required. Except as expressly admitted the allegations in paragraph 46 are denied.

47.     Combination Listed Household Burglar and Fire Alarm System Control Units are governed by UL Standards – Underwriters Laboratories, Inc – specifically UL-1023 Household Burglar-Alarm System Units and UL-985, Standard for Household Fire Warning System Units as well as NFPA 72 Standards, specifically NFPA 72,® National Fire Alarm Code and/or NFPA 72 National Fire Alarm and Signaling Code. NFPA 72 is recognized as the most authoritative standard for fire alarm systems nationwide. It is adopted by reference in most, if not all, model building codes and some version of NFPA 72® is adopted in some manner in every state in the nation (NFPA Codefinder, 2022).

**RESPONSE:**

Carrier states that the allegations in paragraph 47 purport to quote, describe, or characterize a written document, the terms of which speak for themselves, and therefore no response is required. Carrier further states that UL certifies Combination Listed Household Burglar and Fire Alarm System Control Units according to UL's standards.  Except as expressly admitted the allegations in paragraph 47 are denied.

48.     NFPA 72®, National Fire Alarm Code covers the application, installation, location, performance, and maintenance of fire alarm systems and their components. NFPA 72®, National Fire Alarm and Signaling Code provides the latest safety provisions to meet society's changing fire detection, signaling, and emergency communications demands. In addition to the core focus on fire alarm systems, the Code includes requirements for mass notification systems used for weather emergencies, terrorist events, biological, chemical, and nuclear emergencies, and other threats.

**RESPONSE:**

Carrier states that the allegations in paragraph 48 purport to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. Except as expressly admitted the allegations in paragraph 48 are denied.

49.     Alarm equipment manufacturers have a duty to comply with UL Standards and NFPA 72 Standards for Household Occupancies. Both UL Standards and NFPA 72 are adopted

by most Authorities Having Jurisdiction across the country and NFPA 72 is considered both an authoritative treatise and statutory duty in most jurisdictions.

**RESPONSE:**

Carrier states that UL's standards govern combination alarm systems, and UL certified that Carrier's combination alarm systems complied with UL and NFPA standards.  Except as expressly admitted the allegations in paragraph 49 are denied.

50.    Section 29.10.7.5 of the NFPA 72 Standard states that "faults in other systems (such as a burglar alarm system) or components, shall not affect the operation of the fire alarm system." Notably, the word "shall" in NFPA 72 has always constituted a mandatory requirement.

**RESPONSE:**

Carrier states that the allegations in paragraph 50 purport to quote, describe, or characterize a written document, the terms of which speak for themselves, and therefore no response is required. Except as expressly admitted the allegations in paragraph 50 are denied.

51.    Section 29.10.7.6 then states:

> Where common wiring is employed for a combination system, the equipment for other than the fire and carbon monoxide alarm system shall be connected to the common wiring of the system so that short circuits, open circuits, grounds, or any fault in this equipment or interconnection between this equipment and the fire and carbon monoxide alarm system wiring does not interfere with the supervision of the fire and carbon monoxide alarm system or prevent alarm or trouble signal operation.

**RESPONSE:**

Carrier states that the allegations in paragraph 51 purport to quote, describe, or characterize a written document, the terms of which speak for themselves, and therefore no response is required.

52.    These crucial requirements have been in NFPA 72 Standards since 1999. A matrix summarizing the section numbers of the various editions of the NFPA 72 over the years since 2002, where the requirements in the current section of 29.10.7.6 is/was located, is attached hereto as **Exhibit C**.

**RESPONSE:**

Carrier states that the allegations in paragraph 52 purport to quote, describe, or characterize

written documents, the terms of which speak for themselves, and therefore no response is required.

**Underwriters Laboratories, Inc. (UL) Standards**

53.    "Since 1894, UL has conducted rigorous independent research and developed safety standards to improve living and working conditions throughout the world..." They "publish consensus standards that guide the safety, performance, and sustainability of new products and evolving technologies and services delivering solutions that range from household appliances to smoke alarms, from batteries and building materials to cybersecurity and autonomous vehicles." See https://ul.org/about.

**RESPONSE:**

Carrier states that the allegations in paragraph 53 purport to quote, describe, or characterize

a written document, the terms of which speak for themselves, and therefore no response is required.

54.    Defendants submitted their Combination Control Unit to UL to have it tested for compliance with applicable UL Standard 1023, UL Standard 985, and NFPA 72. However, the Defendants knew or were required to know that its product was non-conforming before it submitted its equipment to UL.

**RESPONSE:**

Carrier states that its Combination Control Unit was tested by UL for compliance with

applicable UL Standard 1023, UL Standard 985 and NFPA 72. Except as expressly admitted the

allegations in paragraph 54 are denied.

55.    UL 985 describes the Standard for Household Fire Warning System Units.

**RESPONSE:**

Carrier states that the allegations in paragraph 55 purport to quote, describe, or characterize

a written document, the terms of which speak for themselves, and therefore no response is required.

56.    UL 1023 describes the Standard for Household Burglar Alarm System Units, including the use of combination listed fire-burglar alarm system control units.

16

**RESPONSE:**

Carrier states that the allegations in paragraph 56 purport to quote, describe, or characterize

a written document, the terms of which speak for themselves, and therefore no response is required.

57.    Alarm equipment manufacturers whose equipment is listed to UL 985 are also required to comply with NFPA 72 Standards.

**RESPONSE:**

Carrier states that the allegations in paragraph 57 purport to quote, describe, or characterize

a written document, the terms of which speak for themselves, and therefore no response is required.

58.    UL 985, Household Fire Warning System Units, 5th Edition published 2000, states:

> 1.4 These requirements also apply to the use of combination systems, such as a combination fire-burglar alarm system control unit, which uses circuit wiring common to both systems. When common wiring is used for combination systems, it shall be connected in such a manner that internal fault conditions (shorts, opens, grounds) in the nonfire alarm (burglary) system circuit wiring, or faults between the fire and nonfire alarm system circuits, will not interfere with the supervision of the fire alarm system or prevent intended alarm signal transmission.

**RESPONSE:**

Carrier states that the allegations in paragraph 58 purport to quote, describe, or characterize

a written document, the terms of which speak for themselves, and therefore no response is required.

59.    Additionally, from 2000 to 2015, the following summarizes the requirements in the 5th Edition of UL 985:

> 41.4 An open or ground fault in any circuit extending from a household control unit, other than the initiating device circuit, shall not affect the operation of the control unit except for the loss of the function extending from that circuit.

> 41.6 A fault condition, open, ground, or short of other than a fire alarm circuit of a combination control unit shall not affect the fire-alarm signaling.

**RESPONSE:**

Carrier states that the allegations in paragraph 59 purport to quote, describe, or characterize

a written document, the terms of which speak for themselves, and therefore no response is required.

60.    The 5th Edition of UL-985- Household Fire Warning System Units at Section 41.4 has been incorporated into the 6th edition of UL-985 standards at section 44.2.3 to present day. The 6th Edition of UL-985 was published in 2015 and had its effective date in November of 2019. Notably, the 6th Edition of UL 985 sets forth more stringent requirements as follows:

> Section 41.3.1.3 – Short circuit or open circuit single faults in the non-fire equipment or in the wiring between the non-fire equipment and the fire alarm system shall not impede or impair the monitoring for integrity of the fire alarm system, nor impede or impair any fire alarm signal transmissions or operations.

> Section 41.3.1.6 – The required operation of the fire alarm equipment shall not be impaired by any failure of the non fire alarm equipment hardware, software or circuits, or by any maintenance procedure, including removal or replacement of defective equipment or powering down of the non-fire equipment.

**RESPONSE:**

Carrier states that the allegations in paragraph 60 purport to quote, describe, or characterize

written documents, the terms of which speak for themselves, and therefore no response is required.

61.    UL 1023, Standard For Household Burglar-Alarm System Units 6th Edition published 2015 (Nov. 2019 effective date) states, in pertinent part that:

> Section 1.3 – These requirements also apply to the use of combination systems, such as a combination fire-burglar-alarm system control unit. A combination system is connected in such a manner that fault conditions (shorts, opens, grounds) in the burglar-alarm system circuit wiring, or interconnections between the fire and burglar-alarm system circuits, will not interfere with the supervision of the fire alarm system or will not prevent intended alarm signal operation.

> Section 1.4 – A combination household fire and burglar alarm system shall also comply with the Standard for Household Fire Warning System Units, UL 985.

**RESPONSE:**

Carrier states that the allegations in paragraph 61 purport to quote, describe, or characterize

a written document, the terms of which speak for themselves, and therefore no response is required.

62.    The requirements of UL 1023 at sections 1.3 and 1.4 have been part of UL standards since 1996.

**RESPONSE:**

Carrier states that the allegations in paragraph 62 purport to quote, describe, or characterize

a written document, the terms of which speak for themselves, and therefore no response is required.

63.    All of these requirements set forth that UL-985, in combination with UL-1023, and NFPA 72, universally mandate that all household combination listed control units are protected from a short circuit condition being introduced onto to the non-fire alarm equipment and/or its wiring, causing the fire alarm system to being rendered non-functional. Notwithstanding, the Defendants dangerous and non-conforming combination listed control units, catastrophically shut down, as a result of the introduction of a short circuit condition as elaborated to above causing this failure, since the Defendants equipment violates the minimum requirements of UL and NFPA 72 Standards and it is strictly prohibited.

**RESPONSE:**

Carrier states that the allegations in paragraph 63 purport to quote, describe, or characterize

written documents, the terms of which speak for themselves, and therefore no response is required.

Except as expressly admitted the allegations in paragraph 63 are denied.

64.    The parallel hardwired connection requirements on the circuit board of the Defendants combination listed control unit requires that the four (4) conductor single data-bus circuit(s) be terminated in parallel, with all of the other devices that are also required to be connected in parallel to the data-bus circuit for functionality, such as wireless receivers, dialer capture and platform wireless radio alarm transmitters, zone expansion modules, and input/output modules.

**RESPONSE:**

Carrier states that the allegations in paragraph 64 purport to quote, describe, or characterize

written documents, the terms of which speak for themselves, and therefore no response is required.

65.    On the other side of the technical spectrum, the Auxiliary DC power output circuit terminals of the control unit, have been specifically designed by the Defendants to require both the

Auxiliary DC power output, and the DC power that is required for the data-bus circuit to reside (be terminated) on the very same positive (+) and negative (-) terminals of the control units circuit board. Likewise, the auxiliary DC power that is required for burglar alarm intrusion detection devices, such as audio glass break detectors and motion detectors are also required to connect in parallel to these terminals.

**RESPONSE:**

Carrier states that the allegations in paragraph 65 purport to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required.

66.    Accordingly, a short circuit condition being introduced onto the DC power wiring that is used to operate burglar alarm audio glass break detectors and motion detectors, will instantly shut down the Defendants control unit.

**RESPONSE:**

Carrier denies the allegations in paragraph 66.

67.    Therefore, once any portion of the data-bus circuit equipment or wiring contains a short circuit condition, it will instantly shut down the control panels data-bus circuit and all of the interconnected data-bus connected equipment on the system, causing a catastrophic failure.

**RESPONSE:**

Carrier denies the allegations in paragraph 67.

68.    The list of equipment which is required to reside (in parallel) on the single data-bus violates UL Standards- UL-1023, UL-985 and NFPA 72.

**RESPONSE:**

Carrier denies the allegations in paragraph 68.

69.    In sum, the auxiliary DC power output circuit and/or its interconnected wiring and/or its DC powered devices that are installed throughout and within the household occupancy using the same (+) and (-) power terminals that the data-bus circuit utilizes significantly expands the control units danger and vulnerabilities to catastrophic failure, once a fire condition introduces a short circuit condition onto the data-bus wiring and/or onto any of the equipment that is required to connect to the single data-bus circuit.

**RESPONSE:**

Carrier denies the allegations in paragraph 69.

70.    Fundamentally, once the single data-bus circuit wiring leaves the control unit housing it exposes the entire alarm system to catastrophic and instantaneous failure based upon this data-bus circuit wiring and/or when any of the equipment that is required to be connected to the data bus is introduced to a short circuit condition by fire, in any location where the data-bus circuit wiring and/or its equipment is installed throughout the household occupancy.

**RESPONSE:**

Carrier denies the allegations in paragraph 70.

71.    Based on the required design characteristics of the Defendants' equipment, it creates foreseeably dangerous vulnerabilities to the overall functionality and reliability of the alarm systems control unit and to all occupants of the home who rely on the system to provide them with intrusion detection and early warning fire and life safety protection.

**RESPONSE:**

Carrier denies the allegations in paragraph 71.

72.    In fact, on September 17, 2021, Jeffrey D. Zwirn of IDS Research and Development, Inc., a nationally recognized alarm and security expert with over 45 years of specialized education, skill, knowledge, training, experience and peer reviewed credentials in the alarm and security industry, emailed the National Fire Protection Association (NFPA) asking them to confirm that if "a fault in the burglar alarm system will affect the operation of the fire alarm system, and if equipment for other than the fire alarm system, being the burglar alarm system, that is connected to the common wiring of the system (the single data-bus) will interfere with the supervision of the fire alarm system and/or it will prevent alarm or trouble signal operation because once a short circuit condition is introduced onto the auxiliary power output of the system the zone expansion module(s) referenced above is no longer able to function since it instantly loses DC power...would you agree that the combination-listed control unit does not comply with NFPA 72 Standards."

**RESPONSE:**

Carrier states that the allegations in paragraph 72 purport to quote, describe, or characterize

a written document, the terms of which speak for themselves, and therefore no response is required.

73.    On September 21, 2021, Christopher D. Coache, Senior Electrical Engineer of the NFPA responded stating, "[y]ou are correct that a failure in another system connected to the fire alarm system cannot affect the function of the fire alarm system. Also, the signals from another system such as a burglar system cannot take priority over the life safety signals of the fire alarm system." A copy of the email exchange is attached hereto as **Exhibit D**.

21

**RESPONSE:**

Carrier states that paragraph 73 purports to quote, describe, or characterize a written

document, the terms of which speak for themselves, and therefore no response is required.

74.     The Alarm System Defect described causes a combination listed burglar and fire alarm system control unit the exact situation that NFPA 72 standards and the Senior Electrical Engineer of the NFPA states cannot occur – a failure in the fire alarm system due to the failure in another part of the system is strictly prohibited.

**RESPONSE:**

Carrier denies the allegations in paragraph 74.

75.     In fact, the Alarm System Defect was analyzed and confirmed by Combustion Science & Engineering, Inc. ("CSE"), a company that for more than twenty years has been dedicated to the study, advancement, and application of combustion and fire sciences, conducted an independent evaluation of the Alarm System Defect.

**RESPONSE:**

Carrier denies the allegations in paragraph 75.

76.     CSE confirmed the Alarm System Defect of combination listed single data-bus residential burglar and fire alarm system control units, such as those manufactured or sold by Defendants under the brand names GE Security and Interlogix, and their noncompliance to the minimum standards required by both UL and NFPA 72. Indeed, in a July 5, 2022 report, CSE concluded:

> In sum, CSE's review of the codes and standards indicates that these documents clearly indicate that an electrical short circuit on non-fire equipment, including the data-bus and its wiring, shall not render a combination-listed fire/security system control unit non-functional. This code requirement applies for both household and commercial combination-listed systems and dates back to at least the early 2000s. UL's implementation and interpretation of these sections of their standards and NFPA 72® have allowed this hypothesized and dangerous mode of failure to exist, despite their testing and ergo, combination-listed control units have become listed despite nonconformities. Failure of combination-listed control units to meet UL and NFPA standards violates the adopted fire code in each state of the United States and needlessly puts occupants inside an occupancy at an increased risk of serious personal injury and/or death during a life safety emergency.
>
> ...

> As has been demonstrated in CSE's analysis and the experiments conducted, there is both scientific certainty and validity to Mr. Zwirn's hypothesized mode of failure for combination-listed single data-bus fire and burglar alarm control units, and they do not conform to UL and NFPA standards. Given that, from a Fire Protection Engineering perspective, this equipment is nonconforming, and it is dangerous to all persons who rely on it for mission critical functional and reliable life safety.

See Stephen M. Olenick, Michael S. Klassen & Zachary Switzer, Analysis of the Hypothesized Data-Bus Failure Mode of Combination-Listed Fire/Security Control Units, at 24, 42 (July 5, 2022), attached hereto as **Exhibit E**.

**RESPONSE:**

Carrier states that the allegations in paragraph 76 purport to quote, describe, or characterize

a written document, the terms of which speak for themselves, and therefore no response is required.

77.    Plaintiff alleges that at all relevant times, specifically at the time he purchased the Alarm System, Defendants knew or were required to know that they had manufactured a non-conforming combination listed control unit with the Alarm System Defect that failed to meet the applicable and minimum UL and NFPA Standards. Defendants were under a duty to disclose the Alarm System Defects based upon its exclusive knowledge of and/or concealed material information regarding the Alarm System Defect from consumers like the Plaintiff. Defendants failed to disclose the Alarm System Defect to Plaintiff, other Class members, or the public at any time or place or in any manner such that it could (and would) have affected Plaintiff's and other Class members' pre-sale decision to purchase the Alarm Systems.

**RESPONSE:**

Carrier denies the allegations in paragraph 77.

## CLASS ACTION ALLEGATIONS

78.    Plaintiff brings this action on behalf of himself, and all other persons similarly situated, pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and subclass (collectively, the "Classes"):

**The Nationwide Class**

All persons or entities in the United States who own, or have owned, an Alarm System.

**The New Jersey Subclass**

All persons or entities in New Jersey who own, or have owned, an Alarm System.

**Excluded from all Classes**

Excluded from the Classes are: (a) Defendants, any entity in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns, and successors that purchased the Alarm Systems; (b) the judge to whom this case is assigned and any member of the judge's immediate family; and (c) individuals with claims for personal injury, wrongful death and/or emotional distress.

**RESPONSE:**

Carrier states that the allegations in paragraph 78 contain a request for legal relief to which

no response is required.

79.     Numerosity/Impracticability of Joinder: The members of the Class are so numerous that joinder of all members would be impracticable. Based upon knowledge and belief approximately 15 million Class Alarm Systems were purchased by Class members.

**RESPONSE:**

Carrier states that the allegations in paragraph 79 contain legal conclusions to which no

response is required.

80.     Commonality and Predominance: There are common questions of law and fact that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, include, but are not limited to, the following:

a.      Whether the Alarm Systems have a design defect.

b.      Whether the Defendants properly tested its combination listed control unit to UL-1023, UL-985 and NFPA 72 Standards before it submitted its product to Underwriters Laboratories, Inc. for listing.

c.      Whether the Defendants identified that its combination listed control unit was not conforming to UL and NFPA 72 Standards before being submitted to Underwriters Laboratories, Inc. for listing.

d.      Whether the Defendants received notice of its combination listed control unit failing to comply with UL and NFPA 72 Standards by any Nationally Recognized Testing Laboratory (NRTL) such as Underwriters Laboratories, Inc. but refused and/or failed to correct this control units non-conformities.

e.      Whether Defendants knew, or reasonably should have known, that the Alarm Systems were defectively designed, manufactured, marketed, distributed, advertised, warranted, sold, and serviced.

f.      Whether Defendants knew or reasonably should have known of the Defects before it sold the Alarm Systems to Plaintiffs and the other members of the Class.

g.      Whether Defendants actively and intentionally concealed, failed to disclose and/or omitted material information in its marketing, advertising, and sale of the Alarm Systems.

h.      Whether Plaintiff and the other members of the Class are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction.

i.      Whether Defendants violated New Jersey's Consumer Fraud Act, and the consumer protection laws of the states involving class members.

j.      Whether Defendants' conduct violates warranty laws, and other laws as asserted herein.

k.      Whether, as a result of Defendants' omissions and concealments of material facts related to the Alarm System Defects, Plaintiff and the other members of the Class have suffered ascertainable losses, and whether Plaintiff and the other members of the Class are entitled to monetary damages and/or other remedies, and if so the nature of any such relief; and/or

l.      Whether Defendants' acts and/or omissions entitle Plaintiff and the other members of the Class to treble damages, attorneys' fees, prejudgment interest and cost of suit.

**RESPONSE:**

Carrier states that the allegations in paragraph 80 contain legal conclusions to which no response is required.

81.     Typicality: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and the other members of the Class have suffered similar injury by the same wrongful practices by Defendants. The claims of Plaintiff and the other members of the Class all arise from the same wrongful practices and course of conduct and are based on the same legal and remedial theories.

**RESPONSE:**

Carrier states that the allegations in paragraph 81 contain legal conclusions to which no response is required.

82.     Adequacy Of Representation: Plaintiff will fully and adequately assert and protect the interests of the members of the Class and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiff nor his attorneys have any interests that are contrary to or conflicting with the members of the Class.

**RESPONSE:**

Carrier states that the allegations in paragraph 82 contain legal conclusions to which no response is required.

83.    <u>Superiority of Class Action And Impracticability of Individual Actions</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is not economically feasible and is procedurally impracticable. While the aggregate damages sustained by the members of the Class are in the millions of dollars, and are no less than five million dollars, upon information and belief, the individual damages incurred by each member of the Class resulting from Defendant's wrongful course of conduct are too small to warrant the expense of individual suits. It is estimated that the part necessary to effectuate each repair would cost only around $100 and installation of the part would only require one service call for 15-20 minutes and around $75. The likelihood of individual members of the Class prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Defendants have acted or refused to act on grounds generally applicable to the members of the Class and, as such, final injunctive relief, or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

**RESPONSE:**

Carrier states that the allegations in paragraph 83 contains legal conclusions to which no response is required.

**CLAIMS FOR RELIEF**

**FIRST COUNT**

**(Violations of New Jersey's Consumer Fraud Act,
N.J.S.A. § 56:8-2, et seq.)**

84.    Plaintiff on behalf of himself and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

**RESPONSE:**

Carrier incorporates by reference the responses to all allegations set forth in the preceding paragraphs, as if fully set forth herein.

85.    This claim is brought on behalf of the Nationwide Class and New Jersey Subclass.

**RESPONSE:**

Carrier denies the allegations in paragraph 85.

86.    Defendants have engaged in deceptive, unconscionable, unfair, fraudulent and/or misleading commercial practices in the advertising, promoting, marketing, distributing and selling of the Class Alarm Systems it knew to be defective.

**RESPONSE:**

Carrier denies the allegations in paragraph 86.

87.    Defendants intentionally omitted the fact that its goods, merchandise and/or services did not have characteristics, uses, benefits, or quantities that were advertised and promoted, and failed to disclose that its goods, merchandise and/or services were not of a particular standard, quality or grade.

**RESPONSE:**

Carrier denies the allegations in paragraph 87.

88.    Defendants had a duty to Plaintiff and the Nationwide Class and New Jersey Subclass to disclose the defective nature of the Class Alarm Systems and the Alarm System Defects because:

a.    Defendants were in a superior position to know the true state of facts about the Alarm System Defects and repair costs in the Alarm Systems.

b.    Plaintiff and the Nationwide Class and New Jersey Subclass could not reasonably have been expected to learn or discover that the Alarm Systems had dangerous safety defects until after manifestation of the Alarm System Defects; and

c.    Defendants knew that Plaintiff and the Nationwide Class and New Jersey Subclass could not reasonably have been expected to learn or discover the Alarm System Defects and the associated corrective action repair costs until the manifestation of the Alarm System Defects.

**RESPONSE:**

Carrier denies the allegations in paragraph 88.

89.     In failing to disclose the Alarm System Defects and the associated risks and repair costs, Defendants undertook active and ongoing steps to intentionally conceal the Alarm System Defects, and has concealed, failed to disclose and/or omitted material facts from Plaintiff and other members of the Nationwide Class and New Jersey Subclass with respect to the Alarm System Defects in the Alarm Systems.

**RESPONSE:**

Carrier denies the allegations in paragraph 89.

90.     Defendants intended that Plaintiff and the other members of the Nationwide Class and New Jersey Subclass would rely upon its acts of concealment and/or omission by purchasing the dangerous, defective and non-conforming Alarm Systems at full price rather than purchasing other alarm systems without the Alarm System Defects.

**RESPONSE:**

Carrier denies the allegations in paragraph 90.

91.     Defendants intended that Plaintiff and the other members of the Nationwide Class and New Jersey Subclass would rely upon its acts of concealment and/or omission to avoid replacing the defective parts during the warranty period.

**RESPONSE:**

Carrier denies the allegations in paragraph 91.

92.     Defendants' omissions were objectively deceptive and had the capacity to deceive reasonable consumers under the circumstances. The fact that Defendants knew about and failed to disclose that the Alarm System Defects in the Alarm Systems was a material fact that a reasonable and/or unsophisticated consumer would attach importance to at the time of purchase. This fact would influence a reasonable consumer's choice of action during the purchase of an alarm system.

**RESPONSE:**

Carrier states that the allegations in paragraph 92 contain legal conclusions to which no

response is required.

93.     Such practices contravene the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> 56:8-1, et seq.

**RESPONSE:**

Carrier states that the allegations in paragraph 93 contain legal conclusions to which no response is required.

94.     As a direct and proximate result of Defendants' violations of the NJCFA, Plaintiff and the other members of the Nationwide Class and New Jersey Subclass have suffered ascertainable losses, which include but are not limited to, the amount they paid for the Alarm System or the cost to repair the Alarm System such that it operates in accordance with all applicable codes and regulations described in this Complaint. Further, based on the intentionally dishonest nature of Defendants' conduct, which was directed at the Class and Subclass, Defendants should also be held liable to the Class and Subclass for punitive damages in the form of treble damages and Attorneys' fees in accordance with the NJCFA.

**RESPONSE:**

Carrier states that the allegations in paragraph 94 contain legal conclusions to which no response is required.

## SECOND COUNT

### (Common Law Fraud)

95.     Plaintiff, on behalf of himself and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

**RESPONSE:**

Carrier incorporates by reference the responses to all allegations set forth in the preceding paragraphs, as if fully set forth herein.

96.     The above-described conduct and actions constitute common law fraud by way of misrepresentations, concealment and omissions of material facts made by Defendants in inducing Plaintiff and the Class and Subclass to purchase Alarm Systems with the Alarm System Defects.

**RESPONSE:**

Carrier states that the allegations in paragraph 96 contain legal conclusions to which no response is required.

97.     In failing to disclose the Alarm System Defects and the associated risks and repair costs, Defendants undertook active and ongoing steps to intentionally conceal the Alarm System Defects, and has concealed, failed to disclose and/or omitted material facts from Plaintiff and other

members of the Nationwide Class and New Jersey Subclass with respect to the Alarm System Defects in the Alarm Systems.

**RESPONSE:**

Carrier denies the allegations in paragraph 97.

98.     Defendants sold Alarm Systems which they knew, or reasonably should have known, contained the Alarm System Defects and required repair or replacement.

**RESPONSE:**

Carrier denies the allegations in paragraph 98.

99.     Defendants made material misrepresentations by advertising that the Alarm Systems met UL and NFPA standards for household combination listed burglar and fire alarm system control units when in fact they did not. Indeed, the Defendants' Alarm System is/was manufactured in a such a way that if there is a fault or short circuit condition from fire attacking the data-bus circuit wiring and/or any of the equipment that is required to be connected to the control unit's single data-bus circuit of the control unit, it renders the control panel non-functional. If the data-bus circuit wiring is faulted and/or shorted anywhere it is installed throughout the home by fire, the control panel is instantly rendered non-functional and thus the fire alarm systems smoke detectors are rendered non-functional. Consequently, this renders them non-conforming to the minimum standards set by both the UL and NFPA 72 Standards, both of which Defendants represent their Alarm Systems comply with.

**RESPONSE:**

Carrier states that the allegations in paragraph 99 contain legal conclusions to which no

response is required.

100.     Defendants intended that the Plaintiffs and the other members of the Class and Subclass rely upon the above-described uniform misrepresentations, concealment and omissions.

**RESPONSE:**

Carrier denies the allegations in paragraph 100.

101.     Plaintiffs and other Class and Subclass Members justifiably relied upon Defendants' misrepresentations, concealment and omissions to their damage and detriment.

**RESPONSE:**

Carrier states that the allegations in paragraph 101 contain legal conclusions to which no

response is required.

102.    Plaintiffs and the Class and Subclass suffered the damages described in this complaint as a proximate result thereof.

**RESPONSE:**

Carrier states that the allegations in paragraph 102 contain legal conclusions to which no response is required.

## THIRD COUNT

### (Negligent Misrepresentation)

103.    Plaintiff, on behalf of himself and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

104.    Defendants made material misrepresentations as described in paragraphs 20 through 75 above by advertising that the Alarm Systems met the UL and NFPA standards for household combination listed burglar and fire alarm systems when in fact they did not. Defendants knew, or should have known, that these statements were inaccurate.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

105.    Defendants intended their material misstatements to induce Plaintiff and the Class and Subclass to rely upon them, and Defendants expected Plaintiff and the Class and Subclass to rely upon them.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order

granting in part Carrier's motion to dismiss. *See* Order, *Kaplan v. General Electric Company*, No.

2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

106.    Plaintiff and the Class and Subclass reasonably relied on the misstatements when
they purchased the Alarm Systems.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order

granting in part Carrier's motion to dismiss. *See* Order, *Kaplan v. General Electric Company*, No.

2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

107.    Plaintiffs and the Class and Subclass suffered the damages described in this
complaint as a proximate result thereof.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order

granting in part Carrier's motion to dismiss. *See* Order, *Kaplan v. General Electric Company*, No.

2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

## FOURTH COUNT

### (Breach of Express Warranty)

108.    Plaintiff, on behalf of himself and all others similarly situated, incorporates by
reference the allegations contained in the preceding paragraphs of this Complaint.

**RESPONSE:**

Carrier incorporates by reference the responses to all allegations set forth in the preceding

paragraphs, as if fully set forth herein.

109.    This claim is brought on behalf of the Nationwide Class and New Jersey Subclass.

**RESPONSE:**

Carrier denies the allegations in paragraph 109.

110.    By expressly representing that the Alarm Systems was UL listed and complied with NFPA 72, Defendants created an express warranty that the Alarm Systems would not contain the Alarm System Defect.

**RESPONSE:**

Carrier states that the allegations in paragraph 110 contain legal conclusions to which no response is required.

111.    Defendants breached these warranties by selling Alarm Systems which they knew, or reasonably should have known, contained the Alarm System Defects and required repair or replacement.

**RESPONSE:**

Carrier denies the allegations in paragraph 111.

112.    Plaintiff notified Defendants of the breach within a reasonable time, and/or was not required to do so because affording Defendants a reasonable opportunity to cure its breach of written warranties would have been futile. Defendants also knew of the Alarm System Defects and yet chose to conceal it and to not comply with their warranty obligations.

**RESPONSE:**

Carrier states that the allegations in paragraph 112 contain legal conclusions to which no response is required.

113.    As a direct and proximate result of Defendants' breach of the Alarm Systems' express warranties, Plaintiff and the other members of the Nationwide Class were damaged by, among other things, being forced to expend monies – and will continue to be forced to expend monies – to repair and/or replace their alarm systems and diminution in value of their alarm systems.

**RESPONSE:**

Carrier states that the allegations in paragraph 113 contain legal conclusions to which no response is required.

114.    Plaintiff, and members of the Nationwide Class and New Jersey Subclass have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

**RESPONSE:**

Carrier denies the allegations in paragraph 114.

## FIFTH COUNT

### (Breach of Implied Warranty)

115.    Plaintiff, on behalf of himself and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

116.    This claim is brought on behalf of the Nationwide Class and New Jersey Subclass.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

117.    Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Alarm Systems. Defendants knew, or reasonably should have known, of the specific use for which the Alarm Systems were purchased as represented in its "listing" of their combination control unit to the public, albeit it was false and untrue.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

118.    Defendants provided Plaintiff and the other members of the Nationwide Class and New Jersey Subclass with an implied warranty of merchantability that the Alarm Systems, and any components thereof, are merchantable and fit for the ordinary purposes for which they were sold.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

119.    Defendants impliedly warranted that the Alarm Systems were of merchantable quality and fit for such use. This implied warranty of merchantability included, among other things: (1) a warranty that the Alarm Systems, and the wiring and associated technology for operation were manufactured, supplied, distributed, and sold were safe, complied with the applicable and mandated codes and standards for household burglar and fire alarm control units and that they were reliable for providing fire alarm life safety protection, and would not experience failure from exposure to fire and (ii) a warranty that the Alarm Systems would be fit for their intended use.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

120.    Contrary to the applicable implied warranties of merchantability, the Alarm Systems were not fit for their ordinary and intended purpose of providing Plaintiff and the other members of the Nationwide Class and New Jersey Subclass with reliable fire alarm protection that would not experience failure from its exposure to fire.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

121.    Defendants breached the Alarm Systems' implied warranty of merchantability by selling Plaintiff and the other members of the Nationwide Class and New Jersey Subclass, fire alarm systems and/or components thereof, that are not fit for their ordinary/intended purpose of providing reliable life safety fire alarm protection that would not experience failure from exposure

to fire because, <u>inter alia</u>, the Alarm Systems suffered from the Alarm System Defects at the time of sale.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

## SIXTH COUNT

**(Breach of Written Warranty Under the
Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.)**

122.    Plaintiff, on behalf of himself, and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

123.    This claim is brought on behalf of the Nationwide Class.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

124.    Plaintiff and other members of the Nationwide Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

125.    The Alarm Systems are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

126.    Defendant's express warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

127.    Defendant breached their express warranty by distributing, and selling fire alarm systems which they knew, or reasonably should have known, contained the Alarm System Defects and required repair or replacement within the applicable warranty periods, and/or refused to honor the warranties by providing free repairs and/or replacements during the applicable warranty period or periods.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

128.    Defendants' breach of the express warranty deprived the Plaintiff and the other members of the Nationwide Class the benefits of their bargains.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

129.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order

granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No.

2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

130.     Defendants have been afforded a reasonable opportunity to cure its breach of written warranty.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order

granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No.

2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

131.     As a direct and proximate result of Defendants' breach of written warranty, Plaintiff and other members of the Class sustained damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiff and other members of the Nationwide Class who are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order

granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No.

2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

## **SEVENTH COUNT**

### **(Unjust Enrichment)**

132.     Plaintiff and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

133.    This claim is brought on behalf of the Nationwide Class and New Jersey Subclass.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

134.    The Alarm Systems were defective in that they do not provide reliable fire alarm life safety protection when exposed to fire as they are required to provide pursuant to UL and NFPA Standards.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

135.    The Defendants benefited financially from its breaches of warranty, misrepresentations and fraud as described in this complaint. The Defendants denied legitimate warranty claims and obtained further unwarranted financial gain.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

136.    Plaintiff and the Class members sustained monetary damages as described in this complaint.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order

granting in part Carrier's motion to dismiss. *See* Order, *Kaplan v. General Electric Company*, No.

2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

137.    Allowing the Defendants to retain its monetary enrichment from its wrongful and
unlawful acts would be unjust and inequitable.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order

granting in part Carrier's motion to dismiss. *See* Order, *Kaplan v. General Electric Company*, No.

2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

138.    Plaintiff and the Class and Subclass members request that the Defendants disgorge
its profits from its wrongful and unlawful conduct and that the Court establish a constructive trust
funded by the benefits conferred upon the defendant as a result of its wrongful conduct. Plaintiff
and the Class members should be designated beneficiaries of the trust and obtain restitution for
out-of-pocket expenses caused by the defendant's conduct.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order

granting in part Carrier's motion to dismiss. *See* Order, *Kaplan v. General Electric Company*, No.

2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

<u>**EIGHTH COUNT**</u>

**(Violations of the Truth-in-Consumer Contract, Warranty and Notice Act)**

139.    Plaintiff and proposed class members incorporate by reference all allegations in the
above preceding paragraphs as if set forth fully in this count.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order

granting in part Carrier's motion to dismiss. *See* Order, *Kaplan v. General Electric Company*, No.

2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

140.    This claim is brought on behalf of the New Jersey Subclass.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order

granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No.

2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

141.    Plaintiff and those similarly situated are "consumers" within the meaning of
TCCWNA, as set forth at N.J.S.A. 56:12-15.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order

granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No.

2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

142.    Defendants are sellers within the meaning of TCCWNA, as set forth at N.J.S.A.
56:12-15 and -17.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order

granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No.

2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

143.    TCCWNA, at N.J.S.A. 56:12-15, provides in relevant part that "no seller, creditor,
lender or bailee may offer or enter into any written consumer contract or give or display any notice
which includes any provision that violates a clearly established right of the consumer or
responsibility of the seller, lessor, creditor, lender or bailee as established by State or Federal law
at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is
given or displayed."

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order

granting in part Carrier's motion to dismiss.  *See* Order, *Kaplan v. General Electric Company*, No.

2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

144.    By violating the CFA, and a clearly established legal right of a consumer and/or responsibility of the seller to not engage in any misrepresentations, deception, or unconscionable commercial conduct in connection with consumer sales as detailed in this Complaint, Defendants thereby violated the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 *et seq.*

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss. *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

145.    As the result of Defendants' violations of TCCWNA, Plaintiffs and the Class Members are entitled to statutory damages of not less than $100 each as provided by N.J.S.A. 56:12-17.

**RESPONSE:**

No response is needed to this allegation because the Court dismissed this claim in its order granting in part Carrier's motion to dismiss. *See* Order, *Kaplan v. General Electric Company*, No. 2:22-cv-05296-BRM-ESK (D.N.J. June 30, 2023), ECF No. 34.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself and on behalf of the Nationwide Class, and New Jersey Subclass, prays for judgment against Defendants granting the following relief:

1.    Certification of the proposed Nationwide Class, and New Jersey Subclass and appointing Plaintiff to represent the Classes and Plaintiff's counsel as class counsel;

2.    All recoverable compensatory, statutory, punitive and other damages sustained by Plaintiffs and the other members of the Nationwide Class, and New Jersey Subclass;

3.    Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon;

4.    Actual, treble, and/or statutory damages for injuries suffered by Plaintiff and the other members of the Nationwide Class, and New Jersey Subclass in the maximum amount permitted by applicable law;

5.    Statutory pre-judgment and post-judgment interest on the Class damages;

6.    Injunctive and declaratory relief;

7.    Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

8.    Such other relief as the Court may deem just and proper.

**RESPONSE:**

Carrier states that Plaintiff's prayer for relief states a request for legal relief to which no response is required.  To the extent a response is required, Carrier denies that Plaintiff is entitled to a certification of the Nationwide Class, New Jersey Subclass, appointment to represent the Classes, judgment, damages, restitution, disgorgement, pre or post-judgment interest, injunctive or declaratory relief, attorney's fees, or any other relief he seeks.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action so triable.

**RESPONSE:**

Carrier states that Plaintiff's demand for jury trial contains a request for legal relief to which no response is required.

### AFFIRMATIVE AND OTHER DEFENSES

#### First Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrines of waiver, res judicata, and estoppel.

#### Second Affirmative Defense

Plaintiff's claims are barred in whole or in part by the applicable statutes of limitations.

#### Third Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

#### Fourth Affirmative Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

**Fifth Affirmative Defense**

Plaintiff's complaint fails to join an indispensable party.

**Sixth Affirmative Defense**

Plaintiff lacks standing to bring this lawsuit.

**Seventh Affirmative Defense**

Plaintiff has not sustained any damages, financial loss, or any other injury.

Carrier reserves the right to amend its pleading to add additional or other affirmative defenses or to delete and withdraw affirmative defenses as may become necessary after additional discovery, investigation, or subsequent developments relating to this case and expressly reserves the right to amend this Answer to assert such additional affirmative defenses in the future.

Dated:  September 25, 2023                Respectfully submitted,

                                          /s/ Justin T. Quinn
                                          _____
                                          Justin T. Quinn
                                          ROBINSON MILLER LLC
                                          110 Edison Place, Suite 302
                                          Newark, NJ 07102
                                          Tel.:  (973) 690-5400
                                          Fax:  (973) 466-2761
                                          Email:  jquinn@rwmlegal.com

                                          K. Winn Allen, P.C. (admitted *pro hac vice*)
                                          Devin Anderson (admitted *pro hac vice*)
                                          Mary Elizabeth Miller (admitted *pro hac vice*)
                                          KIRKLAND & ELLIS LLP
                                          1301 Pennsylvania Avenue, N.W.
                                          Washington, DC 20004
                                          Tel.:  (202) 389-5000
                                          Fax:  (202) 389-5200
                                          Email:  winn.allen@kirkland.com
                                                  devin.anderson@kirkland.com
                                                  mary.miller@kirkland.com

                                          *Counsel for Defendants*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Defendants General Electric Company, UTC Fire & Security Americas Corporation, Inc., and Carrier Fire & Security Americas Corporation, by their undersigned counsel, hereby certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated:  September 25, 2023    Respectfully submitted,

           */s/ Justin T. Quinn*

           Justin T. Quinn
           ROBINSON MILLER LLC
           110 Edison Place, Suite 302
           Newark, NJ 07102
           Tel.:  (973) 690-5400
           Fax:  (973) 466-2761
           Email:  jquinn@rwmlegal.com

           K. Winn Allen, P.C. (admitted *pro hac vice*)
           Devin Anderson (admitted *pro hac vice*)
           Mary Elizabeth Miller (admitted *pro hac vice*)
           KIRKLAND & ELLIS LLP
           1301 Pennsylvania Avenue, N.W.
           Washington, DC 20004
           Tel.:  (202) 389-5000
           Fax:  (202) 389-5200
           Email:  winn.allen@kirkland.com
              devin.anderson@kirkland.com
              mary.miller@kirkland.com

           *Counsel for Defendants*