UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMUEL L. KAPLAN, *on behalf of himself and the Putative Class*,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL ELECTRIC COMPANY, *et al.*,<br><br>Defendants. | Case Action No. 2:22-CV-05296 (BRM) (SDA)<br><br>OPINION<br><br>February 21, 2025 |

**STACEY D. ADAMS, United States Magistrate Judge**

This matter comes before the Court on the Motion filed by Stephen Olenick ("Olenick") seeking to quash the third-party subpoena served on him by Defendants General Electric Company ("GE"), United Technologies Corp. ("United Technologies"), UTC Fire & Security Americas Corp., Inc., d/b/a Interlogix, ("UTC"), and Carrier Fire & Security Americas Corp. ("Carrier Fire") (collectively, "Defendants"). (ECF No. 82).[1] Defendants opposed the motion (ECF No. 83), and Olenick filed a reply (ECF No. 86). The Court heard oral argument on November 25, 2024. For the reasons set forth herein, the motion to quash is **GRANTED.**

## BACKGROUND

Plaintiff Samuel L. Kaplan ("Plaintiff") brought this action on behalf of a putative class alleging that Defendants' Interlogix Concord 3 and Concord 4 combination fire and burglar alarm systems (the "alarm systems") suffered from a defect that rendered them non-compliant with

---

[1] After being served with the subpoena, Olenick originally filed his Motion to Quash in the United States District Court for the District of Maryland, where he resides. (*Olenick v. General Electric Co. et al.*, No. 24-MC-442 (D. Md.), ECF No. 1). On October 22, 2024, the District of Maryland referred the Olenick matter to the District of New Jersey (*Id.*, ECF No. 19), where it was assigned Docket No. 24-CV-9984. That matter was then consolidated with the instant matter via Order dated November 8, 2024. (No. 24-CV-9984, ECF No. 75). The motion papers were then refiled under the lead docket number. (ECF Nos. 82, 83, 86).

1

certain industry standards, and that Defendants made material misrepresentations that these alarms systems complied with certain industry standards. (ECF No. 44 ¶¶ 20-75, 104). Plaintiff acknowledges that Defendants' alarm systems were certified under Underwriters Laboratories, Inc.'s UL-985 and UL-1023 standards ("UL standards") and the National Fire Protection Association 72 ("NFPA") standard, but argues that the alarm systems did not, in fact, comply with the standards. (*Id.* ¶¶ 27-29, 54, 99). Plaintiff alleges that Defendants knew or should have known the alarm systems did not comply with the applicable standards before they sold them. (*Id.* ¶ 16).

Olenick is a principal engineer and part owner of Combustion Science & Engineering, Inc. ("CSE"), "a company dedicated to the study, advancement, and application of combustion and fire sciences." (ECF No. 82-5 ¶ 3). Olenick is a self-described "expert in the field of fire science, holding numerous professional degrees and certifications." (ECF No. 82 at 2). He has testified as an expert witness five times and been deposed fourteen times. (ECF No. 82-5 ¶ 4). However, neither Olenick nor CSE has been retained as an expert or consultant by either party in this matter. (*Id.* ¶ 5).

Jeffery D. Zwirn is the President of IDS Research & Development, Inc. (ECF No. 82-2).[2] Unrelated to the instant matter, in 2022, Zwirn retained Olenick and CSE to independently evaluate a potential mode of failure identified by Zwirn in combination-listed burglar and fire alarm control units. (ECF No. 82-2 at 4, 7). Olenick's research related to a particular type of fault or short circuit

---

[2] Defendants claim that Zwirn is a "long-time associate" and "collaborator" of Plaintiff. (ECF No. 83 at 1, 4, 10). The only support Defendants provide for this assertion is a proposal for an alarm system that Zwirn provided to Plaintiff, along with a work order and invoice for monitoring services. (ECF Nos. 83-8, 83-9, 83-10). A company providing alarm services to a client falls far short of rendering the two "associates." That aside, even if true, it does not impact the Court's decision here. Neither Zwirn nor Olenick is a party to this lawsuit. The fact that Zwirn independently retained Olenick to conduct a study of different alarm systems and then shared his results with Plaintiff does not impact Olenick's status as an unretained expert in this case.

that could render an alarm control unit non-functional, regardless of the brand. (ECF No. 82-1 at 4 n.5). In conducting his evaluation, Olenick performed experiments exclusively on a Honeywell Vista unit. (ECF No. 82-5 ¶ 6). He did not examine any GE Security or Interlogix burglar and fire system control units (the alarm systems at issue in the instant matter). (*Id.*). Olenick prepared a report to Zwirn in connection with his engagement (the "Zwirn Report"). (ECF No. 82-2).

Despite the fact that Olenick never tested the units at issue in this case, the Zwirn Report was cited in, and attached to, Plaintiff's Amended Complaint without Olenick's knowledge or permission. (ECF No. 44 ¶¶ 75-76; ECF 82-5 ¶¶ 14-15). Specifically, the Amended Complaint alleged that GE and Interlogix alarm systems suffer from the same defect identified by Olenick in the Zwirn Report. (ECF No. 83 at 3). Olenick was also identified in Plaintiff's Rule 26 initial disclosures as an "individual likely to have discoverable information . . . that [Plaintiff] may use to support its claims or defenses." (ECF No. 83-11 at 1-2).

On September 6, 2024, Defendants served a deposition subpoena on Olenick. (ECF No. 82-4 at 1). The subpoena did not set forth the scope of the testimony sought from Olenick, but Defendants' counsel subsequently informed Olenick that he was being subpoenaed "so that [he] can testify about [his] expert report and the issues in the case, based on [his] knowledge." (ECF No. 82-3). In their Opposition, Defendants further elaborated that they seek Olenick's "knowledge regarding the underlying litigation, his correspondence with UL and NFPA, and his relevant knowledge regarding Zwirn and Zwirn's theories." (ECF No. 83 at 14).

According to Olenick, the only connection between him and the instant matter is Plaintiff's citation to the Zwirn Report in the Amended Complaint. (ECF No. 82-5 ¶¶ 7, 13, 14). Olenick has no personal knowledge of GE Security or Interlogix combination-listed units or any facts relevant to the instant matter. (*Id.* ¶ 13). Accordingly, he filed this motion seeking to quash the subpoena.

3

## **LEGAL ANALYSIS**

I.  **Standard**

Federal Rule of Civil Procedure 45(d)(3)(B)(ii) authorizes the court, in its discretion, to quash or modify a subpoena if it requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." In making this determination, the Rule 45 Advisory Committee Notes identify five factors to help inform the court's decision:

> the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony; the difference between testifying to a previously formed or expressed opinion and forming a new one; the possibility that, for other reasons, the witness is a unique expert; the extent to which the calling party is able to show the unlikelihood that any comparable witness will willingly testify; and the degree to which the witness is able to show that he has been oppressed by having continually to testify.

*U.S. ex rel. Hill v. Univ. of Med. & Dentistry of N.J.*, No. 03-CV-4837 (DMC), 2008 WL 4514046, at *2 (D.N.J. Sept. 26, 2008) (citing Fed. R. Civ. P. 45, Advisory Committee Notes) (quoting *Kaufman v. Edelstein*, 539 F.2d 811, 812 (2d. Cir. 1976)).

"The party seeking to quash the subpoena bears the burden of demonstrating that the requirements of Rule 45 are satisfied." *Malibu Media, LLC v. John Does 1-15*, No. 12-CV-2077, 2012 WL 3089383, at *5 (E.D. Pa. July 30, 2012) (citing *City of St. Petersburg v. Total Containment, Inc.*, No. 07-MC-191, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2008)). This has been described as "a heavy burden." *Malibu Media, LLC v. John Does # 1-30*, No. 12-CV-3896 (MAS), 2012 WL 6203697, at *2 (D.N.J. Dec. 12, 2012) (internal citations omitted). The decision of whether to quash "should be informed by . . . the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony." *Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharm. Corp.*, No. 05-MC-436

(TS) (DN), 2007 WL 1051759, at * 2 (D. Utah Apr. 2, 2007). The purpose of this sub-paragraph of Rule 45 is "to provide appropriate protection for the intellectual property of the non-party witness and to ameliorate the 'growing problem' of the 'use of subpoenas to compel the giving of evidence and information by un-retained experts.'" *Hill*, 2008 WL 4514046, at *2 (citing Fed. R. Civ. P. 45, Advisory Committee Notes).

Even if both elements of Rule 45(c)(3)(B)(ii) are met, a court may nevertheless permit the deposition of an unretained expert under specified conditions "if the serving party shows a substantial need for the testimony that cannot be otherwise met without undue hardship [and] ensures that the subpoenaed person will be reasonably compensated." *Id.* (citing Fed. R. Civ. P. 45(c)(3)(C)).

**II.  The Subpoena Improperly Seeks Olenick's Expert Opinion that Does Not Relate to Specific Occurrences in Dispute and Results from a Study Not Requested by Either Party**

Applying these standards here, the subpoena must be quashed. Olenick has no knowledge or information concerning the specific occurrences in dispute in this matter. The study conducted by Olenick, memorialized in the Zwirn Report, was not requested by either party. Rather, it was commissioned by Zwirn, a non-party to the case, more than two years prior to the commencement of this litigation. Defendants' suggestion that a relationship exists between Plaintiff and Zwirn beyond service provider and customer is simply not supported by the weight of the evidence. Even if there were a relationship, Defendants cannot drag Olenick into this lawsuit merely because he prepared a report for Zwirn in the past. Defendants improperly posit that Olenick "confirmed the [a]larm [s]ystem [d]efect" of the alarm systems at issue in this case" (ECF No. 83 at 6), when in fact Olenick never evaluated either the GE or Interlogix alarm systems and certified he has no

knowledge of either system (ECF No. 82-5 ¶¶ 7, 13). Indeed, each of the five factors identified in the Advisory Committee Notes to Rule 45 weigh in favor of quashing the subpoena.

First, it is clear that the subpoena seeks to elicit Olenick's testimony as an expert, rather than as a fact witness. Expert testimony is "opinion testimony that is based on a qualified expert's relevant knowledge, skill, experience, training, or education applied to relevant facts or data." *In re Schaefer*, 331 F.R.D. 603, 609 (W.D. Pa. 2019) (citing Fed. R. Evid. 702). Although Defendants argue that they are only seeking Olenick's testimony as a fact witness, it is undisputed that Olenick does not have any independent or direct knowledge of this litigation or alarm systems at issue in the complaint. He did not test or evaluate either GE or Interlogix alarm systems. (ECF No. 82-5 ¶ 6). He was not retained by either party as an expert. (*Id.* ¶ 5). The Zwirn Report was cited in the Amended Complaint without his knowledge or permission. (*Id.* ¶¶ 14-15).

Instead, Plaintiff seeks in this case to expand the expert opinion reached by Olenick in the Zwirn Report to GE and Interlogix alarm systems. Namely, Plaintiff alleges that the same defect identified in the Zwirn Report exists in the GE and Interlogix systems. (ECF No. 44 ¶¶ 16, 75, 76). This is merely an allegation; it has yet to be established and is precisely what is at issue in this litigation. Either party may retain an expert to support or refute this contention, and those experts may rely upon or analyze the conclusions reached by Olenick in the Zwirn Report in making this assessment. *See Intervet, Inc. v. Merial Ltd.*, No. 07-CV-194, 2007 WL 1797643, at *2 (D. Neb. June 20, 2007) (quashing subpoena where declaration of third party was publicly available and could be presented to party's own expert for review and comment). However, that does not mean they can depose Olenick without retaining him as an expert and properly compensating him.

The fact that Olenick authored a report identifying a defect in a different alarm unit and opined that this same defect may exist in other alarm systems does not translate into him having

6

factual knowledge about the allegations in this particular case. Numerous district courts have quashed subpoenas pursuant to Fed. R. Civ. P. 45 in analogous circumstances. *See, e.g.*, *Hill*, 2008 WL 4514046, at *3 (granting motion to quash where plaintiff sought the testimony of a non-party doctor who had no involvement in the research program that was the subject of the litigation as a means of "develop[ing] a comparative standard by which to judge the appropriateness of Defendants' actions in the case."); *Glaxosmithkline*, 2007 WL 1051759, at *4 (granting motion to quash third-party subpoena of a researcher who conducted a study of certain products independent of any party in the case and finding that "the real purpose for which [defendant] seeks [his] testimony . . . [is] as an authority, based on his expertise and independent study, not as an observer of facts giving rise to liability."); *Cates v. Zeltiq Asethetics, Inc.*, No. 20-MC-91234 (NMG), 2020 WL 5517457, at *1 (D. Mass. Sept. 14, 2020) (granting motion to quash of non-party professor whose research was used to develop a medical device, but who had no personal involvement in the care of the plaintiff); *Chavez v. Board of Educ. of Tularos Mun. Sch.*, No. 05-CV-380 (JB) (RLP), 2007 WL 1306734, at *5 (D.N.M. Feb. 16, 2007) (quashing subpoena of special education specialist from another school district sought for the "purpose of developing standards by which to measure the appropriateness of educational . . . services of [the] defendant school district."). Like all of these cases, here the testimony of Olenick is sought not for his factual knowledge of the alarm systems at issue in this case (since he has none), but rather as an expert authority on alarm systems and who has analyzed the defect alleged in the GE and Interlogix systems.

Contrast the facts in the instant case, where Olenick never studied the specific alarm systems at issue, with the cases cited by Defendants from courts outside this District, all of which involved third parties who had first-hand factual knowledge of the parties or incidents involved in the underlying lawsuit. *See, e.g.*, *In re Pub. Offer PLE Antitrust Litig.*, 233 F.R.D. 70, 77-78 (D.

Mass. 2006) (allowing third party movant's testimony to proceed (in court) where he had specific factual knowledge concerning whether the defendants in an antitrust litigation fixed their fees because he had personally represented issuers in several initial public offerings where defendant was the underwriter); *Nat. Res. Def. Council v. Zinke*, No. 05-CV-01207 (LJO) (EPG), 2018 WL 1899609, at *9-10 (E.D. Cal. Apr. 20, 2018) (denying motion to quash where third party's testimony concerned opinions previously given to the defendants in the case on the effects of defendant's contract on Chinook salmon and eggs); *Brogren v. Pohlad*, No. 94-C-6301, 1994 WL 654917, at *2 (N.D. Ill. Nov. 14, 1994) (permitting deposition of third party consulting company representative who had provided specific investment advice and analysis to party executives).

Defendants also unconvincingly suggest that Olenick has factual knowledge relevant to the case beyond the conclusions reached in the Zwirn Report. They claim there were multiple communications between Zwirn and Olenick demonstrating Olenick was strategically involved in the instant litigation. (Opp. at 16). They provide no proof to support this contention. Indeed, the documents cited suggest entirely to the contrary: that Olenick was unaware of the lawsuit until after it was filed, immediately indicated his intent to remain neutral, and expressed concern that he might have a conflict with some parties in the lawsuit:

> [W]e were informed earlier this week that a class-action lawsuit was filed against some manufacturers of combination alarm panels. It is our understanding that our report was included as an exhibit. I haven't seen the complaint myself; this is just what was represented to me. Given that we might have a conflict with some of the parties in the lawsuit, we do not intend to actively participate in the lawsuit. We plan to remain an objective third party. As such, we do not want to be a torchbearer in any news articles or your communications with UL. We think our report objectively speaks for itself regarding our testing and findings. Further, now that a lawsuit has been filed, it remains to be seen how that will affect if and how the UL testing arm will engage with you and your task group to address this issue.

(ECF No. 84-6 at 3-4).

In short, Olenick has no knowledge of the alarm systems at issue in this case, no involvement in the litigation, and no information about the facts of this matter. Therefore, the first factor weighs in favor of quashing the third-party subpoena.

As to the second factor, Olenick does not have any opinion on whether the GE or Interlogix alarm systems contain the same defect identified in the Honeywell system. Rather, he is being asked to testify as to whether his previously expressed opinion concerning the defect observed in the Honeywell systems is also present in the GE and Interlogix alarm systems. Olenick has not, however, been retained as an expert for this purpose. This factor therefore also weighs in favor of quashing the subpoena.

The third and fourth factors can be analyzed together. Simply stated, there has been no showing that Olenick is unique or that the parties cannot find a comparable witness who is able to evaluate whether the defect exists in the alarm systems at issue. Defendants have not shown that Olenick is the only expert equipped to opine on whether or not the alleged defect is present in the GE or Interlogix systems. He is not the only expert in this field, and he has never even analyzed the systems at issue in this case. These factors also weigh in favor of quashing the subpoena.

Finally, Olenick has amply demonstrated that he will be oppressed if required to continually testify regarding the opinions rendered in the Zwirn Report. Namely, if Olenick is required to testify as to whether the defect identified in the Zwirn Report exists in the GE and Honeywell systems without being specifically retained to analyze these systems, he may similarly be called to testify concerning whether the defect exists in other brands who manufacturer similar alarm systems. This would drain his resources, put him in potential conflict with clients and require him to impart the benefits of his expertise without being properly compensated. Together, these factors all weigh in favor of quashing the third-party subpoena.

**III.     There Is No Substantial Need for Olenick's Testimony**

Even if the elements of Fed. R. Civ. P. 45(c)(3)(B) are met, the Court may still deny the motion to quash if there is a substantial need for the testimony that cannot be met without undue hardship. Defendants have not met this burden here.

First, the Zwirn Report is published and publicly available to be used by either party or their experts. *See Hill*, 2008 WL 4514046, at *3 (finding no substantial need for non-party deposition where doctor's study was published and publicly available); *Glaxosmtihkline*, 2007 WL 1051759, at *4 (holding there was no undue burden when independent researcher's study was published and there was "nothing else [the third party] could add in a deposition that does not draw upon his expert knowledge"); *Intervet*, 2007 WL 1797643, at *2 (quashing third-party subpoena where declaration was publicly available); *Thompson v. Glenmede Tr. Co.*, No. 92-CV-5233, 1995 WL 752422, at *4 (E.D. Pa. Dec. 19, 1995) (finding no undue hardship where defendants already had a copy of the third party's report containing a favorable opinion). Further, the videotaped tests performed by Zwirn that were then analyzed by Olenick are publicly available. (ECF No. 85-2 ¶¶ 5-6). Thus, any information Defendants claim to need from Olenick can be derived from his report.

Second, any relevant information Defendants seek from Olenick can be readily obtained through other discovery. Namely, information concerning Plaintiff's communications or relationship with Zwirn can be obtained by subpoenaing documents and taking the deposition of Zwirn, who has been engaged as a consultant by Plaintiff. (ECF 83 at 1; ECF No. 85 at 6).

Third, to the extent Defendants have concerns that Olenick may be called by Plaintiff as a trial witness, Olenick has repeatedly indicated his intent not to voluntarily participate in the trial. (ECF No. 83-5 ¶ 12). Olenick is beyond the subpoena power of the court, given that he lives and works in Maryland and has no known ties to New Jersey. (*Id.* ¶¶ 9-11). Should that change and

Olenick appear as a trial witness, he certified that he would make himself available for deposition before trial (ECF No. 85-2 ¶ 4), but that seems unlikely at this point.

Thus, Defendants have not established a substantial need for Olenick's testimony. Whatever limited information Olenick possesses beyond the Zwirn report is either publicly available or available through less intrusive means of discovery from those involved in this lawsuit. Olenick is not testifying at trial. Therefore, the subpoena served on Olenick is hereby quashed.

## IV.     Attorneys' Fees

Finally, Olenick seeks attorneys' fees and costs related to the subpoena, arguing that Defendants did not take reasonable steps to avoid undue cost and burden to the Olenick. (ECF No. 86 at 20). Fed. R. Civ. P. 45 provides:

> [A] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena . . . the court . . . must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

In support of his application, Olenick explains that, after meeting and conferring regarding the subpoena, Defendants offered to provide a certification to be used in lieu of the subpoena, but neglected to ever provide a draft. (ECF No. 85-1 ¶¶ 12-13). Defendants explained during oral argument that they believed proposing a certification would be futile because it would never be acceptable to both sides. (ECF No. 80 at 44-45).

That aside, the Court does not find that an award of attorneys' fees would be appropriate here. "The Court notes that attorney fees are generally awarded only in the most egregious of circumstances . . . ." *SAJ Distribs., Inc. v. Sandoz, Inc.*, No. 08-CV-1866 (JAP), 2008 WL 2668953, at *3 (D.N.J. June 27, 2008) (citing *Anderson v. Gov't of Virgin Islands*, 180 F.R.D. 284, 291-92 (D. Vi. 1998) (granting attorneys fees for repeat violations of Rule 45)). Absent egregious

11

situations involving "persistent or repeat offenders who abuse the court's subpoena power," courts "frequently exercise[] their discretion and refuse[] to impose attorneys' fees as a sanction against a party that issued a subpoena." *Lefta Assocs. v. Hurley*, No. 09-CV-2487, 2011 WL 1793265, at *4 (M.D. Pa. May 11, 2011) (citing *SAJ Distrib.*, 2008 WL 2668953, at *3; *Hampton Forge, Ltd. v. Descamps*, No. 03-CV-4500 (GEB), 2006 WL 469953, at *11 (D.N.J. Feb. 23, 2006)).

The Court does not find that Defendants acted in bad faith or for an improper purpose in serving a subpoena on Olenick such that sanctions would be warranted here, nor were the legal arguments advanced by Defendants so patently frivolous or lacking in merit to warrant sanctions. *Sopinski v. Lackawanna Cnty.*, No. 16-CV-00466, 2016 WL 6661160, at *5 n.3 (M.D. Pa. Nov. 10, 2016) (denying attorneys' fees for a non-party successfully quashing a subpoena where the court found an absence of bad faith in serving the subpoena). The Court empathizes that Olenick, a third party with no involvement in this case, was forced to expend money on counsel fees to oppose the subpoena. However, the Court also acknowledges that Defendants felt compelled to subpoena Olenick's deposition after his report was specifically referenced in Plaintiff's complaint and he was identified in Plaintiff's initial disclosures. Under these circumstances, the Court does not feel it would be appropriate to grant Olenick's request for counsel fees.

## CONCLUSION

For the foregoing reasons, the court grants Olenick's motion to quash the third-party subpoena. (ECF No. 82). His request for attorneys' fees is DENIED.

                                     */s/ Stacey D. Adams*
                                     Hon. Stacey D. Adams
                                     United States Magistrate Judge

Original:     Clerk of the Court
    cc:        Hon. Brian R. Martinotti, U.S.D.J.
                All Parties